IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Appeal Number 24-10070-D

PATRICK REED,

*Appellant*

v.

SHANE RYAN *et al*.

*Appellees*.

On Appeal from the United States District Court
for the Middle District of Florida, Jacksonville Division,
3:22-cv-1181-TJC-PDB

**BRIEF OF APPELLANT PATRICK NATHANIEL REED**

Anthony C. Lake
State Bar of Georgia No. 431149
GILLEN & LAKE LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
KLAYMAN LAW GROUP P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

*Counsel for Appellant Patrick Nathaniel Reed*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

PATRICK REED,

     Appellant

v.

SHANE RYAN, *et al*.

     Appellees.

Appeal Number 24-10070-D

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Patrick Nathaniel Reed, Appellant, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

The Associated Press, Appellee

Bloomberg, L.P., Appellee

Chase, Jeremy A., counsel for Appellees

Corrigan, Timothy J., Chief United States District Judge

Handman, Laura R., counsel for Appellees

Hatchette Book Group, Inc., Appellee

Feitel, Jesse, counsel for Appellees

Ferguson, Doug, Appellee

Fox Sports, Inc., Appellee

Handman, Laura R., counsel for Appellees

Herbert, Gregory W., counsel for Appellees

Klayman, Larry, counsel for Appellant

Lake, Anthony C., counsel for Appellant

Larson, Erik, Appellee

LoCicero, Carol J., counsel for Appellees

Newsham, Gavin, Appellee

Norbut, Linda R., counsel for Appellees

NYP Holdings, Inc.

Reed, Patrick Nathaniel, Appellant

Young, Savannah, counsel for Appellees

Respectfully submitted, this 18th day of April, 2024.

_/s/ Anthony C. Lake_____

Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Page 2 of 3

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Appellant submits that oral argument may assist the Court in its consideration of the issues raised in this appeal, especially in regard to issues relating to defamation.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ............... 1

Statement Regarding Oral Argument ..................................................... i

Table of Contents ....................................................................... ii

Table of Citations ...................................................................... v

Statement of Jurisdiction ...............................................................1

Statement of the Issues ................................................................ 2

Statement of the Case .................................................................. 3

    I. Statement of Facts ........................................................... 3

        A. Professional Golfer Patrick Reed ..................................... 3

        B. Appellees' Conduct and Statements Relating to Mr. Reed ......... 4

            1. Shane Ryan's and Hatchett Book Group, Inc.'s

            Statements and Conduct Concerning Mr. Reed ............. 5

            2. Gavin Newsham's, Fox Sports' and

            The New York Post's Statements and Conduct

            Concerning Mr. Reed .................................... 7

            3. Doug Ferguson's and The Associated Press'

            Statements and Conduct Concerning Mr. Reed ............ 8

            4. Erik Larson's and Bloomberg, L.P.'s Statements

            and Conduct Concerning Mr. Reed .................... 9

II. Course of Proceedings ……………………………………….…… 10

III. Standards of Review …………………………………………....... 11

Summary of the Argument …………………………………….....…….. 12

Argument ………………………………………………………………... 14

I. The District Court Erred in Dismissing Mr. Reed's Claims

With Prejudice on the Defendants' Motions to Dismiss ……………….... 14

    A. The District Court Erred In Finding That All

        But One of the Defendants' Statements Were

        Alleged Non-Actionable Statements of Fact

        or Opinion ……………………………………………...…….... 16

    B. The District Court Erred in Finding That Mr. Reed

        Failed to Allege Actual Malice ……………………..……… 30

    C. The District Court Erred In Finding That Larson's

        and Bloomberg, L.P.'s Publication Did Not Concern

        Mr. Reed ……………………………………………...……… 40

    D. The District Court Erred in Dismissing Mr. Reed's

        Claims for Tortious Interference ……..……………………… 43

    E. The District Court Erred in Finding That Allowing

        Mr. Reed an Additional Opportunity to Amend His

        Complaint Would Be "Futile" …………………...………… 46

Conclusion …………………………………………………………...…... 50

Certificate of Compliance …………………………………………………... 51

Certificate of Service …………………………………………...…….... 52

# TABLE OF CITATIONS

**Cases**

*Anson v. Paxson Communications Corp.*,

    736 So.2d 1209 (Fla. Dist. Ct. App. 1999) ……………………………… 18, 23

*Anyanwu v. Columbia Broadcasting System, Inc.*,

    887 F. Supp. 690, 692 (S.D.N.Y. 1995) …………………………………… 41

*Arison Shipping Co. v. Smith*,

    311 So. 2d 739 (Fla. Dist. Ct. App. 1975) ……………………….……… 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………………… 39, 46

*Axelrod v. Califano*, 357 So.2d 1048 (Fla. Dist. Ct. App. 1978) ……….….… 21, 35

*Barnes v. Horan*, 841 So. 2d 472 (Fla. Dist. Ct. App. 2002) ………....……….. 28, 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………… 39, 46

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ………………..……… 33

*Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750 (11th Cir. 1985) ……….…… 48

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,

    831 So. 2d 204 (Fla. Dist. Ct. App. 2002) ……………………...……….. 43

*Brown v. Tallahassee Democrat, Inc.*,

    440 So. 2d 588 (Fla. Dist. Ct. App. 1983) …………………...……….. 42

*Caster v. Hennessey*, 781 F.2d 1569 (11th Cir. 1986) ……………………… 45

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*,

    48 F.4th 1222 (11th Cir. 2022) …………………...…………………….... 11

*Cianci v. New Times Pub. Co.*, 639 F.2d 54 (2d Cir. 1980) ……………………… 16

*Commander v. Pedersen*, 116 Fla. 148 (1934) ………….…………………… 21, 35

*Curtis Publishing Co. v. Butts and Associated Press v. Walker*,

    388 U.S. 130 (1967) ………………………………………...……... 34

*Dershowitz v. Cable News Network, Inc.*,

    541 F. Supp. 3d 1354 (S.D. Fla. 2021) …………………………………… 38

*Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*,

    430 F.2d 38 (5th Cir. 1970) ………………………………...……………… 35

*Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) …………………….. 44

*Firestone v. Time, Inc.*, 231 So. 2d 862 (Fla. Dist. Ct. App. 1970) …………..…… 38

*Fla. Med. Ctr., Inc. v. New York Post Co.*,

    568 So. 2d 454 (Fla. Dist. Ct. App. 1990) ………………….……… 16, 22

*Fla. Power & Light Co. v. Allis Chalmers Corp.*,

    85 F.3d 1514 (11th Cir. 1996) …………………………………….…….. 49

*Fogel v. Forbes, Inc.*, 500 F. Supp. 1081 (E.D. Pa. 1980) …………………..…… 41

*Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582 (11th Cir. 1986) ……...……….. 39

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006) ………………... 16, 25

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) ……………………………… 44

*From v. Tallahassee Democrat, Inc.*,

    400 So. 2d 52 (Fla. Dist. Ct. App. 1981) ……………………..…………… 17

*Gadsden Cnty. Times Inc. v. Horne*,

    382 So. 2d 347 (Fla. Dist. Ct. App. 1980) …………….…………………… 33

*Gangelhoff v. Lokey Motors Company*,

    270 So.2d 58 (Fla. Dist. Ct. App. 1972) …………………………………… 31

*Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202 (11th Cir. 2022) ………...…… 44

*Garrison v. Louisiana*, 379 U.S. 64 (1964) …………………………………… 31

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) …………………… 44

*Greene v. Times Pub. Co.*,

    130 So. 3d 724 (Fla. Dist. Ct. App. 2014) ……………...………………….. 30

*Grier v. Johnson*, 232 A.D.2d 846 (3d Dept. 1996) …………………...………… 34

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ………….… 34

*Hay v. Independent Newspapers, Inc.*,

    450 So.2d 293 (Fla. Dist. Ct. App. 1984) …………………………… 18, 20

*Herbert v. Lando*, 441 U.S. 153 (1979) …………………………………….….. 33

*Hoesten v. Best*, 34 A.D.3d 143 (1st Dept. 2006) …………………...……… 31

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*,

    641 F.3d 1259 (11th Cir. 2011) …………………………………….……… 11

*Hood v. Connors*, 419 So. 2d 742 (Fla. Dist. Ct. App. 1982) ………………...… 36

*Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*,

    242 S.W.3d 518 (Tex. App. 2007) …………………………...………. 41

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) …………………..… 33, 34, 35

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) …………………...………… 32, 33

*Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098 (Fla. 2008) …………………..…….. 19

*Johnson v. Clark*, 484 F. Supp. 2d 1242 (M.D. Fla. 2007) ……………………….. 15

*Johnston v. Borders*, 36 F.4th 1254 (11th Cir. 2022) ……………………………... 23

*Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127 (N.D. Ala. 2022) ………..……….. 23

*Keller v. Mia. Herald Publ'g Co.*, 778 F.2d 711 (11th Cir. 1985) ……. 16, 17, 18, 20

*Kim v. PGA Tour*, No. 3:23-CV-441-TJC-JBT,

    2024 WL 280297 (M.D. Fla. Jan. 25, 2024) ……………………………… 15

*Kist v. Hubbard*, 93 So. 3d 1100 (Fla. Dist. Ct. App. 2012) ……………………... 31

*Layne v. Tribune Co.*, 146 So. 234 (1933) …………………………………..……. 35

*LeMoine v. Spicer*, 146 Fla. 758 (1941) ……………………………..………… 21

*Litman v. Massachusetts Mut. Life Ins. Co.*,

    739 F.2d 1549 (11th Cir. 1984) …………………………………….……… 21

*LRX, Inc. v. Horizon Associates Joint Venture ex rel.*

    *Horizon-ANF, Inc.*, 842 So.2d 881 (Fla. Dist. Ct. App. 2003) ……..…... 17, 18

*Lundquist v. Alewine*, 397 So.2d 1148 (Fla. Dist. Ct. App. 1981) ………….……... 37

*Magre v. Charles*, 729 So. 2d 440 (Fla. Dist. Ct. App. 1999) ………………...…... 30

*Markle v. Markle*,

    No. 8:22-cv-511-CEH-TGW, 2023 WL 2711341

    (M.D. Fla. Mar. 30, 2023) …………………………………………....… 26

*Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*,

    992 F.2d 1171 (11th Cir. 1993) …………………………………….….... 39

*Matthews v. Deland State Bank*,

    334 So.2d 164 (Fla. Dist. Ct. App. 1976) ……………………….....….. 37

*Miami Herald Publishing Co. v. Ane*,

    423 So.2d 376 (Fla. Dist. Ct. App. 1982) ………………………………. 29

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ……..…· 16, 31, 34, 39

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ………………………..….. 18

*Nealis v. PGA Tour, Inc.*, No. 3:23-CV-623-TJC-MCR,

    2024 WL 1555011 (M.D. Fla. Apr. 10, 2024) ………………..……….…. 15

*Neitzke v. Williams*, 490 U.S. 319 (1989) ………………………………………. 39

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) …………… 23, 31, 32, 33, 37

*Nowik v. Mazda Motors of America (East), Inc.*,

    523 So.2d 769 (Fla. Dist. Ct. App. 1988) …………………………………. 30

*Ounjian v. Globoforce, Inc.*, 89 F.4th 852 (11th Cir. 2023) ………………...…·. 11

*Owner's Adjustment Bureau, Inc. v. Ott*,

    402 So.2d 466 (Fla. Dist. Ct. App. 1981) ………………………………... 22

*Ozyesilpinar v. Reach PLC*, 365 So.3d 453 (Fla. Dist. Ct. App. 2023) ............... 43

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,

    781 F.3d 1245 (11th Cir. 2015) ……………………………………...……….. 44

*Palm Beach Newspapers, Inc. v. Early*,

    334 So. 2d 50 (Fla. Dist. Ct. App. 1976) …………………………...…… 23

*Patel v. Specialized Loan Servicing, LLC*,

    904 F.3d 1314 (11th Cir. 2018) ……………………………………..…… 39

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) ……………………… 11

*Perry v. Cosgrove*, 464 So. 2d 664 (Fla. Dist. Ct. App. 1985) ……………...…… 22

*Pinnacle Advert. & Mktg. Grp., Inc. v.*

    *Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989 (11th Cir. 2021) …..…… 48

*Popular Bank of Fla. v. R.C. Asesores Financieros, C.A.*,

    797 So. 2d 614 (Fla. Dist. Ct. App. 2001) …………………………………… 45

*Presley v. Graham*, 936 F. Supp. 2d 1316 (M.D. Ala. 2013) ………………..…… 25

*Rebozo v. Washington Post Co.*, 637 F.2d 375 (5th Cir. 1981) …………………… 33

*Rolle v. Cold Stone Creamery, Inc.*,

    212 So. 3d 1073 (Fla. Dist. Ct. App. 2017) …………………………...… 28

*Rubin v. U.S. News & World Rep.*, 271 F.3d 1305 (11th Cir. 2001) ……….…..… 41

*Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980) …………………………….…… 34

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) …………………………….…… 39

*Scott v. Busch*, 907 So. 2d 662 (Fla. Dist. Ct. App. 2005) ………………...….. 29, 49

*Shipner v. E. Air Lines, Inc.*, 868 F.2d 401 (11th Cir. 1989) …………...….….. 48, 49

*Silvester v. Am. Broad. Cos.*, 839 F.2d 1491 (11th Cir. 1988) ……………………. 31

*Skupin v. Hemisphere Media Grp., Inc.*,

      314 So. 3d 353 (Fla. Dist. Ct. App. 2020) ………………………………… 42

*Smith v. Ocean State Bank*, 335 So. 2d 641 (Fla. Dist. Ct. App. 1976) ……...…… 45

*Spears v. Albertson's, Inc.*,

      848 So. 2d 1176 (Fla. Dist. Ct. App. 2003) ………………………….…... 21

*St. Amant v. Thompson*, 390 U.S. 727 (1968) …………………………...…….. 31, 34

*State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) …………..…… 39

*Stembridge v. Mintz*, 652 So. 2d 444 (Fla. Dist. Ct. App. 1995) ………...…… 17, 30

*Sweeney v. Prisoners' Legal Servs. of New York, Inc.*,

      84 N.Y.2d 786 (1995) …………………………………………….…...… 31

*Swierkiewicz v. Sorema N. A*., 534 U.S. 506 (2002) ……………………………… 39

*Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126 (Fla. 1985) ……………..…… 45

*Teare v. Local Union No. 295 of the United Ass'n of Journeymen and*

      *Apprentices of Plumbers and Pipe Fitters Industry of U.S. and*

      *Canada*, 98 So.2d 79 (Fla. 1957) …………………………………….…… 21

*Thomas v. Jacksonville Television, Inc.*,

      699 So. 2d 800 (Fla. Dist. Ct. App. 1997) ……………….……………… 40, 41

*Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir. 1988) …………………...…… 49

*Tip Top Grocery Co. v. Wellner*, 186 So. 219 (Fla. 1938) …………………….... 35

*Town of Sewall's Point v. Rhodes*,

     852 So. 2d 949 (Fla. Dist. Ct. App. 2003) ………………….....………….. 18

*Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002) ……….…….. 16

*Turkey Creek, Inc. v. Londono*,

     567 So. 2d 943 (Fla. Dist. Ct. App. 1990) ………………………....…..… 45

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) …………….……….. 16, 17, 19, 39

*United States v. Stephen Brothers Line*, 384 F.2d 118 (5th Cir. 1967) ………....…… 48

*Vandenburg v. Newsweek, Inc.*, 441 F.2d 378 (5th Cir. 1971) …………………. 34

*Wallin v. Fuller*, 476 F.2d 1204 (5th Cir. 1973) ………………………………….. 48

*Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289 (11th Cir. 2018) ………….. 48

*Wolfson v. Kirk,* 273 So. 2d 774 (Fla. Dist. Ct. App. 1973) ………………………. 29

*Zambrano v. Devanesan*, 484 So.2d 603 (Fla. Dist. Ct. App. 1986) …………...… 18

*Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197 (M.D. Fla. 2021) ……………….. 40

## Federal Rules

Fed. R. Civ. P. 8 ……………………………………...…………… 44, 46, 47

Fed. R. Civ. P. 15 …………………………………………..…… 48, 49, 50

**<u>Other Authorities</u>**

10 Charles Alan Wright & Arthur Raphael Miller,

    *Federal Practice and Procedure* (1973) …………………...…………… 32

50 Am. Jur. 2d *Libel and Slander* (1970) …………………………………...…… 33

Charles Alan Wright & Arthur Raphael Miller,

    *Federal Practice and Procedure* (3d ed. 2004) …………………………. 39

W. Page Keeton *et al.*,

    *Prosser and Keeton on the Law of Torts* (5th ed. 1988) ……………...…. 19

*Restatement (Second) of Torts* (1977) ………………………………….. 29, 42

Manuel Socias, *Showing Constitutional Malice*

    *in Media Defamation*, FLA. B.J. (2018) …………………………………… 37

## STATEMENT OF JURISDICTION

This Court possesses jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 for the reason that this is an appeal from a final decision of a district court. The District Court issued an Order on September 27, 2023, which conclusively resolved the claims of the parties and ended the litigation on the merits. Dkt.#86. On January 8, 2024, Appellant timely filed his Notice of Appeal. Dkt.#93.

## STATEMENT OF THE ISSUES

I.      Whether the District Court erred in dismissing Mr. Reed's claims with prejudice on the defendants' motions to dismiss.

**STATEMENT OF THE CASE**

## I. Statement of Facts

### A. Professional Golfer Patrick Nathaniel Reed

The plaintiff in the action below, Patrick Nathaniel Reed, is a highly accomplished professional golfer who is a two-time World Golf Champion, a nine-time PGA Tour Champion, the only two-time Olympic golfer representing the United States, and the only American to play on both the PGA Tour and the European DP World Tour since 2015. Dkt.#1 at 5-6.[1] Mr. Reed, a two-time NCAA golf champion, won his first PGA tournament in 2013 at the Wyndham Championship, at the age of 23. *Id*. at 5. Mr. Reed proceeded to win his first major championship at the age of 27, at the 2018 Masters Tournament. *Id*. He is the youngest winner of a World Golf Championship in history. *Id*. at 6. Mr. Reed played PGA Tour Championship every year from 2014 through 2021, playing in the championships for both the PGA Tour and the DP World Tour in 2015, and has ranked as high as sixth in the Official World Golf Rankings. *Id*. at 5, 6. He is the holder of three PGA Tour records, and is only the fourth American to receive an Honorary Lifetime Membership by the European Tour. *Id*. at 6.

---

[1] Citations to the record herein cite the docket number in the District Court followed by the page number or numbers in the form "Dkt.#_ at _."

Mr. Reed hosts a tournament each year for the American Junior Golf Association (AJGA) which has become the AJGA's most heavily-awarded event, and is a supporter of, and provider of equipment to, the Advocates Professional Golf Association (APGA), which assists minorities in competing and succeeding at the highest levels of professional golf. Dkt.#1 at 5. Mr. Reed furthermore established The Team Reed Foundation which serves numerous charities in the Houston, Texas, area and nationwide. *Id*. Mr. Reed and his wife are also the owners and managers of grindworksUSA, the domestic distributor for grindworks, a Japanese manufacturer of golf equipment. *Id*. at 8. In addition, Mr. and Mrs. Reed own and manage Team Reed Enterprises, Inc., which provides marketing, business and consulting services to the golf industry. *Id*.

### B. <u>Appellees' Conduct and Statements Relating to Mr. Reed</u>

As Mr. Reed set forth in his initial Complaint in the case below, in June of 2022, Mr. Reed was constructively terminated as a member of the PGA Tour and subsequently signed with LIV Golf. Dkt.#1 at 5-6. The Complaint further set forth the animosity and hostility of the PGA Tour and its Commissioner towards LIV Golf dating back to 2018. *Id*. at 9. Mr. Reed alleged how he has become a frequent target of the defendants and the golf media in their disparagement of LIV Golf. *Id*. at 14. As a result of defamatory statements and other conduct by the PGA Tour, its "partner" the Golf Channel, and members of the golf media regarding to Mr. Reed

and LIV Golf, Mr. Reed brought a related action against nine defendants in the United States District Court for the Middle District of Florida, *Reed v. Chamblee et al.*, case number 3:22-cv-1059-TJC-PDB (the *Chamblee* action). *Id.* at 10.

Mr. Reed alleged in his Complaint in the instant case that, in 2015, Appellee Shane Ryan, a professional golf commentator, published a book in which Ryan made defamatory statements regarding Mr. Reed, stating that Mr. Reed allegedly cheated and stole. Dkt.#1 at 11. Ryan made the statements regarding Mr. Reed's alleged cheating or stealing in spite of the fact that Mr. Reed consented to be interviewed by Ryan and Ryan never asked Mr. Reed about these issues during the interview. *Id.*

### 1. Shane Ryan's and Hatchett Book Group, Inc.'s Statements and Conduct Concerning Mr. Reed

On May 10, 2022, Ryan and Appellee Hatchett Book Group, Inc. (HBG), published a book with the title THE CUP THEY COULDN'T LOSE: AMERICA, THE RYDER CUP, AND THE LONG ROAD TO WHISTLING STRAITS. Dkt.#1 at 16. Ryan named Reed in the heading of the first chapter in his book: "December 2019, Melbourne, Australia, Fires Down Under … The Greatest Escape…The End of the Legend of Patrick Reed." *Id*. He proceeded to make the following statements in his book concerning Mr. Reed:

> [Mr. Reed had] been kicked out of Georgia after a year for two alcohol violations, the second of which he tried to hide from his coach, and before that he'd been accused by his teammates of cheating during a qualifying event. Then he went to Augusta State, where he turned the entire team against him almost immediately, and once again he was

5

accused of cheating, this time by shaving strikes in two straight qualifying events. His teammates held a meeting and voted to kick him off the team, but Augusta State coach Josh Gregory reduced it to a two-match suspension.

When the ugly details came out, Reed set to work blundering his way into deeper trouble, which was the start of a PR strategy that he's doggedly stuck to ever since. He went on Golf Channel, produced a couple of vague statements from his coaches, and generally took the path of full denial. The end result was that Reed's teammates, who had previously been silent came out of the woodwork to crucify him further, confirming old details and adding new ones.

Reed found himself in a waste area that looked indistinguishable from a sand trap. The rules, though, are different: in the waste area, a player is allowed to ground his club. Which is exactly what Reed did, but then he proceeded to drag the club backward, sweeping away the sand in front of his ball. Then he resettled the club and did it again. This is blatantly illegal, and nothing about it was ambiguous. Reed had improved his lie by clearing the path to his ball, and when the first effort wasn't satisfactory, he did it again. The TV camera caught him red-handed, and Golf.com's Dylan Dethier, on the scene, heard Rickie Fowler say, I don't even know what you have to review.

Reed was assessed a two-stroke penalty when the round was over, but the bigger problem was the hit to his reputation. Before long, someone dug up a clip of him doing the same exact thing at a 2015 tournament, and for a guy whose credibility was already in the mud, who had been accused of cheating in the past, it was like throwing gas on the flames. He was skewered.

Chamblee went so far as to say that when Tiger added Reed to the team, he "made a deal with the devil." By forcing the Americans to defend him. Reed put them in an impossible situation and forced them to greet an obvious violation – one that would have horrified most of them to commit, in a sport where players frequently call penalties on themselves even when the camera aren't running – with silence, putting their own integrity on the line.

It figured that the first time anyone on Reed's team had been honest and open with the media, it would be a caddie admitting he'd shoved a fan.

*Id*. at 17, 18, 19, 20.

## 2. Gavin Newsham's, Fox Sports' and The New York Post's Statements and Conduct Concerning Mr. Reed

On September 17, 2022, golf commentator Appellee Gavin Newsham and Appellee NYP Holdings, Inc. (The New York Post) published an article concerning Mr. Reed with the title "*The scandalous truth about Patrick Reed, the bad boy of golf.*" Dkt.#1 at 21. The following day, September 18, 2022, Newsham and Appellee Fox Sports again published the article under the title "'*Don't know they'd p\*\*\* [piss] on him if he was on fire': The scandalous truth of golf's biggest villain.*" *Id*. at 20-21. Newsham stated the following in his articles in relation to Mr. Reed:

Detailing the long history of the Ryder Cup, Ryan explains how 2020 US captain Steve Stricker managed to galvanise a team so often incapable of beating their European counterparts — and how he solved the perennial problem of Patrick Reed.

When items including a watch, a putter and $400 went missing from the locker room, teammates suspected it was Reed who had taken them, especially as he turned up the following day with a large wad of cash.

During one qualifying round, Reed hit his ball into the rough but when they found it, it was, miraculously, closer to the fairway. Convinced he was cheating, Reed was challenged by his teammates but denied any wrongdoing. It was a similar story when Reed attended Augusta State. This time, he stood accused of shaving strokes off his scorecards and while his teammates voted to kick him off the team, his coach reduced the sanction to a two-match suspension.

Golf analyst Brandel Chamblee, meanwhile, suggested that in picking Reed, Woods had "made a deal with the devil." He was right.

At the Hero World Classic in the Bahamas prior to the Presidents Cup, Reed was spotted trying to improve the lie of his ball, not once but twice. Reed blamed it on the angle of the TV cameras making it look worse than it was but he was still penalised two strokes. As Ryan writes: "Making a deal with the devil is useful only if the devil can give you something important in exchange…."

Free from the trouble that followed Reed around like a puppy, the US team jelled like never before, coasting to a record win over Europe, winning 19-9. Petty feuds were forgotten, egos left at the locker room door and any chance of disruption had been eradicated. Finally, the US players were a team, not just a dozen millionaire golfers thrown together…

*Id*. at 21, 22, 23, 24. Mr. Reed furthermore alleged how Newsham had republished defamatory statements made by Ryan in his book to a wider audience through Fox Sports and The New York Post. *Id*. at 12.

### 3. Doug Ferguson's and The Associated Press' Statements and Conduct Concerning Mr. Reed

On February 2, 2021, Appellee Doug Ferguson, a journalist, and Appellee Associated Press (AP) published an article under the heading "*Column: Reed's reputation from Bahamas the ultimate penalty*." Dkt.#1 at 26. In his article, Ferguson stated the following regarding Mr. Reed:

Whoa! What was THAT?" It was Patrick Reed. This was just over a year ago in the Bahamas, the day Reed infamously used the back of his wedge to scoop away sand — twice — from behind his golf ball in a waste bunker, improving his line of play. Only when he was shown video evidence did Reed accept the two-shot penalty, but not before suggesting the camera angle made it look worse than it was. The

penalty, as it turns out, was worth more than two shots. There is no greater punishment in golf than being stuck with a reputation for cheating.

Moving past this one will be almost impossible.

He pulled his approach from a fairway bunker into thick grass left of the 10th green. Approaching where a volunteer had marked the spot with a tiny flag, Reed asked if the ball bounced. "No, I didn't see it bounce," the volunteered replied. He turned to his playing partners, PGA Tour rookie Will Gordon and second-year player Robby Shelton, and told them, "They said it didn't bounce," and that he would check for an embedded lie. Crouching over, he marked the spot with a tee, put the ball in the palm of his hand and kept probing the turf for about 5 seconds when he called for an official. And then he poked around for another five seconds. I believe it broke ground, but I'm going to let you make that call," Reed told Brad Fabel, the rules official. Fabel didn't immediately know what he was talking about because Reed had placed the ball about 8 feet away. Reed showed him where the ball was, Fabel poked around and agreed there was a "lip," meaning the ball had broken the plane of the soil. Free drop.

*Id*. at 24-26. Ferguson also republished defamatory statements published by Ryan in his book. *Id*. at 13.

### 4. Erik Larson's and Bloomberg, L.P.'s Statements and Conduct Concerning Mr. Reed

As set forth in Mr. Reed's Amended Complaint, on or about January 4, 2023, Appellee Erik Larson and Appellee Bloomberg L.P. published an article entitled "*Saudi-Backed LIV Golf is Using PGA Suit to Get Data on 9/11 Families Court Told*" which prominently featured a photograph of Mr. Reed in which Larson stated "It's (meaning the issue of 9/11 family victims) has taken a more sinister turn." Dkt.#1 at 28-29.

## II. Course of Proceedings

Mr. Reed filed suit against Ryan, Ferguson, Newsham, HBG, AP, Fox Sports and The New York Post on November 1, 2022, raising claims against the defendants for defamation, defamation by implication, defamation *per se*, injurious falsehoods, tortious interference and civil conspiracy. Dkt.#1 at 27-91. Mr. Reed alleged that, as a result of the defendants' defamatory publications and conduct that he had lost or been deprived of multiple, highly-valuable sponsorship agreements and business ventures. *Id*. at 7.

On December 13, 2022, the District Court issued, *sua sponte*, an Order dismissing Mr. Reed's Complaint without prejudice and directing him to file an amended complaint, strangely prior to any responsive pleading being filed. Dkt.# 25 at 3. Mr. Reed filed an Amended Complaint on January 13, 2023, and further filed a Notice of Compliance with Order of December 13, 2022, Concerning Amended Complaint. Dkt.#27 & 28.

On February 24, 2023, Ryan and HBG, and Ferguson and the AP, filed motions to dismiss the Amended Complaint. Dkt.#33 & 35. Mr. Reed responded to the defendants' motions. Dkt.#42 & 43. Larson moved to dismiss the Amended Complaint on May 18, 2023, and Mr. Reed filed a response to the motion on June 20, 2023. Dkt.#65 & 74.

On July 31, 2023, the District Court held a hearing on the defendants' motions to dismiss Mr. Reed's Amended Complaint in both the action below and the *Chamblee* action. Dkt.#80.

On September 27, 2023, the District Court issued an Order dismissing Mr. Reed's Amended Complaint with prejudice. Dkt.#86. On October 23, 2023, Mr. Reed filed a motion for reconsideration of the Court's Order dismissing his claims. Dkt.#89. The Court issued an Order denying Mr. Reed's motion for reconsideration on January 5, 2024. Dkt.#92. On January 8, 2024, Mr. Reed timely filed his Notice of Appeal. Dkt.#93.

## III. <u>Standards of Review</u>

The Court reviews the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "*de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 857 (11th Cir. 2023) (quoting *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022)). It reviews "*de novo* an order denying a plaintiff leave to amend because of futility." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (citing *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011)).

## SUMMARY OF THE ARGUMENT

Mr. Reed's claims against the defendants were based upon conduct and statements by the defendants intended to damage, defame and disparage Mr. Reed, including statements that Mr. Reed allegedly engaged in conduct which was "**obvious**" and "**blatantly illegal, and nothing about it was ambiguous**" at a PGA tournament in 2019, Dkt.#1 at 18, 19; that Mr. Reed had allegedly "**do[ne] the same exact thing at a 2015 tournament**," *id*. at 19; that, while in college, he allegedly cheated by "**shaving strikes in two straight qualifying events**," *id*. at 17; "**tried to hide [violations] from his coach**," *id*.; that he and his team had not been "**honest and open with the media**," *id*. at 20; that, in the 2019 tournament, Mr. Reed's teammates came out to "**crucify**" him, allegedly "**confirming old details and adding new ones**," *id*. at 17; that he used a "**PR strategy**" "**of full denial**," *id*.; that Mr. Reed was "**golf's biggest villain**," *id*. at 21; that Tiger Woods "**made a deal with the devil**" in picking him to be a member of the U.S. team, *id*. at 23; that Mr. Reed's credibility was "**in the mud**," and he was "**skewered**," *id*. at 19; and that Mr. Reed's teammates "**put[ ] their integrity on the line**" in defending him, *id*. (Emphasis added).

The District Court summarily dismissed all 35 of Mr. Reed's claims with prejudice on the defendants' motions to dismiss. It erroneously found that the defendants' statements, quotes from which are set forth above, to constitute protected

fact or opinion. In reaching its conclusion, the District Court failed to properly evaluate each statement pursuant to the standards set forth under the law.

The District Court furthermore erroneously concluded that Mr. Reed had failed to allege actual malice in his claims for defamation. On the contrary, Mr. Reed's Amended Complaint plausibly alleged facts supporting a finding that the defendants acted from actual malice and hostility towards Mr. Reed in publishing their statements. Mr. Reed's claims for relief were plausible and non-speculative, and his Amended Complaint should have been found sufficient to entitle him to proceed to discovery on the merits of his claims.

The District Court moreover erred in dismissing Mr. Reed's claims for tortious interference. As a result of the defendants' statements, Mr. Reed has suffered losses of multi-year sponsorships and business opportunities valued in the millions, and has suffered irreparable harm to his professional reputation and public goodwill. Defendants statements have furthermore contributed to the abuse from fans which Mr. Reed now endures during tournaments, which negatively impacts his play.

Finally, the District Court erroneously found that allowing Mr. Reed an additional opportunity to amend his Complaint would be "futile." Mr. Reed had already made substantial amendments to his Complaint, and had no notice that the Court viewed his Amended Complaint as allegedly deficient. The District Court erred in dismissing Mr. Reed's Amended Complaint with prejudice in response to

the defendants' motions to dismiss, and the judgment of the District Court should be reversed and the case remanded for further proceedings.

**ARGUMENT**

## I. The District Court Erred in Dismissing Mr. Reed's Claims With Prejudice on the Defendants' Motions to Dismiss

Mr. Reed brought the suit below against professional golf commentators Shane Ryan and Doug Ferguson, journalist Gavin Newsham, and associated media and publishing entities, alleging claims for defamation, defamation by implication, defamation *per se*, injurious falsehoods, tortious interference and civil conspiracy based upon Ryan's publication in May of 2022 of a book with a chapter on Mr. Reed proclaiming the alleged "end" of Mr. Reed's "legend;" Newsham's publication of a news article in September of 2022, with a title labeling Mr. Reed as purportedly being golf's "biggest villain;" and Ferguson's publication in February of 2021 of an article on Mr. Reed's "reputation." Dkt.#1 at 12, 13, 16, 24. In his chapter on Mr. Reed in his book, Ryan stated that, during the 2019 Hero World Challenge, Mr. Reed allegedly engaged in conduct which was "illegal," "an obvious violation" and not "ambiguous," and that Mr. Reed had purportedly done the "same exact thing" during a tournament in 2015. *Id*. at 18, 19. Mr. Ryan proceeded to write that the only time anyone on Mr. Reed's team had been "honest" with the media was when a caddie stated to the media that the caddie had shoved a fan, that Mr. Reed's credibility was "in the mud," and that his teammates supposedly put their "integrity on the line" to

14

defend him. *Id*. at 19, 20. Newsham, in his article, also accused Mr. Reed of cheating at the tournament in 2019 in his article, referred to Mr. Reed as "the devil," and stated that Mr. Reed was an alleged "perennial problem" for the U.S. team and that the team "jelled" after Mr. Reed left. *Id*. at 23, 24. Ferguson made similar accusations in his article concerning alleged cheating by Mr. Reed during the tournament in 2019. *Id*. at 24-26.

In dismissing all of Mr. Reed's claims, the District Court found, surprisingly, with only one single, gratuitous exception, that the "numerous" statements raised in Mr. Reed's Amended Complaint allegedly constitute "non-actionable" statements of facts or opinions.[2] Dkt.#86 at 53, 65 (quoting *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1247 (M.D. Fla. 2007)). The Court proceeded to find that Mr. Reed's Amended Complaint purportedly failed to allege sufficient facts to show that any of the defendants made any of the statements with actual malice. *Id*. at 67, 68, 69. It furthermore dismissed all of Mr. Reed's claims for tortious interference by the defendants on the purported ground that the claims were barred pursuant to Florida's

---

[2] Mr. Reed subsequently filed a motion to recuse the presiding Judge below based upon a number of grounds, which noted that the Judge had been a member of a club in Florida which high-level members of the PGA Tour were also members. Dkt.#88 at 34. The presiding Judge has furthermore, without permitting discovery, similarly summarily dismissed complaints by employees of the PGA Tour itself alleging employment discrimination based upon coronavirus disease/COVID restrictions. fo -- who over Covid restrictions. *See Kim v. PGA Tour*, No. 3:23-CV-441-TJC-JBT, 2024 WL 280297, at *6 (M.D. Fla. Jan. 25, 2024); *Nealis v. PGA Tour, Inc.*, No. 3:23-CV-623-TJC-MCR, 2024 WL 1555011, at *2 (M.D. Fla. Apr. 10, 2024).

"single action" rule. *Id*. at 70. Finally, the District Court also found that allowing Mr. Reed to amend his Complaint again would allegedly be "fruitless." *Id*. at 73. The Court dismissed Mr. Reed's numerous claims on the defendants' motions to dismiss, with no notice of any conversion of the motions to motions for summary judgment. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701 (11th Cir. 2016) (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)).

A. **The District Court Erred In Finding That All But One of the Defendants' Statements Were Alleged Non-Actionable Statements of Fact or Opinion**

In arriving at its conclusion that all but one of the "numerous" statements by the defendants concerning Mr. Reed were allegedly "non-actionable," the District Court cited the rule that statements of pure opinion and statements which are not readily capable of being proven false are protected under the First Amendment. Dkt.#86 at 39 (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018); citing *Keller v. Mia. Herald Publ'g Co.*, 778 F.2d 711, 714-715, 717 (11th Cir. 1985)); *but see Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 457 (Fla. Dist. Ct. App. 1990) (holding that Under Florida law, there is no "wholesale defamation exemption for anything that might be labeled 'opinion'") (quoting *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 62 n. 10 (2d Cir. 1980)). It observed that whether a statement is a statement of opinion is a question of law for the court. *Id*. at 40 (citing *Keller*, at 715; *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006);

16

*From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 56–57 (Fla. Dist. Ct. App. 1981)). The District Court noted that, under Florida law, a "pure opinion" is an opinion which is based on facts set forth in the publication or which are otherwise known or available to the public.[3] *Id*. at 41 (quoting *Turner*, at 1262-1263; citing *From*, at 57).

However, pure opinion does not include mixed expressions of opinion where an opinion or statement is made "'which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication.'" Dkt.#86 at 42 (quoting *Turner*, 879 F.3d at 1262, 1263; citing *From*, 400 So. 2d at 57; *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995)). Pursuant to Florida law, a publication cannot consist of pure opinion "where it contains false assertions of fact." *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So.2d 881, 885 (Fla. Dist. Ct. App. 2003). *Keller*, relied upon by the District Court, stated that in determining whether a statement constitutes "pure opinion" or not:

> "[A] court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published."

---

[3] The District Court found that Florida law applied to Mr. Reed's claims. Dkt.#86 at 21.

*Keller*, 778 F.2d at 717 (quoting *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. Dist. Ct. App. 1984)). Florida law furthermore provides that:

> "An important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks ... [W]here the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise."

*Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. Dist. Ct. App. 2003) (quoting *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. Dist. Ct. App. 1986)). "'Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.'" *LRX, Inc.*, at 885 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990); citing *Anson v. Paxson Communications Corp.*, 736 So.2d 1209 (Fla. Dist. Ct. App. 1999)).

Considering the first two excerpts from Ryan's book which Mr. Reed claims to be defamatory, the District Court concluded that Ryan never stated that Mr. Reed cheated, and that a common person would not believe that Mr. Reed cheats. Dkt.#86 at 55 (quoting *Loeb*, 66 So. 2d at 245). In those passages, Ryan, in reality, states:

> "[Mr. Reed had] been kicked out of Georgia after a year for two alcohol violations, the second of which he tried to hide from his coach, and before that he'd been accused by his teammates of cheating during a qualifying event. Then he went to Augusta State, where he turned the entire team against him almost immediately, and once again he was accused of cheating, this time by shaving strikes in two straight

18

qualifying events. His teammates held a meeting and voted to kick him off the team, but Augusta State coach Josh Gregory reduced it to a two-match suspension." [Cit.].

"When the ugly details came out, Reed set to work blundering his way into deeper trouble, which was the start of a PR strategy that he's doggedly stuck to ever since. He went on Golf Channel, produced a couple of vague statements from his coaches, and generally took the path of full denial. The end result was that Reed's teammates, who had previously been silent came out of the woodwork to crucify him further, confirming old details and adding new ones." [Cit.].

*Id.* at 54 (emphasis in original) (quoting Dkt.#27 at 19).

The District Court's reasoning erroneously ignored the fact that defamatory meanings can be either express or implied. "'[I]f the defendant juxtaposes a series of facts so as to *imply* a defamatory connection between them, or creates *a defamatory implication* by omitting facts, he may be held responsible for *the defamatory implication*, unless it qualifies as an opinion, even though the particular facts are correct.'" *Turner*, 879 F.3d at 1269 (emphasis added) (quoting *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008); quoting W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 116 117 (5th ed. 1988)). The fact that Ryan did not expressly make statements to the effect that Mr. Reed cheated and referenced accusations of cheating by others do not render his statements non-defamatory or non-actionable.

To the contrary, any alleged opinions expressed by Ryan in his statements are properly held to be mixed opinions given Ryan's references to unstated and non-

public facts. Ryan makes the false and defamatory statement outright that Mr. Reed allegedly cheated in while in college by "shaving strikes in two straight qualifying events." Dkt.#86 at 54 (quoting Dkt.#27 at 19). He writes that Mr. Reed "tried to hide" an alcohol violation from his coach, however he omits or fails to provide any facts relating to the alleged concealment and there is no evidence that the facts relating to the incident are known to Ryan's readership. *Id*. Ryan furthermore states that after Mr. Reed transferred to Augusta State University (ASU), he allegedly "turned the entire team against him almost immediately…" while failing to provide supporting facts. *Id*. Similarly, Ryan's statements regarding alleged cheating by Mr. Reed at the 2019 Hero World Challenge, reference Mr. Reed's teammates "confirming old details and adding new ones." *Id*. Statements referencing undisclosed details or facts cannot be held to amount to non-actionable pure opinion.

The District Court characterized Ryan's statements as Ryan simply "describ[ing]" the accusations of Mr. Reed's teammates. Dkt.#86 at 54 (quoting Dkt.#27 at 19). The District Court erroneously failed to consider the totality of the statements, as it was required to do pursuant to law. *See Keller*, 778 F.2d at 717 (quoting *Hay*, 450 So.2d at 295). Ryan stated and implied much more in his statements than merely that Mr. Reed had been accused of cheating in college and at the tournament in 2019. Ryan stated or implied in a defamatory manner that (1) Mr. Reed tried to conceal an alcohol violation from his coach; (2) Mr. Reed turned the

entire ASU golf team against him immediately; (3) that Mr. Reed's teammates provided old and new "details" at the 2019 tournament which allegedly further "crucified" Mr. Reed; and (4) that Mr. Reed had "a PR strategy" of taking a path of "full denial." Dkt.#86 at 54 (quoting Dkt.#27 at 19).

Under Florida law, "'[w]hen the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable *per se*.'" *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1179 (Fla. Dist. Ct. App. 2003) (quoting *Axelrod v. Califano*, 357 So.2d 1048, 1050 (Fla. Dist. Ct. App. 1978)); *see also Litman v. Massachusetts Mut. Life Ins. Co.*, 739 F.2d 1549, 1561 (11th Cir. 1984) ("A slander which imputes to the plaintiff a matter which reflects adversely upon him in his occupation has long been held actionable *per se* in Florida") (citing *Teare v. Local Union No. 295 of the United Ass'n of Journeymen and Apprentices of Plumbers and Pipe Fitters Industry of U.S. and Canada*, 98 So.2d 79 (Fla. 1957); *LeMoine v. Spicer*, 146 Fla. 758 (1941); *Commander v. Pedersen*, 116 Fla. 148 (1934)). Ryan's statements regarding Mr. Reed's college career could be interpreted as implying or suggesting that Mr. Reed is dishonest. In context, following Ryan's statement regarding accusations of cheating while Mr. Reed was on the team at the University of Georgia, his statements that Mr. Reed turned the entire ASU team against him immediately and voted to kick him off the team without additional facts permit a potential false implication that the

team turned against Mr. Reed based upon alleged cheating by Mr. Reed. Furthermore, Ryan's statements concerning alleged old and new "crucifying" "details" from Mr. Reed's teammates and his so-called "PR strategy" of "full denial" create the defamatory inference that there was additional proof that Mr. Reed allegedly cheated during the 2019 tournament. *Fla. Med. Ctr., Inc.*, 568 So. 2d at 459 (finding that an article which accused the plaintiff hospital "of dishonesty in connection with its billing system and business…" was actionable "since it imputes conduct incompatible with the plaintiff's lawful business…") (citing *Owner's Adjustment Bureau, Inc. v. Ott*, 402 So.2d 466 (Fla. Dist. Ct. App. 1981)); *Perry v. Cosgrove*, 464 So. 2d 664, 665–667 (Fla. Dist. Ct. App. 1985) ("The letter indicated that the appellees did not wish to embarrass Perry any further by issuing a statement concerning the factors leading up to his dismissal. Although the term 'embarrass' may have been intended to convey and perhaps did convey only an innocuous meaning, a person of common mind might have construed it to mean that Perry had conducted himself in a shameful manner, or in a manner inconsistent with the proper exercise of his profession. Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense"). All of these insinuations by Ryan are capable of being demonstrated to be false, and are actionable and not purported pure opinion. "A charge of cheating… if false and made with knowledge

of such falsity or with reckless disregard for the truth thereof, would certainly be beyond the constitutional privilege established by the *New York Times [Co. v. Sullivan*, 376 U.S. 254 (1964)] standard." *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50, 52 (Fla. Dist. Ct. App. 1976) (*per curiam*). Being accused of alleged cheating is the most injurious and damaging accusation which can possibly be leveled against a professional golfer, as attested to by Ferguson in his statements regarding Mr. Reed. Dkt.#27 at 27.

The District Court aggravated the errors which it committed in failing to consider the totality of Ryan's statements while selectively construing particular phrases or sentences in the statements in order to dispose of Mr. Reed's claims pursuant to the privilege for statements of pure opinion or fact by proceeding to make the erroneous finding that Mr. Reed was "required" to allege that he was "never" accused of cheating in order to state a claim for defamation. Dkt.#86 at 56 (citing *Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1142 (N.D. Ala. 2022); *Johnston v. Borders*, 36 F.4th 1254, 1275–76 (11th Cir. 2022)). The fact that accusations of cheating were made against Mr. Reed does not eliminate the defamatory nature of Ryan's other statements concerning Mr. Reed. *See Anson*, 736 So. 2d at 1210–1211 ("The defendants are not precluded from asserting that the statements were mere opinions that do not rise to the level of being actionable but labeling the statements as opinion does not necessarily shield the defendants from an action for defamation")

(reversing order dismissing the plaintiff's complaint for defamation and remanding for further proceedings).

The District Court continued on to find, wholesale, that Ryan's other statements in his book chapter on Mr. Reed constitute pure opinion. Dkt.#86 at 56. These statements by Ryan included the following:

> Reed was assessed a two-stroke penalty when the round was over, <u>but the bigger problem was the hit to his reputation. Before long, someone dug up a clip of him doing the same exact thing at a 2015 tournament, and for a guy whose credibility was already in the mud, who had been accused of cheating in the past, it was like throwing gas on the flames. He was skewered.</u>

> Chamblee went so far as to say that when Tiger added Reed to the team, he "made a deal with the devil." By forcing the Americans to defend him, Reed put them in an impossible situation and forced them to greet an obvious violation – one that would have horrified most of them to commit, in a sport where players frequently call penalties on themselves even when the camera aren't running – with silence, putting their own integrity on the line.

> It figured that the first time anyone on Reed's team had been honest and open with the media, it would be a caddie admitting he'd shoved a fan.

Dkt.#86 at 54-55 (quoting Dkt.#27 at 21-22).

Ryan's statements were defamatory of Mr. Reed in a number of different respects. Ryan accuses Mr. Reed of allegedly cheating in the "same" manner at a tournament in 2015, but omits or fails to state the facts relating to the 2015 incident. *Id*. at 54 (quoting Dkt.#27 at 21). Ryan furthermore states that Mr. Reed was allegedly "skewered" following the incident during the 2019 tournament, supporting

a false, defamatory inference that Mr. Reed had supposedly been caught and determined to have cheated. *Id*. Mr. Reed expressly alleged that there was never any finding that he purportedly cheated, or engaged in misconduct. Dkt.#27 at 20-21. Ryan furthermore stated that Mr. Reed supposedly forced his teammates into "silence" concerning the "obvious violation," which put their "integrity on the line." Dkt.#86 at 54-55 (quoting Dkt.#27 at 21-22). In context, Ryan's statement can readily be understood as stating or implying, in a defamatory sense, that Mr. Reed actually did cheat, and that other players would have damaged their integrity had they commented upon the incident. Finally, Ryan's statement furthermore did not amount to mere "hyperbolic opinion." Dkt.#86 at 58 (citing *Fortson*, 434 F. Supp. 2d at 1378-1379). *See Presley v. Graham*, 936 F. Supp. 2d 1316, 1325 (M.D. Ala. 2013) (finding that the court could not say as a matter of law that the defendant's statement that the plaintiff was allegedly "a supervisor's nightmare" was "rhetorical hyperbole incapable of a demonstration of falsity").

Finally, Ryan's statement concerning the admission by the caddie supports a libelous defamatory implication that Mr. Reed and his team had allegedly been dishonest in their contacts with the media and are purportedly habitual liars. Dkt.#86 at 55 (quoting Dkt.#27 at 22). Ryan, however, offered no examples in his book of any alleged lies or dishonestly by Mr. Reed or anyone from his team. The District Court's conclusion that the statement is not objectively falsifiable was erroneous. *Id*.

at 59 (citing *Markle v. Markle*, No. 8:22-cv-511-CEH-TGW, 2023 WL 2711341, *9 (M.D. Fla. Mar. 30, 2023)). Mr. Reed has alleged that Ryan's statements regarding asserted cheating by Mr. Reed at tournaments in 2015 and 2019, his statements concerning Mr. Reed's teammates putting their integrity on the line, and his statements regarding the alleged honesty of Mr. Reed and his team in relation to the media are false, and the statements are furthermore capable of being proven false.

The District Court similarly and erroneously concluded that the statements by Newsham and Ferguson consisted of mere reporting on commentary about accusations or penalties against Mr. Reed, and statements concerning his professional reputation. Dkt.#86 at 62. The Court also expressly and dismissively stated that it would not analyze Newsham's or Ferguson's statements in detail, in disregard of the requirements for making a determination regarding whether a statement constitutes purported protected pure opinion, and therefore whether a claim based upon such a statement is subject to dismissal. *Id*. at 62-63.

Newsham's and Ferguson's statements, however, contained considerably more than mere reporting of statements by others, or unadorned opinions concerning Mr. Reed's reputation. Newsham discussed the alleged incident during the tournament in 2019, and proceeded to state, without providing facts, that "[i]t was a similar story when Reed attended Augusta State." Dkt.#86 at 60 (quoting Dkt.#27 at 24). The truth is that it was in fact not "a similar story" when Mr. Reed attended

ASU. Mr. Reed expressly alleged in his pleadings that the other players on the ASU golf team voted to drop him from the team because they disliked the fact that Mr. Reed, who was a freshman, was taking the spots of seniors or juniors on the team. Dkt.#27 at 24-25. Newsham proceeded to state, concerning Mr. Reed's departure from the U.S. team, that "Petty feuds were forgotten, egos left at the locker room door and any chance of disruption had been eradicated. Finally, the US players were a team, not just a dozen millionaire golfers thrown together." *Id*. at 60-61 (quoting Dkt.#27 at 26). Considered in context, Newsham's statements may clearly be read as implying that Mr. Reed possessed an "ego," engaged in "petty feuds," and was disruptive during his tenure playing on the U.S. team. Ferguson furthermore stated that Mr. Reed has "a reputation for cheating," which was false and defamatory as a result of the fact that there has never been any official finding that Mr. Reed has ever allegedly cheated. Dkt.#27 at 27.

The statements by Ryan, Newsham and Ferguson all contained statements defamatory of Mr. Reed, with a tendency and an intent to injure Mr. Reed's reputation and to question and cast doubt upon his honesty and integrity. Moreover, Ryan's, Newsham's and Ferguson's statements would have been understood by readers as accusing Mr. Reed of being a cheater and possessing a poor character for honesty and integrity based upon the stated alleged facts. Neither the book nor the articles consisted of solely non-actionable fact or opinion, and the District Court

erred in finding that the statements were not actionable and in dismissing Mr. Reed's defamation claims as a matter of law on the defendants' motions to dismiss. The District Court's limited construction of the statements, which enabled it to find that the statements consisted of asserted pure fact or opinion, and its failure to fully consider the statements and their circumstances and context and whether the defendants omitted or failed to provide facts to support their statements was likewise erroneous. Florida courts have found similar defamatory statements concerning a party's purported honesty to be sufficient to survive motions to dismiss. *See Barnes v. Horan*, 841 So. 2d 472, 477 (Fla. Dist. Ct. App. 2002) (reversing the trial court's order striking the plaintiff's second amended complaint for defamation and conspiracy and remanding for the plaintiff to proceed, finding that a statement by the defendant, the plaintiff's former law partner, that "[b]ecause of numerous contradictory misrepresentations by [the plaintiff] to everyone in the firm (including myself), not one person in my firm could, or would trust him to tell the truth," did more than merely state the author's opinion and "implie[d] to the reader that [the defendant], through his relationships with the people in his firm, has acquired knowledge of the fact that the plaintiff's former co-workers thought he was a liar who could not be trusted"); *Rolle v. Cold Stone Creamery, Inc.*, 212 So. 3d 1073, 1078 (Fla. Dist. Ct. App. 2017) (reversing the trial court's grant of the defendants' motions to dismiss the plaintiff's claims for defamation and conspiracy to defame

where the defendants had sent a letter to members of the media which "contained a number of comments critical of Rolle's business practices and ethics that Rolle alleges are false and defamatory…"); *Arison Shipping Co. v. Smith*, 311 So. 2d 739, 741, 742 (Fla. Dist. Ct. App. 1975) (affirming judgment in favor of the plaintiff in defamation action against the defendants arising from comments concerning the "competency" and "honesty" of the plaintiff); *Wolfson v. Kirk,* 273 So. 2d 774, 778 (Fla. Dist. Ct. App. 1973) (reversing the trial court's grant of the defendant's motion to dismiss the plaintiff's complaint for slander *per se* and remanding for further proceedings where the defendant's comment could be interpreted by persons to "attribute[ ] to the plaintiff a characteristic which is incompatible with the conduct of any lawful business").

> [W]here the alleged defamation can be understood one of two ways only one of which is defamatory to the plaintiff, it is normally a decision for the fact-finder to determine what a reasonable person hearing the statement would likely have understood it to mean, based on the circumstances and audience involved.

*Scott v. Busch*, 907 So. 2d 662, 667 (Fla. Dist. Ct. App. 2005) (citing *Miami Herald Publishing Co. v. Ane*, 423 So.2d 376 (Fla. Dist. Ct. App. 1982); *Wolfson*, 273 So.2d 774; *Restatement (Second) of Torts* § 614(2) (1977)); *see also Barnes*, 841 So. 2d at 477 ("'If [defendant's] statement would likely be reasonably understood by ordinary persons as a statement of an undisclosed existing defamatory fact, then it was properly the jury's function to determine whether a defamatory meaning was

attributed to it by recipients of the communication...'") (quoting *Stembridge*, 652 So.2d at 446; *see also Magre v. Charles*, 729 So. 2d 440, 443 (Fla. Dist. Ct. App. 1999) ("[I]f there is sufficient evidence to indicate that the privilege was exceeded or abused, then that issue must also be submitted to the fact finder") (citing *Nowik v. Mazda Motors of America (East), Inc.*, 523 So.2d 769 (Fla. Dist. Ct. App. 1988)). Mr. Reed's claims should have been found sufficient to survive dismissal prior to any discovery and he should have been permitted to proceed to discovery on his claims. "The actionable and provable false and defamatory statements, if any, will winnow out via pretrial discovery and motions for summary judgment." *Greene v. Times Pub. Co.*, 130 So. 3d 724, 730 (Fla. Dist. Ct. App. 2014). The District Court's findings, as a matter of law, on the defendants' motions to dismiss that the defendants' statements allegedly constituted pure opinions or facts which were not actionable was error warranting reversal of the District Court's Order and remand of the case to permit it to proceed.

## B. <u>The District Court Erred In Finding That Mr. Reed Failed to Allege Actual Malice</u>

The District Court additionally justified dismissal of all of Mr. Reed's claims for defamation based upon the ground of supposed failure to sufficiently allege facts showing that the defendants acted with "actual malice." Dkt.#86 at 69. In dismissing all of Mr. Reed's claims, the Court cited the rule that a plaintiff alleging a claim for defamation "'must allege facts sufficient to give rise to a reasonable inference that

the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id*. at 67 (quoting *Michel*, 816 F.3d at 702; quoting *Sullivan*, 376 U.S. at 280).

In determining whether a plaintiff has sufficiently alleged actual malice, however, a court must examine "whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988); citing *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)); *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 84 N.Y.2d 786 (1995); *Hoesten v. Best*, 34 A.D.3d 143, 155 (1st Dept. 2006)). Florida appellate courts have found "general allegations" of actual malice to be sufficient. *See Kist v. Hubbard*, 93 So. 3d 1100, 1102 (Fla. Dist. Ct. App. 2012) (citing *Gangelhoff v. Lokey Motors Company*, 270 So.2d 58 (Fla. Dist. Ct. App. 1972)).

The District Court below failed to examine whether the defendants possessed any doubt as to the veracity of their statements in finding that Mr. Reed's defamation claims were subject to dismissal, which was error. Dkt.#86 at 65-69. The District Court furthermore erroneously found that Mr. Reed's alleged only effort to satisfy the actual malice requirement was his allegation that Ryan and Hatchette chose not to speak with Mr. Reed's coaches and teammates, or PGA Tour officials. Dkt.#86 at

68 (citing Dkt.#27 at 18). Mr. Reed repeatedly alleged in both his original and Amended Complaint that the defendants acted with actual malice or, at minimum, with reckless disregard for the truth or falsity of their statements. He furthermore alleged that the defendants, on behalf of the PGA Tour and the DP World Tour, had conspired to defame and harm persons associated with LIV, including and in particular Mr. Reed, Dkt.#27 at 8; that the defendants have a history of working closely with the PGA Tour, the DP World Tour and the Golf Channel, *id*. at 10; that Ryan had published a book in 2015 containing malicious and defamatory statements concerning Mr. Reed, *id*. at 11; and that Newsham and Ferguson had republished Ryan's defamatory statements regarding Mr. Reed, *id*. at 13-14, 25-26; in addition to the fact that the defendants intentionally chose not to speak with any witnesses, including Mr. Reed's coaches or teammates, or PGA Tour officials, in order to corroborate defendants' statements concerning alleged incidents from Mr. Reed's college career and during the 2019 tournament, *id*. at 18, 23.

Mr. Reed alleged sufficient facts regarding actual malice on the part of the defendants to survive dismissal on the defendants' motions. As the Supreme Court has observed, "proof of 'actual malice' calls a defendant's state of mind into question, [cit.], and does not readily lend itself to summary disposition." *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9 (1979) (citing *Sullivan*, 376 U.S. 254; 10 Charles Alan Wright & Arthur Raphael Miller,, *Federal Practice and Procedure* § 2730 590–

592 (1973); *Herbert v. Lando*, 441 U.S. 153 (1979)); *accord Rebozo v. Washington Post Co.*, 637 F.2d 375, 381 (5th Cir. 1981)[4] (citing *Sullivan*, 376 U.S. 254; *Herbert*, 441 U.S. 153); *see also Gadsden Cnty. Times Inc. v. Horne*, 382 So. 2d 347, 349 n. 1 (Fla. Dist. Ct. App. 1980) (quoting *Hutchinson*, at 120 n. 9). In regard to proof:

> "The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights..."

*Herbert*, at 164 n. 12 (quoting 50 Am. Jur. 2d *Libel and Slander* § 352 (1970)). "[A]n inference of actual malice can be drawn when a defendant publishes a defamatory statement that contradicts information known to him…" *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983).

Contrary to the District Court's conclusions, the defendants' failure to conduct any investigation prior to publishing their defamatory statements regarding Mr. Reed is, in fact, evidence that the defendants acted with actual malice. Mr. Reed alleged that the defendants acted in disregard of the truth in their statements concerning him. As the Supreme Court has observed, "[a]lthough failure to investigate will not alone

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Court adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

support a finding of actual malice, [cit.], the purposeful avoidance of the truth is in a different category." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (citing *St. Amant,* 390 U.S. at 731).

Furthermore, in cases where there is not a need for immediate publication, "'actual malice may be inferred when the investigation for a story ... was grossly inadequate in the circumstances.'" *Hunt*, 720 F.2d at 643 (quoting *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971); citing *Curtis Publishing Co. v. Butts and Associated Press v. Walker*, 388 U.S. 130, 157 (1967); *Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980)); *see also Michel*, 816 F.3d at 703 (stating that actual malice may be shown where "the defendant purposefully avoided further investigation with the intent to avoid the truth") (citing *Connaughton*, 491 U.S. at 692; *Grier v. Johnson*, 232 A.D.2d 846, 849 (3d Dept. 1996)); *see also Hunt*, 720 F.2d at 645 (finding that a jury could find that the defendant newspaper's "investigation" of statements in an article which it published concerning the plaintiff "did not pass muster and, accordingly, infer actual malice therefrom").

In his pleadings, Mr. Reed furthermore set forth at considerable length the hostility and animosity of the PGA Tour and the golf media, including the defendants, towards Mr. Reed, as well as LIV and its players. Dkt.#27 at 7-12. Defendants' extreme hostility towards Mr. Reed personally is demonstrated by their statements including referring to Mr. Reed as "golf's biggest villain," *id*. at 23; "the

devil," *id*. at 23, 25; the statement that Mr. Reed had allegedly been "crucified" by his teammates, *id*. at 19; the statement that Mr. Reed's credibility was "in the mud," *id*. at 21; and the reference to "petty feuds" and "egos" in relation to Mr. Reed, *id*. at 26. *See Hunt*, 720 F.2d at 646 (finding that a jury could infer actual malice from the headlines used by the defendants). Ryan's malice towards Mr. Reed is also evidenced by his failure to raise the asserted incidents of cheating or stealing during Ryan's voluntary interview of Mr. Reed for his book. Dkt.#1 at 11. The defendants' hostility towards Mr. Reed constitutes evidence of actual malice on the part of the defendants. In addition, Newsham's and Ferguson's knowing republication of defamatory statements by Ryan is also additional evidence of actual malice. *See Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 430 F.2d 38, 47 (5th Cir. 1970) ("Where a person has published a false statement and information thereafter comes to him from a reliable source which would put a reasonable person on inquiry as to the truth of such statement, and instead of making such inquiry he wilfully republishes the false statement, the repetition of the defamation is strong evidence of malice"). Additionally, Newsham's statement suggesting that Mr. Reed allegedly stole a watch, a putter and cash was defamatory *per se* and, pursuant to Florida law, raises a presumption of malice as a matter of law. *See Axelrod*, 357 So. 2d at 1050 (citing *Layne v. Tribune Co.*, 146 So. 234 (1933); *Commander*, 156 So. 337; *Tip Top Grocery Co. v. Wellner*, 186 So. 219 (Fla. 1938)).

In view of the several "badges of malice" exhibited by the defendants through their conduct, as set forth above, Mr. Reed's Amended Complaint sufficiently alleged that the defendants acted intentionally or recklessly with actual malice for the purposes of stating claims for defamation.[5] *See Hood v. Connors*, 419 So. 2d 742,

---

[5] As one prominent commentator has published in the FLORIDA BAR JOURNAL:

There are 24 badges of malice. [Fn.].

- failure to conduct a thorough investigation before publishing serious and damaging allegations that are not "hot news";
- failure to give the plaintiff a fair opportunity to reply to defamatory allegations;
- failure to report exculpatory facts;
- omitting pertinent information to create a false impression;
- destruction, loss, or unavailability of a reporter's notes or research;
- the reporter's knowledge of a quoted source's animosity toward the plaintiff;
- the alteration of quotes to maximize a story's impact;
- a reporter's knowledge of facts conflicting with the report;
- emphasizing unimportant events to support a defamatory statement;
- continued reliance on a source that had proven unreliable in other respects;
- a preconceived determination to disparage a plaintiff or a preconceived slant or view;
- repetitive media attacks on the plaintiff;
- failure to contact key witnesses;
- a reporter's ill will toward the plaintiff;
- competitive pressure for "hot news" story;
- discrepancies, inconsistencies, and equivocation in the testimony of media witnesses;
- a reporter's departure from professional standards;
- failure to supervise the reporter's preparation of the story;
- refusal to publish a retraction upon learning of errors in a story;

743–744 (Fla. Dist. Ct. App. 1982) ("[I]n Count I [the plaintiff] alleged that [the defendant] made the[ ] false remarks either knowing they were false or 'with a reckless disregard for the truth and without reasonable grounds for the Defendant to believe they were true. He further alleged [the defendant] made these remarks with intent to injure and defame him. These allegations are sufficient to charge actual malice…") (citing *Sullivan*, 376 U.S. 254; *Lundquist v. Alewine*, 397 So.2d 1148 (Fla. Dist. Ct. App. 1981); *Matthews v. Deland State Bank*, 334 So.2d 164 (Fla. Dist. Ct. App. 1976)).

The District Court should have properly found, pursuant to Florida law, that Ryan's, Newsham's and Ferguson's statements representing or implying, in effect,

---

     • the use of deception to obtain a defamatory story;
     • a reporter's lack of credibility;
     • prior and subsequent defamatory statements;
     • that an investigative agency with the same information as a reporter declined to prosecute or take any action against the plaintiff; and
     • making threats in connection with a story.

     These badges of malice are a guide and nothing more. The possible scope of evidence that may support an inference of malice is unlimited. The badges are useful because they summarize actual events that tend to repeat themselves in media defamation cases. Evidence of the badges in discovery will support a strong and well-precedented argument for constitutional malice.

Manuel Socias, *Showing Constitutional Malice in Media Defamation*, Fla. B.J., 38-40 (2018) (footnote omitted).

that Mr. Reed was an asserted cheater, dishonest or lacking integrity constituted defamation *per se* from which malice may be presumed for the purposes of the defendants' motions to dismiss. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1368 (S.D. Fla. 2021) (finding that the plaintiff "plausibly plead a factual basis from which 'actual malice' can be inferred" and denying the defendant news network's motion to dismiss where the defendant published selective or truncated quotes by the plaintiff). At minimum, Mr. Reed should have been granted an opportunity to conduct discovery on the issue of the defendants' actual malice. *See Firestone v. Time, Inc.*, 231 So. 2d 862, 865–866 (Fla. Dist. Ct. App. 1970) ("Where… the opposing party charges the moving party with printing a defamatory publication with malice, and must probe the conscience of the moving party to prove her case, or in any case where the subjective elements of willfulness, intent, maliciousness or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain"). The District Court's categorical dismissal of all of Mr. Reed's claims for defamation with no examination of the circumstances to determine whether the defendants may have been aware of the falsity of any of their statements accordingly amounted to error, supporting reversal of the District Court's Order and remand for further proceedings.

Finally, defamation claims involving actual malice are subject to the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Turner*, 879 F.3d at 1273 (quoting *Michel*, 816 F.3d at 702). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, at 678 (citing *Twombly*, at 570). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level…" *Twombly*, at 555-556 (citing Charles Alan Wright & Arthur Raphael Miller, *Federal Practice and Procedure* § 1216 235–236 (3d ed. 2004); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 678. Dismissal of a complaint is appropriate when "'it is clear [that] the plaintiff can prove no set of facts in support of the claims in the complaint.'" *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)). Dismissal of a complaint with prejudice, moreover, "'is a 'sanction of last resort, applicable only in extreme circumstances.'" *Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582, 1583 (11th Cir. 1986) (quoting *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982)).

Mr. Reed's extensive Amended Complaint contained numerous, well-pleaded facts relating to the contents and circumstances of the defendants' defamatory statements concerning him, as well as the history of the defendants' public comments regarding Mr. Reed, and the defendants' relationships to one another and to the PGA Tour and Golf Channel. Dkt.#27 at 6-31. Mr. Reed pleaded plausible claims for defamation and actual malice based upon the defendant's statements, nearly all of which clearly concerned Mr. Reed and were disparaging of him or called into question his honesty and integrity. Furthermore, had Mr. Reed been afforded discovery on his claims, it cannot be said that Mr. Reed would not have been able to prove any set of facts in support of his claims. Accepting as true the well-pleaded facts set forth in Mr. Reed's Amended Complaint, the District Court should properly have denied the defendants' motions to dismiss and permitted discovery on the merits of Mr. Reed's claims.

### C. <u>The District Court Erred In Finding That Larson's and Bloomberg, L.P.'s Publication Did Not Concern Mr. Reed</u>

Citing the Florida rule that an alleged defamation must be "of and concerning" the plaintiff, the District Court found that the article "*Saudi-Backed LIV Golf is Using PGA Suit to Get Data on 9/11 Families Court Told*" published by Bloomberg and Larson was allegedly not about Mr. Reed, and that the article did not mention Mr. Reed. Dkt.#86 at 25, 37, 38 (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. Dist. Ct. App. 1997); *Zimmerman v. Buttigieg*, 521 F. Supp. 3d

40

1197, 1212 (M.D. Fla. 2021)). It further found that the large, closeup photograph of

Mr. Reed at the beginning of the article was incidental to the article's content. *Id*. at

38; Dkt.#50-1. The Court concluded that, as a matter of law, no reasonable person

would understand the article as implicating Mr. Reed, and dismissed Mr. Reed's

claims based upon the publication by the defendants. Dkt.#86 at 38 (citing *Rubin v.*

*U.S. News & World Rep.*, 271 F.3d 1305, 1308 n. 10 (11th Cir. 2001); *Fogel v.*

*Forbes, Inc.*, 500 F. Supp. 1081, 1085 (E.D. Pa. 1980*); Houseman v. Publicaciones*

*Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 526 (Tex. App. 2007)).

Mr. Reed alleged that the defendants' prominent use of the photograph of him

created a false and misleading implication that Mr. Reed was somehow involved in

using the PGA lawsuit to gather information on 9/11. Dkt.#28 at 27-28. He further

alleged that Larson and Bloomberg L.P. willfully disregarded the fact that Mr. Reed

was not involved in the PGA lawsuit to include his picture in the publication. *Id*. at

29.

Under Florida law, the "of and concerning" requirement "is generally a

question of fact for the jury…" *Thomas*, 699 So. 2d at 805. The requirement "'can

be decided as a matter of law where the statements 'are incapable of supporting a

jury's finding that the allegedly libelous statements refer to a plaintiff.'" *Id*. (quoting

*Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y.

1995)). An individual may be liable for defamation for a publication relating to a

group where "'the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.'" *Id.* at 804 (quoting *Restatement (Second) of Torts* § 558 (1977)).

Among the authorities cited upon by the District Court was *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588 (Fla. Dist. Ct. App. 1983). Dkt.#86 at 25 (citing *Brown*, at 590; *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. Dist. Ct. App. 2020)). In *Brown*, the defendant newspaper published a story about a local murder trial and used a "small head-shot photograph" of Brown in the story, printing the name of the accused in the murder trial in the caption to the photograph. *Brown*, at 589. Brown filed suit against the newspaper, arguing that the mis-publication of his photograph gave the article a defamatory implication. *Id*. The circuit court granted the newspaper's motion to dismiss Brown's complaint and he appealed, and the district court of appeals reversed the judgment of the circuit court, concluding that, under law, it could not "disassociate the photograph of [ ] Brown from the import of the story without dictating that the ordinary reader circumscribe his interpretation of the publication by doubt and disbelief." *Id*. at 589.

In regard to Larson's and Bloomberg L.P.'s article, an ordinary reader would have no reason to doubt or disbelieve that Mr. Reed was a party to the lawsuit between the PGA Tour and LIV Golf. The vast majority of Larson's and Bloomberg readership would be unaware that Mr. Reed was not a party to the suit. The

circumstances of Larson's and Bloomberg's publication of the article with a large photograph of Mr. Reed could support a finding that that the defendants were referring to him. The District Court's finding to the contrary, that no reasonable person could understand the article as referring to Mr. Reed was erroneous. The Court should have refrained from determining as a matter of law whether the article with its prominent photograph of Mr. Reed could be understood to be "of and concerning," and should have found that the issue was properly reserved for a jury.

**D. <u>The District Court Erred in Dismissing Mr. Reed's Claims for Tortious Interference</u>**

Mr. Reed additionally raised claims for tortious interference by the defendants in the action below, stating that, as a direct result of the defendants' actions, Mr. Reed has suffered financial damage, has had substantial sponsorships terminated, and has lost out on other potential sponsorships. Dkt.#27 at 61-67, 73-74, 80-81, 86-87, 92-93. The District Court categorically dismissed all of Mr. Reed's claims for tortious interference on the alleged ground that the claims were barred pursuant to Florida's "single action" rule. Dkt.#86 at 70.

The finding by the District Court that Florida's single action rule allegedly barred Mr. Reed's tortious interference claims was error. The rule provides that, "'if a defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.'" *Ozyesilpinar v. Reach PLC*, 365 So.3d 453, 461 (Fla. Dist. Ct. App. 2023) (quoting *Callaway Land & Cattle Co.*

*v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. App. 2002); citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)). Florida's single publication/single action rule constitutes a standard of proof, and not a pleading standard. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1210 (11th Cir. 2022), *cert. denied sub nom. Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Federal procedural law provides that: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Moreover, a party may allege as many separate claims as he or she has, regardless of consistency. *See* Fed. R. Civ. P. 8(d)(3).

The District Court's dismissal of Mr. Reed's tortious interference claims on motions to dismiss based upon a state evidentiary standard accordingly constituted reversible error. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (reversing the district court's grant of summary judgment in favor of the defendant as to the plaintiff's claims for alleged violation of Telephone Consumer Protection Act and for common law conversion, finding that the district court erred in holding the plaintiff to Florida's heightened pleading

standard for conversion claims); *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (*per curiam*) (finding that, despite the fact that Florida law required specific allegations of publication in the complaint, the plaintiff's complaint for libel satisfied the liberal pleading standard under Federal Rule of Civil Procedure 8(a) and that the district erred in dismissing the plaintiff's complaint). Florida courts have found claims for tortious interference to be sufficient to state a claim in response to a motion to dismiss where the plaintiff's claim is based upon false or untrue statements. *See Turkey Creek, Inc. v. Londono*, 567 So. 2d 943, 948 (Fla. Dist. Ct. App. 1990); *Smith v. Ocean State Bank*, 335 So. 2d 641, 644 (Fla. Dist. Ct. App. 1976). Mr. Reed's Amended Complaint set forth facts and the essential elements to support a finding that it sufficiently stated claims for tortious interference against the defendants. *See Popular Bank of Fla. v. R.C. Asesores Financieros, C.A.*, 797 So. 2d 614, 622 (Fla. Dist. Ct. App. 2001) (citing *Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126 (Fla. 1985)). Mr. Reed has suffered loss of millions in sponsorships and business ventures as a result of the defendants' statements regarding him. Dkt.#27 at 6-7, 29-30. He has furthermore had abuse, including epithets of being an alleged "cheat" or "cheater," hurled at him by fans during tournaments. *Id*. at 30. The abuse from fans as a result of allegations such as those made by the defendants adversely impacts Mr. Reed's performance. *Id*.

Mr. Reed alleged facts in his Amended Complaint supporting plausible claims of tortious interference against the defendants under *Twombly* and *Iqbal*. The District Court's use of a Florida standard of proof to dismiss Mr. Reed's claims for tortious interference in a federal proceeding amounted to error, warranting reversal of the District Court's Order.

E. **The District Court Erred in Finding That Allowing Mr. Reed an Additional Opportunity to Amend His Complaint Would Be "Futile"**

Finally, the District Court also justified dismissal of all of Mr. Reed's claims on the additional ground that permitting Mr. Reed to amend his pleading a second time would allegedly be "fruitless" and "futile." Dkt.#86 at 73.

On December 13, 2022, prior to any responsive pleading by the defendants, the District Court issued a *sua sponte* order dismissing Mr. Reed's initial Complaint without prejudice on the ground that the Complaint allegedly constituted a "shotgun pleading" which purportedly failed to give the defendants notice of the grounds upon which each claim rested as a result of the fact that the Complaint incorporated its factual allegations in each count. Dkt.#25 at 2. The Court also found that Mr. Reed's Complaint supposedly failed to comply with Federal Rule of Civil Procedure 8(a), which states that a pleading need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief…'" *Id*. (quoting Fed. R. Civ. P. 8(a)).

Mr. Reed filed his Amended Complaint on January 13, 2023. Dkt.#27. On the same date, Mr. Reed filed his Notice of Compliance, informing the Court that his Amended Complaint (1) no longer incorporated by reference the preceding paragraphs in each count, (2) omitted factual allegations in order to shorten the length, (3) included the specific facts alleged to constitute defamation in each count, and (4) pled the defamation counts specific to each defendant. *Id*. at 1-2.

The grounds relied upon by the District Court in concluding that granting Mr. Reed an opportunity to amend his Complaint a second time would allegedly be futile were erroneous. The Court criticized Mr. Reed for asserting the "same" alleged defamatory statements in his Amended Complaint. Dkt.#86 at 72. Rule 8 guarantees that a party to an action may state as many separate claims or defenses as the party has in a pleading, regardless of consistency. *See* Fed. R. Civ. P. 8(d). Federal Rule of Civil Procedure 18 furthermore provides that a party may join as many claims as it has against the opposing party. *See* Fed. R. Civ. P. 18. Nowhere within in its order dismissing Mr. Reed's claims without prejudice did the District Court make a finding that Mr. Reed had allegedly failed to state a specific one of his claims or reference any particular statement asserted to be defamatory. Dkt.#25. The sole ground for the District Court's dismissal of the claims was Rule 8(a)'s requirement that a pleading contain a short and plain statement of a claim. *Id*. at 2.

The District Court also found that Mr. Reed allegedly failed to cure the deficiencies in the Court's order. Dkt.#86 at 72. This finding, likewise, was error in view of the fact that Mr. Reed amended his Complaint to address the asserted deficiencies in the Court's order, and furthermore filed an explanation regarding how he had amended his Complaint in an effort to comply with the Court's directions in its order. Mr. Reed filed his Notice of Compliance for the purpose of not only demonstrating how Mr. Reed had complied with the Court's Order, but also for potential guidance from the Court regarding whether his amendments rendered the Amended Complaint sufficient. Dkt.#28.

Federal Rule of Civil Procedure 15 requires that a court should "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). There is a strong policy under the Federal Rules favoring liberal amendments. *See Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 757 (11th Cir. 1985) (citing *Wallin v. Fuller*, 476 F.2d 1204, 1209 (5th Cir. 1973); *United States v. Stephen Brothers Line*, 384 F.2d 118, 124–125 (5th Cir. 1967)). "[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 999–1000 (11th Cir. 2021) (quoting *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406–407 (11th Cir. 1989)). The discretion of a district court to deny leave to amend is "severely restricted." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291

(11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). Leave to amend should be granted unless there is a "substantial reason" to deny leave to amend. *See Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (quoting *Shipner*, at 407).

As the Florida Court of Appeals has observed, "two or more attempts to state a cause of action in defamation is certainly not unexpected." *Scott*, 907 So. 2d at 666. The District Court erred in dismissing Mr. Reed's claims with prejudice, prior to any discovery, on the alleged ground that amending would have been "futile," without affording Mr. Reed an additional opportunity to amend. Mr. Reed made substantial and good faith efforts to amend his Complaint in accordance with the District Court's direction in its order. Moreover, his Amended Complaint clearly contained amply sufficient facts to provide the defendants with notice of Mr. Reed's claims under Rule 8. Affording Mr. Reed an additional opportunity to amend his Amended Complaint would furthermore not have resulted in any prejudice to the defendants, or undue delay of the proceedings.

The District Court gave no indication during its hearing on the defendants' motions to dismiss that it considered Mr. Reed's Amended Complaint to allegedly still be deficient. It deprived Mr. Reed of his opportunity to amend his pleading as a matter of course under Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. P.

15(a). The District Court's order dismissing Mr. Reed's claims should be reversed and the case remanded to permit the case to proceed to discovery on the merits.

## CONCLUSION

Based upon the authorities and arguments set forth herein, Appellant Patrick Nathaniel Reed requests that the Order of the District Court dismissing Appellant's claims be reversed.

Respectfully submitted, this 18th day of April, 2024.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,664 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Anthony C. Lake_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, pursuant to Fed. R. App. P. 21(a)(2)(A)(ii) and Fed. R. App. P. 25(d), that the foregoing filing was this 18th day of April, 2024, served by the undersigned by depositing the filing with a commercial carrier, for delivery within 3 days to the Clerk of Court and the following persons at the following addresses:

| | |
|---|---|
| Carol J. Locicero, Esq.<br>Linda R. Norbut, Esq.<br>Thomas & LoCicero, PL<br>601 South Boulevard<br>Tampa, Florida 33606-2629 | Jeremy A. Chase<br>Jesse Feitel<br>Laura R. Handman<br>Davis Wright Tremaine LLP<br>1 25 1 Avenue of the<br>Americas<br>New York, New York 10020 |
| Gregory W. Herbert<br>Savannah Young<br>Greenberg Traurig, LLP<br>450 S Orange Ave, Suite 650<br>Orlando, Florida 32801 | |

> */s/ Anthony C. Lake*
> Anthony C. Lake
> State Bar of Georgia No. 431149
> Gillen & Lake LLC
> 400 Galleria Parkway
> Suite 1920
> Atlanta, Georgia 30339
> Telephone: (404) 842-9700
> Fax: (404) 842-9750
> Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed