**No. 24-10070-D**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

PATRICK REED,
Plaintiff-Appellant,

v.

SHANE RYAN, *et al.*
Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida
No. 3:22-cv-01181-TJC-PDB

---

**ANSWER BRIEF OF APPELLEES**
**THE ASSOCIATED PRESS AND DOUG FERGUSON**

---

Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
THOMAS & LoCICERO PL
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

*Attorneys for the Appellees*
*THE ASSOCIATED PRESS and*
*DOUG FERGUSON*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Appellees The Associated Press and Doug Ferguson (collectively, the "AP Defendants") file this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

1. Barksdale, Patricia D. (U.S. Magistrate Judge)
2. Bloomberg L.P.
3. Bloomberg, Inc.
4. Chase, Jeremy A. (Appellate and trial counsel for Shane Ryan, Hachette Book Group, Inc. and NYP Holdings, Inc. dba The New York Post)
5. Corrigan, Timothy J. (U.S. District Court Judge)
6. Davis Wright Tremaine LLP
7. Feitel, Jesse (Appellate and trial counsel for Shane Ryan, Hachette Book Group, Inc., NYP Holdings, Inc. dba The New York Post)
8. Ferguson, Doug
9. Fox Sports, Inc.
10. Gillen & Lake LLC
11. Greenberg Traurig, P.A.
12. Hachette Book Group, Inc.

13. Hachette Livre USA, Inc.

14. Handman, Laura Rose (Appellate and trial counsel for Shane Ryan, Hachette Book Group, Inc., NYP Holdings, Inc. dba The New York Post)

15. Herbert, Gregory W. (Appellate and trial counsel for Bloomberg L.P. and Erik Larson)

16. Isaak Law Firm

17. Isaak, Melissa (Appellate counsel for Patrick Reed)

18. Klayman Law Group, P.A.

19. Klayman, Larry E. (Trial counsel for Patrick Reed)

20. Lagardère North America Inc.

21. Lagardère Media

22. Lagardère SA, which is traded on the Paris stock exchange (MMB-FR)

23. Lake, Anthony C. (Appellate counsel for Patrick Reed)

24. Larson, Erik

25. LoCicero, Carol Jean (Appellate and trial counsel for The Associated Press, Doug Ferguson, Shane Ryan, Hachette Book Group, Inc. and NYP Holdings, Inc., dba The New York Post)

26. Mello, Kimberly S. (Appellate counsel for Bloomberg L.P. and Erik Larson)

27. News Corporation (stock ticker symbols NWS & NWSA)

28. Newsham, Gavin

29. Norbut, Linda Riedemann (Appellate counsel for The Associated Press, Doug Ferguson, Shane Ryan, Hachette Book Group, Inc. and NYP Holdings, Inc., dba The New York Post)

30. NYP Holdings, Inc., d/b/a The New York Post

31. Reed, Patrick

32. Ryan, Shane

33. The Associated Press

34. Thomas & LoCicero PL

35. Vivendi SA, which is traded on the Paris stock exchange (VIVEF-FR)

36. Young, Savannah (Trial counsel for Bloomberg L.P. and Erik Larson)

Respectfully submitted this 19th day of July, 2024.

/s/ Carol Jean LoCicero
Carol Jean LoCicero

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 28(i), the AP Defendants adopt by reference the statement regarding oral argument of Defendants Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. (the "Co-Defendants"). *See* Br. of Co-Defs. at i (ECF 36).

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

STATEMENT OF JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

STANDARD OF REVIEW ........ 8

SUMMARY OF THE ARGUMENT ........ 8

ARGUMENT ........ 8

1. Reed failed to plausibly plead actual malice ........ 9
2. The challenged statements are opinion and/or substantially true ........ 9
3. Reed's tortious interference claims fall under the single-action doctrine ........ 10
4. It was not an abuse of discretion for the district court to dismiss this action with prejudice ........ 10
5. Reed waived all further issues ........ 11

CONCLUSION ........ 11

CERTIFICATE OF COMPLIANCE ........ 13

CERTIFICATE OF SERVICE ........ 13

# TABLE OF AUTHORITIES


Cases — Page(s)

*Affordable Aerial Photography, Inc. v Trends Realty USA Corp,*
No. 23-11662, 2024 WL 835235 (11th Cir, Feb. 28, 2024)………..…………..11

*Avena v Imperial Salon & Spa, Inc.,*
740 F. App'x 679 (11th Cir. 2018)……..…………………………………….11

*Harris v Univ. of Ala.,*
792 Fed. App'x 713 (11th Cir. 2019)..…………………...…………………..11

*Jackson v Bank of Am., N.A.,*
898 F.3d 1348 (11th Cir. 2018)……………………………………………...10,11

*Klayman v. Judicial Watch, Inc.,*
22 F. Supp. 3d 1240 (S.D. Fla. 2014)……………..…………………………..9,10

*Mason v. New Yorker Mag., Inc.,*
501 U.S. 496 (1991)………………………………………………………....9

*Michel v. NYP Holdings, Inc.,*
816 F.3d 686 (11th Cir. 2016)………..……………………………………9

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990) ……………..……………………………………………9

*Orlando Sports Stadium, Inc. v. Sentinel Star Co.,*
316 So. 2d 607 (Fla. 4th DCA 1975)………………...…………………………10

*Turner v. Wells,*
879 F.3d 1254 (11th Cir. 2018)……………………………………………..9

*Turner v. Wells,*
879 F.3d 1254 (11th Cir. 2018)……………………………………………..9

Rules

Fed. R. App. P. 28(i) ........................................................................... i, 1, 2, 3, 8

## STATEMENT OF JURISDICTION

Pursuant to Fed. R. App. P. 28(i), the AP Defendants adopt by reference the statement of jurisdiction of the Co-Defendants. Br. of Co-Defs. at 1.

## STATEMENT OF THE ISSUES

Pursuant to Fed. R. App. P. 28(i), the AP Defendants adopt by reference the statement of the issues articulated by the Co-Defendants. Br. of Co-Defs. at 2.

## STATEMENT OF THE CASE[1]

Pursuant to Fed. R. App. P. 28(i), the AP Defendants adopt by reference the counter-statement of the case articulated by the Co- Defendants. Br. of Co-Defs. at 3-14. In addition, the AP Defendants provide the following additional information relevant to the Court's consideration of Appellant Patrick Nathaniel Reed's claims against the AP Defendants.

Reed's claims raised in the Amended Complaint against the AP Defendants rest on a February 2021 piece, entitled *Column: Reed's reputation from Bahamas the ultimate penalty* (the "Column"). [Doc. 27, p. 26]; *see also* Br. of Appellant Patrick N. Reed ("Init. Br.") at 8. The Column explores the impact that Reed's reputation for cheating in the eyes of the public has had on his career.

According to Reed's own admissions, Reed has long been plagued with accusations of cheating [Doc. 27, p. 11 (describing accusations of cheating dating as far back as 2015)]; *see also* Init. Br. at 5. The Column explores the impact the public perception of Reed as a cheater has had on Reed's career, particularly after Reed's performance at a Bahamas tournament where he was penalized. The

[1] All documents relied upon herein are contained in Reed's appendix. However, because the appendix is not bookmarked, the Co-Defendants will file a supplemental appendix with certain key documents ("Supplemental Appendix"). (*See* Br. of Co-Defs. at 4, n.2). All citations herein designated as "[Doc. _]" refer to documents in the Supplemental Appendix.

Column observes Reed would have a "hard time living down that incident," and "[m]oving past this [new] one will be almost impossible." [*See generally* Doc. 35-1]. In short, the Column does what columns do; it delves into possible impacts and explores effects.

The Column first describes a well-known incident that occurred at the 2019 Hero World Challenge in the Bahamas, where Reed was assessed a two-stroke penalty for "improving his line of play" by "us[ing] the back of his wedge to scoop away sand – twice – from behind his golf ball in a waste bunker." (the "Bahamas Event"). [*See id.*; Doc. 27, pp. 20-21 (similarly describing the Bahamas Event)]. The Column posits that the real impact on Reed, however, was not the technical penalty but the reputational hit in the eyes of the public that came with it. The Column notes that Reed's behavior has haunted him ever since the Bahamas Event.

For example, in Hawaii, fans shouted, "CHEATER!" [Doc. 35-1, p. 3]. In 2021, at the Farmers Insurance Open at Torrey Pines in San Diego, Reed claimed embedded ball relief (the "California Event"), and another fan firestorm ensued on social media. [*See id.*]. Rather than take a side, however, the Column expressly notes that "[t]he procedure Reed followed wasn't illegal," and that PGA officials confirmed Reed did "nothing wrong." [*Id.* at 4].

Ignoring the Column's actual content, Reed contends that "[t]he entire purpose of the [Column] is to plant in the reader's mind that . . . Mr. Reed is a

habitual cheater." [Doc. 27, pp. 26-27]. Here are the actual words from the Column, with the portions Reed complains about in bold [*see id.* at 16]:

> (1) The violation was so egregious that Rickie Fowler, glancing at the replay on television, quickly raised his eyebrows and said: "Whoa! What was THAT?"
>
> It was Patrick Reed**.**
>
> **This was just over a year ago in the Bahamas, the day Reed infamously used the back of his wedge to scoop away sand — twice — from behind his golf ball in a waste bunker, improving his line of play.** Only when he was shown video evidence did Reed accept the two-shot penalty, but not before suggesting the camera angle made it look worse than it was**.**
>
> **The penalty, as it turns out, was worth more than two shots.**
>
> **There is no greater punishment in golf than being stuck with a reputation for cheating**.

[*Id.* at 27]. In reference to the California Event, Reed contends the following statements are defamatory:

> (2) **Moving past this one will be almost impossible.**
>
> (3) **He pulled his approach from a fairway bunker into thick grass left of the 10th green. Approaching where a volunteer had marked the spot with a tiny flag, Reed asked if the ball bounced. "No, I didn't see it bounce," the volunteered [sic] replied.**
>
> **He turned to his playing partners, PGA Tour rookie Will Gordon and second-year player Robby Shelton, and told them, "They said it didn't bounce," and that he would check for an embedded lie. Crouching over, he marked the spot with a tee, put the ball in the palm of his hand and kept probing the turf for about 5 seconds when he called for an official. And then he poked around for another five seconds.**

> **"I believe it broke ground, but I'm going to let you make that call," Reed told Brad Fabel, the rules official. Fabel didn't immediately know what he was talking about because Reed had placed the ball about 8 feet away. Reed showed him where the ball was, Fabel poked around and agreed there was a "lip," meaning the ball had broken the plane of the soil.**
>
> **Free drop.**
>
> The procedure Reed followed wasn't illegal. It wasn't even necessary for him to call for an official. Rory McIlroy didn't ask for a ruling when the same thing happened on the 18th hole that day. And according to McIlroy, Rory Sabbatini also took relief from an embedded ball on the 15th hole Saturday.
>
> The rule (16-3) allows players to proceed as if the ball is embedded provided it is "reasonable to conclude" based on the information at hand.

[*Id.* at 27-28] (Passages (1)-(3), collectively, the "AP Passages").

The Amended Complaint lodged eight counts against the AP Defendants, including twin counts for defamation, defamation by implication, defamation per se, and for tortious interference also premised on the AP Passages. [*Id.* at 67-81]. On February 24, 2023 and February 27, 2023, the AP Defendants filed a motion to dismiss [Doc. 35] and a corrected motion to dismiss [Doc. 36],[2] respectively, seeking to dismiss the Amended Complaint on multiple bases: (i) under Florida's borrowing statute, Section 95.10, the claims are time barred by either New York's

[2] The District Court's dismissal order addresses the AP Defendant's "corrected" motion (Doc. 36) and its exhibits. [*See* Doc. 86, pp. 20, 76].

or Texas's one-year statute of limitations; (ii) the subject comments constitute protected and non-actionable opinion or otherwise wholly lack defamatory meaning; (iii) Reed fails to plausibly allege actual malice; and (iv) the single cause of action rule bars the tortious interference claims. [Doc. 35; Doc. 35-1; Doc. 35-2].

The district court granted the AP Defendants' motion to dismiss, acknowledging that "The article authored by Ferguson and published by the Associated Press, each contain statements and information either derived from the Book [titled *The Cup They Couldn't Lose: America, the Ryder Cup, and the Long Road to Whistling Straits*, which was published by Defendant Hachette Book Group, Inc. and authored by Defendant Shane Ryan,] or substantially similar statements to those in the Book that are non-actionable." [Doc. 86, pp. 59-60]. Expressly included among those statements, the Court concluded, were each of the AP Passages. [*Id.* at 60-62].

More specifically, the court found that Reed's claims – "that Ferguson's statements about Reed's penalty at the Hero World Challenge accused him 'of being a cheater' and that Ferguson's statements about Reed's performance at another golf event falsely implied that Reed 'had somehow gotten away with cheating'" – are not supported because "Reed does not contest the truth of the facts contained in the statements. Rather, he contests the opinions based on those

statements of fact." [*Id.* at 63]. The court ultimately held that "Ferguson discloses true statements of facts and bases his opinions on those statements—a form of permissible speech," and therefore, "Reed states no viable claims premised on the statements in Ferguson's article and published by the Associated Press." [*Id.* at 64].

Additionally, the tortious interference claims, the court found, violated Florida's single cause of action rule. [*Id.* at 70-71].

## STANDARD OF REVIEW

Pursuant to Fed. R. App. P. 28(i), the AP Defendants adopt by reference the standard of review articulated by the Co-Defendants. Br. of Co-Defs. at 14-15.

## SUMMARY OF THE ARGUMENT

The AP Defendants adopt by reference the arguments made by the Co-Defendants and the judgment in favor of all defendants should be affirmed on those bases alone. Br. of Co-Defs.at 15-17.

## ARGUMENT

Pursuant to Fed. R. App. P. 28(i), the AP Defendants respectfully adopt by reference the arguments articulated by the Co- Defendants, including:

(1) ***Reed failed to plausibly plead actual malice***. *See*, *e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) (affirming dismissal for failure to plead actual malice; plaintiffs pled defendants "'knowingly and recklessly' ignored or deliberately avoided learning information" but not

"facts demonstrating that [d]efendants acted in these ways"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). The District Court correctly found, after "[l]ooking past Reed's conclusory allegations of actual malice" in the Amended Complaint, that he "fall[s] short of alleging sufficient facts showing that any Defendant had actual malice," and that "[t]his deficiency is fatal to each defamation claim." [Doc. 86, p. 69].

(2) ***The challenged statements are opinion and/or substantially true.*** *See, e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) (substantial truth); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (opinion); *Turner*, 879 F.3d at 1262-63 (opinion); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014), *aff'd,* No. 14-13855 (11th Cir. Feb. 17, 2015) (substantial truth). The District Court correctly held that none of the AP Passages were false statements of fact. As the court recognized, "Reed does not contest the truth of the facts contained in the [AP Passages]. Rather, he contests the opinions based on those statements of fact, like '[t]here is no greater punishment in golf than being stuck with a reputation for cheating' when Ferguson described Reed's two-shot penalty at the Hero World Challenge and Reed's abusive treatment by spectators thereafter." [Doc. 86, p. 63].

The court thus correctly found that the AP Passages constitute nonactionable pure opinions based on disclosed facts.

(3) ***Reed's tortious interference claims fall under the single-action doctrine***. *See, e.g.*, *Klayman*, 22 F. Supp. 3d at 1255-57 (applying single action rule to dismiss tortious interference claim filed by Reed's counsel); *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975) ("Florida courts have held that a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong."). Because Reed's tortious interference claims against the AP Defendants were premised on the same conduct and harm as his deficient defamation claims, the District Court correctly dismissed those claims as well.

(4) ***It was not an abuse of discretion for the District Court to dismiss this action with prejudice***. *See, e.g.*, *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018).

(5) ***Reed waived all further issues***. *See, e.g.*, *See*, *e.g.*, *Harris v. Univ. of Ala.*, 792 F. App'x 713, 714 (11th Cir. 2019); *Affordable Aerial*

*Photography, Inc. v. Trends Realty USA Corp*, No. 23-11662, 2024 WL 835235, at *4 n.3 (11th Cir. Feb. 28, 2024).

*See* Br. of Co-Defs. at 17-51.[3]

In short, the Column did what columns are meant to do: debate the impacts of public perceptions of Reed related to well known public events. The District Court, therefore, correctly held that none of the AP Passages sued upon are actionable.

## CONCLUSION

For the foregoing reasons, the AP Defendants respectfully request that this Court affirm the district court's decision in its entirety, which dismissed all claims against them with prejudice.

[3] The AP Defendants also argued that the claims against it were time-barred by the one-year statute of limitations in Texas or New York. [Doc. 36, pp. 9-14]. In support, they argued that Reed is a Texas citizen, that any alleged injury would have occurred in New York or Texas, that none of the allegedly defamatory conduct occurred in Florida, and that Reed had previously admitted that a substantial part of the events giving rise to those claims occurred in Texas. The court disagreed, applying the factors in Florida's "significant relationship" test (to determine choice of law), and determined that "Florida dominates the parties' relationship with Reed." [Doc. 86, pp. 20-21]. However, if this case had been allowed to proceed, this issue may have been revisited at summary judgment, creating yet another significant impediment for Reed's claims against the AP Defendants. *See generally In re Palm Beach Fin. Partners, L.P.*, No. 09-br-36379, 2013 WL 12478838, at *13 (Bankr. S.D. Fla. July 30, 2013) (noting that it is often premature at dismissal stage to address "significant relationship" test due to its fact-intensive nature).

Dated: July 19, 2024

Respectfully submitted,

THOMAS & LoCICERO PL

*/s/ Carol Jean LoCicero*

Carol Jean LoCicero (FBN 603030)
clocicero@tlolawfirm.com
Linda R. Norbut (FBN 1011401)
lnorbut@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

*Attorneys for The Associated Press and Doug Ferguson*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the typeface and type style rules set forth in Fed. R. App. P. 32(a)(5)(A) and 32(a)(6), and with the type-volume limitation contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), because the brief is in a proportionally-spaced Times New Roman 14-point font and contains approximately 2,217 words (exclusive of the portions of the brief that do not count toward the word count as specified in Fed. R. App. P. 32(f)).

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero

## CERTIFICATE OF SERVICE

I certify that on July 19, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero