IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-10070

---

PATRICK REED,

*Appellant*,

v.

SHANE RYAN, et al.,

*Appellees*.

---
---

## RESPONSE BRIEF OF APPELLEES,
## BLOOMBERG L.P. AND ERIK LARSON

---
---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

Gregory W. Herbert
Kimberly S. Mello
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue, Ste. 650
Orlando, FL 32801
Telephone:  (407) 420-1000
Facsimile:  (407) 420-5909

*Counsel for Appellees, Bloomberg L.P. and Erik Larson*

*PATRICK REED v. SHANE RYAN, et al.*
Case No. 24-10070

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

Appellees Bloomberg L.P. and Erik Larson submit this list, which includes all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this matter, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1.    Barksdale, Patricia D. (Magistrate Judge)

2.    Bloomberg L.P.

3.    Bloomberg Inc.

4.    Chase, Jeremy A. (Appellate counsel for Shane Ryan, Hachette Book Group, Inc. and NYP Holdings, Inc. dba The New York Post)

5.    Corrigan, Timothy J. (U.S. Magistrate Judge)

6.    Davis Wright Tremaine LLP

7.    Feitel, Jesse (trial counsel for Shane Ryan, Hachette Book Group, Inc., NYP Holdings, Inc. dba The New York Post)

8.    Ferguson, Doug

9.    Fox Sports, Inc.

10.    Gillen & Lake LLC

11.    Greenberg Traurig, P.A.

***PATRICK REED v. SHANE RYAN, ET AL.***
***CASE NO. 24-10070***

**CERTIFICATE OF INTERESTED PERSONS AND**
**<u>CORPORATE DISCLOSURE STATEMENT</u>**
**(Continued)**

12. Hachette Book Group, Inc.

13. Handman, Laura Rose (trial counsel for Shane Ryan, Hachette Book Group, Inc., NYP Holdings, Inc. dba The New York Post)

14. Herbert, Gregory W. (Appellate counsel for Bloomberg L.P. and Erik Larson)

15. Isaak Law Firm

16. Isaak, Melissa (Appellate counsel for Patrick Reed)

17. Klayman, Larry E. (Trial counsel for Patrick Reed)

18. Lake, Anthony C. (Appellate counsel for Patrick Reed)

19. Larson, Erik

20. LoCicero, Carol Jean (Appellate counsel for The Associated Press and Doug Ferguson)

21. Mello, Kimberly S. (Appellate counsel for Bloomberg L.P. and Erik Larson)

22. Newsham, Gavin

23. Norbut, Linda Riedemann (Appellate counsel for The Associated Press, Doug Ferguson, Shane Ryan, Hachette Book Group, Inc. and NYP Holdings, Inc., dba The New York Post

24. NYP Holdings, Inc., d/b/a The New York Post

25. Reed, Patrick

26. Ryan, Shane

27. The Associated Press

***PATRICK REED v. SHANE RYAN, ET AL.***
***CASE NO. 24-10070***

**CERTIFICATE OF INTERESTED PERSONS AND**
**<u>CORPORATE DISCLOSURE STATEMENT</u>**
**(Continued)**

28.  Thomas & LoCicero PL

29.  Young, Savannah (Trial counsel for Bloomberg L.P. and Erik Larson)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellee Bloomberg L.P. makes the following statement as to corporate ownership:

Bloomberg L.P. is a limited partnership; its general partner is Bloomberg, Inc. and no publicly held corporation owns ten percent or more of Bloomberg L.P.'s limited partnership interests.

<u>/s/ Gregory W. Herbert</u>
Gregory W. Herbert

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues raised by Appellant, Patrick Reed ("Reed"), can be addressed on the briefs, the record, and governing case law, Appellees, Bloomberg L.P. and Erik Larson, submit that oral argument would not be of material benefit to the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................. i

TABLE OF AUTHORITIES ...................................................................v

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE................................................................2

    I.    BLOOMBERG PUBLISHES AN ARTICLE REGARDING THE HIGHLY PUBLICIZED DISPUTE BETWEEN LIV GOLF AND THE PGA TOUR. ...........................................................2

    II.    REED FILES A LAWSUIT CLAIMING A CONSPIRACY TO DEFAME HIM THROUGH PUBLICATION OF ARTICLES THAT ARE KNOWINGLY FALSE OR IN RECKLESS DISREGARD OF THE TRUTH. ................................................4

    III.    BLOOMBERG AND LARSON SEEK DISMISSAL OF THE AMENDED COMPLAINT WITH PREJUDICE, WHICH THE DISTRICT COURT GRANTS, RESULTING IN A FINAL JUDGMENT OF DISMISSAL.................................................7

        A.    Bloomberg and Larson's Motions To Dismiss The First Amended Complaint With Prejudice. .....................................7

            1.    Larson's Request for Dismissal Based On Lack Of Personal Jurisdiction. ...................................................8

            2.    Bloomberg and Larson's Request For Dismissal On The Merits. ........................................................9

        B.    The District Court's Order Dismissing The Amended Complaint With Prejudice.....................................................10

ii

## TABLE OF CONTENTS
### Continued

**Page**

C.   Reed Seeks Reconsideration, Which The District Court Denies. .......12

STANDARD OF REVIEW ......................................................................14

SUMMARY OF ARGUMENT .................................................................15

ARGUMENT ..........................................................................................18

I.   THE DISMISSAL ORDER IN FAVOR OF LARSON SHOULD BE AFFIRMED BECAUSE REED ABANDONED THE DISTRICT COURT'S FINDING THAT PERSONAL JURISDICTION WAS LACKING ........................................................................................18

II.  THIS COURT SHOULD AFFIRM THE DISMISSAL OF THE DEFAMATION CLAIMS AGAINST BLOOMBERG AND LARSON BECAUSE THEY FAIL AS A MATTER OF LAW ...............20

A.   Dismissal Was Proper Because The Article Was Not "Of And Concerning" Reed And, Therefore, Provided No Basis For His Defamation Claims. ...........................................................21

B.   Dismissal Of The Defamation By Implication Claim Was Proper Because Reed Cannot Allege The Required Elements As A Matter of Law. ...................................................26

C.   Dismissal Of The Defamation Claim Was Proper Because There Are No False Statements of Fact. ...........................................30

D.   Dismissal Of the Defamation Per Se Claim Was Proper Because The Statements Were Not Obviously Harmful. ..................................33

E.   Dismissal Of The Defamation Claims Was Proper Because Reed Has Not And Cannot Allege Actual Malice ........................................34

III. THIS COURT SHOULD AFFIRM DISMISSAL OF THE TORTIOUS INTERFERENCE CLAIM BECAUSE IT VIOLATED FLORIDA'S SINGLE ACTION RULE. ...................................................39

IV.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DISMISSED THE ACTION WITH PREJUDICE. ..................41

**TABLE OF CONTENTS**
**Continued**

**Page**

CONCLUSION ..........................................................................................44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS..........44

CERTIFICATE OF SERVICE ...............................................................45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Access Now, Inc. v. Southwest Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) ...........................................................18, 19, 36

*AKAI Custom Guns, LLC v. KKM Precision, Inc.*,
    No. 20-61469-CIV-SMITH,
    2021 WL 12093270 (S.D. Fla. Sept. 27, 2021) ..................................................19

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
    416 F.3d 1242 (11th Cir. 2005) ..........................................................................14

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ..........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................14

*Brown v. Tallahassee Democrat, Inc.*,
    440 So. 2d 588 (Fla. 1st DCA 1983) ..................................................................25

*Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*,
    831 So. 2d 204 (Fla. 4th DCA 2002)..................................................................40

*Carson v. News-Journal Corp.*,
    790 So. 2d 1120 (Fla. 5th DCA 2001)................................................................31

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012) ..........................................................................14

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021) .............................................................................37

*Edelstein v. WFTV, Inc.*,
    798 So. 2d 797 (Fla. 4th DCA 2001)..................................................................34

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*,
    470 F.3d 1036 (11th Cir. 2006) ..........................................................................14

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Fogel v. Forbes, Inc.*,
    500 F. Supp. 1081 (E.D. Pa. 1980) ................................................23, 24

*Guzman v. Cruise Yacht OP Co.*,
    No. 22-cv-21123-GAYLES/TORRES,
    2023 WL 2572220 (S.D. Fla. Mar. 20, 2023) ...................................19

*Hagan v. Comm'r, Georgia Dep't of Corr.*,
    No. 22-12180, 2023 WL 5621895
    (11th Cir. Aug. 31, 2023) ..................................................................43

*Hallmark Builders, Inc. v. Gaylord Broad., Co.*,
    733 F.2d 1461 (11th Cir. 1984) ........................................................30

*Hartman v. Meredith Corp.*,
    638 F. Supp. 1015 (D. Kan. 1986)....................................................24

*Hay v. Indep. Newspapers, Inc.*,
    450 So. 2d 293 (Fla. 2d DCA 1984)..................................................21

*Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*,
    242 S.W.3d 518 (Tex. Civ. App. 2007)..............................................24

*Interstellar Prods., Inc. v. Bush*,
    576 F. Supp. 3d 1106 (M.D. Fla. 2020)..............................................19

*Jacoby v. Cable News Network, Inc.*,
    No. 21-12030, 2021 WL 5858569
    (11th Cir. Dec. 10, 2021) ...............................................35, 36, 37, 38

*Jamason v. Palm Beach Newspapers, Inc.*,
    450 So. 2d 1130 (Fla. 4th DCA 1984)................................................37

*Jews for Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2008) .......................................................20, 27

*Jones v. Detroit News*,
    No. 358661, 2022 WL 3330482
    (Mich. Ct. App. Aug. 11, 2022)..........................................................24

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Kinsman v. Winston*,
  No. 6:15-cv-696-Orl-22GJK,
  2015 WL 12839267 (M.D. Fla. Sept. 15, 2015)..................................40

*Klayman v. City Pages*,
  No. 5:13–cv–143–Oc–22PRL,
  2015 WL 1546173 (M.D. Fla. Apr. 3, 2015),
  *aff'd*, 650 F. App'x 744 (11th Cir. 2016) ..........................................35

*Levan v. Capital Cities/ABC, Inc.*,
  190 F.3d 1230 (11th Cir. 1999) ........................................................36

*Mac Isaac v. Twitter, Inc.*,
  557 F. Supp. 3d 1251 (S.D. Fla. 2021) ........................................22, 33

*Marcone v. Penthouse Int'l Mag. for Men*,
  754 F.2d 1072 (3d Cir. 1985) ............................................................35

*Markle v. Markle*,
  No. 8:22-cv-511-CEH-TGW,
  2023 WL 2711341 (M.D. Fla. Mar. 30, 2023) ..................................40

*Metropolis Co. v. Croasdell*,
  199 So. 568 (Fla. 1941) ....................................................................33

*Miami Child's World, Inc. v. Sunbeam Television Corp.*,
  669 So. 2d 336 (Fla. 3d DCA 1996)..................................................32

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...................................................*passim*

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964).........................................................................21

*Nitv, L.L.C. v. Baker*,
  61 So. 3d 1249 (Fla. 4th DCA 2011)................................................34

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Ordonez v. Icon Sky Holdings LLC*,
   No. 10–60156–CIV,
   2011 WL 3843890 (S.D. Fla. Aug. 30, 2011) ....................................34

*Ozyesilpinar v. Reach PLC*,
   365 So. 3d 453 (Fla. 3d DCA 2023) ................................................39

*Parekh v. CBS Corp.*,
   820 F. App'x 827 (11th Cir. 2020) ..................................21, 28, 29, 42

*Pitts v. Grant*,
   No. 21-12759, 2022 WL 1117454
   (11th Cir. Apr. 14, 2022) .................................................................43

*Rasmussen v. Collier Cty. Pub. Co.*,
   946 So. 2d 567 (Fla. 2d DCA 2006) ................................................30

*Readon v. WPLG, LLC*,
   317 So. 3d 1229 (Fla. 3d DCA 2021) ...............................................27

*Rosenblatt v. Baer*,
   383 U.S. 75 (1966) ...........................................................................21

*Rubin v. U.S. News & World Report, Inc.*,
   271 F.3d 1305 (11th Cir. 2001) ..........................................26, 27, 28

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) .........................................................18

*Scholz v. RDV Sports, Inc.*,
   710 So. 2d 618 (Fla. 5th DCA 1998) ...............................................35

*Scott v. Busch*,
   907 So. 2d 662 (Fla. 5th DCA 2005) ...............................................33

*Skupin v. Hemisphere Media Grp., Inc.*,
   314 So. 3d. 353 (Fla. 3d DCA 2020) ................................................32

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Sloan v. Shatner*,
   No. 8:17-cv-332-T-27AAS,
   2018 WL 3769968 (M.D. Fla. June 22, 2018) .................................................22

*Thomas v. Jacksonville Television, Inc.*,
   699 So. 2d 800 (Fla. 1st DCA 1997) ................................................21

*Tobinick v. Novella*,
   No. 9:14-CV-80781-ROSENBERG/BRANNON,
   2015 WL 328236 (S.D. Fla. Jan. 23, 2015) .......................................40

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) .................................................*passim*

*Tymar Distribution LLC v. Mitchell Grp. USA, LLC*,
   558 F. Supp. 3d 1275 (S.D. Fla. 2021) ............................................40

*U.S. v. Sentovich*,
   677 F.2d 834 (11th Cir. 1982) .......................................................41

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
   314 F.3d 541 (11th Cir. 2002) ......................................................43

*Yeatts v. Zimmer Biomet Holdings, Inc.*,
   940 F.3d 354 (7th Cir. 2019) .......................................................32

*Zimmerman v. Buttigieg*,
   521 F. Supp. 3d 1197 (M.D. Fla. 2021) ............................................21

*Zorc v. Jordan*,
   765 So. 2d 768 (Fla. 4th DCA 2000) ...............................................32

**Statutes**

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1332 ..........................................................................1

## TABLE OF AUTHORITIES
### (Continued)

<u>**Page(s)**</u>

**Rules & Regulations**

Fed. R. Civ. P. 8 .................................................................................5

Fed. R. Civ. P. 15 ..............................................................................17

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final judgment of the United States District Court for the Middle District of Florida.

Reed timely appealed the judgment on January 8, 2024.

## STATEMENT OF THE ISSUES

1.    Whether the Dismissal Order in favor of Larson should be affirmed because Reed abandoned the district court's finding that personal jurisdiction was lacking.

2.    Whether this Court should affirm the dismissal of the defamation claims against Bloomberg and Larson because the alleged defamatory statements were not "of and concerning" Reed, there were no false statements of fact, and the defamation by implicaton and defamation per se claims otherwise failed as a matter of law.

3.    Whether this Court should affirm the dismissal of the defamation claims against Bloomberg and Larson because Reed has not and cannot allege actual malice.

4.     Whether this Court should affirm dismissal of the tortious interference claim against Bloomberg and Larson because it violated Florida's single action rule.

5.     Whether the district court properly denied Reed's request for leave to amend the Complaint.

## STATEMENT OF THE CASE

## I.     BLOOMBERG PUBLISHES AN ARTICLE REGARDING THE HIGHLY PUBLICIZED DISPUTE BETWEEN LIV GOLF AND THE PGA TOUR.

Reed is an accomplished professional golfer who left the PGA Tour, Inc. ("PGA") and joined a rival professional golf organization, LIV Golf ("LIV"). (DE 27, ¶¶19-20). Over the years, Reed has received purported negative press coverage that he believes reflects a concerted, deliberate effort to defame him and destroy his reputation.

On January 4, 2023, Bloomberg published an article regarding the highly publicized legal dispute between LIV and the PGA. (DE 50-1). The Article, titled, "Saudi-Backed LIV Golf Is Using PGA Suit To Get Data on 9/11 Families, Court Told" ("Article") was written by Bloomberg reporter Erik Larson ("Larson"). (*Id.*). The Article's headlines capture the essence of a discovery dispute in the litigation discussed in the Article:

- PGA's PR firm says Saudis seek documents on unrelated clients
- LIV argues PGA used PR firm to coordinate 9/11 group protests

(*Id.*).

The Article reported on a discovery dispute between PGA's public relations firm, Clout Public Affairs ("Clout"), and LIV, and noted that it reflected a "more sinister turn" to the litigation amidst accusations that LIV issued a subpoena to Clout improperly to "build an intelligence file" on the families of 9/11 victims. (*Id.* at 2). Clout challenged the subpoena, arguing that compelling compliance would allow LIV to "sift Clout's communications with these families, even if they have nothing to do with LIV, golf or golfers" and potentially reveal sensitive personal information and provoke retaliation. (*Id.* at 2-3). LIV, on the other hand, claimed it was entitled to the documentation because the PGA "arrang[ed] for 9/11 families to protest at LIV events." (*Id.* at 3).

The Article noted that the discovery dispute resulted in a "dramatic escalation" of the PGA-LIV lawsuit, which had previously centered on LIV "luring some of [golf's] biggest stars [] with huge paychecks and unconventional tournaments." (*Id.* at 3) (original emphasis).

Importantly, the Article is not about Reed. In fact, his name appears nowhere in the Article, he is not quoted, and there is no reference to him either explicitly or implicitly. The only professional LIV golfers mentioned in the Article are Phil Mickelson and Cameron Smith. (*Id.*).

The only connection to Reed is a photograph of him ("Photo") that appears at the top of the online version of the Article. (*Id*. at 1). His face is turned downward—such that his eyes are not visible—revealing only the shadow-darkened lower half of his face. (*Id*.). The focal point of the Photo is the front of the golf cap Reed is wearing, which prominently displays the ***LIV* GOLF** logo. (*Id*.). A lanyard around Reed's neck also bears the ***LIV* GOLF** logo. (*Id*.). Reed is not identified in the Photo and the Photo has no caption; only a photo credit appears below it. (*Id*.).

It is the inclusion of this Photo that led to Reed's claims against Bloomberg and Larson, discussed next.

## II. REED FILES A LAWSUIT CLAIMING A CONSPIRACY TO DEFAME HIM THROUGH PUBLICATION OF ARTICLES THAT ARE KNOWINGLY FALSE OR IN RECKLESS DISREGARD OF THE TRUTH.

Claiming that the media was deliberately attempting to defame him, Reed filed two lawsuits in the Middle District of Florida, both of which were assigned to the Honorable Timothy Corrigan. *Reed v. Chamblee*, *et al.*, (Case No. 3:22 cv-1059) ("Reed I") and *Reed v. Ryan*, *et al.*, (Case No. 3:22-cv-1181) ("Reed II").

Reed I mostly concerns the "media coverage of the tension between the PGA Tour and LIV Golf." (DE 91 at 3). Among other things, Reed claims that the defendants "conspired with the PGA Tour to jointly engage in 'anti-competitive actions against golfers who participated in LIV tournaments….'" (*Id*. at 3-4).

Reed II mostly focuses on purported defamatory statements about Reed that appeared in publications before he joined LIV. (*Id.* at 4).

Jointly, the two lawsuits identify at least 50 purportedly defamatory statements, which Reed claims has caused him to suffer personal attacks, a hostile workplace, and loss of numerous prospective sponsorships and business opportunities. (*Id*. at 5).

The Original Complaint in Reed II—filed on November 1, 2022—was 92 pages in length and raised 42 claims. Neither Bloomberg nor Larson were named as defendants. (DE 1).

The district court entered an order of dismissal without prejudice *sua sponte* (DE 25) in Reed II, finding that the Original Complaint was a shotgun pleading and failed comply with Federal Rule of Civil Procedure 8(a), because it was "neither short nor plain." (DE 25 at 1-3).

An amended complaint (the "Amended Complaint") was filed in Reed II on January 13, 2023, which was 93 pages in length and raised 36 claims. (DE 27). The Amended Complaint added Bloomberg and Larson as defendants and purported to plead claims for defamation, defamation by implication, defamation per se, and tortious interference based on the Article. (*Id*. at 81-93). When the Amended Complaint was filed, the Article—which Reed alleges was published on or about

5

January 4, 2023—had only been in circulation for approximately nine days. (*Id.*, ¶113).

Most of the factual allegations in the Amended Complaint are directed to the "defendants" generally and, by their substance, clearly do not apply to Bloomberg or Larson. In fact, only ten paragraphs were added to the Amended Complaint to support the claims against Bloomberg and Larson. (*Id.*, ¶¶ 113-22).

It is indisputable that Reed's claims against Bloomberg and Larson would not exist absent the Photo. Under Reed's theory, the Photo creates a false implication that he was involved in LIV's purportedly improper litigation tactics. Reed relies on the following two statements in the Article to support his claims against Bloomberg and Larson:

> Saudi-Backed LIV Golf Is Using PGA Suit to Get Data on 9/11 Families, Court Told

(the "**Headline**")

> It's (meaning the issue of 9/11 family victims) now taken a more sinister turn

(the "**Statement**") (DE 27 ¶¶ 334, 342, 353, 367, 375, 386).

<u>First</u>, Reed alleges that his Photo is "prominently featured in the [] Article" which constitutes a "clear editorial decision…to create the false and misleading implication that Mr. Reed is somehow involved in using the PGA lawsuit to get data on 9/11 families." (*Id.*, ¶114).

_Second_, Reed alleges that the Statement "creates the false and misleading implication that Mr. Reed is personally involved in 'sinister' activities…." (_Id_., ¶¶119).

As damages, Reed claims that the Article, coupled with the Photo—even though it was only in circulation approximately nine days prior to filing the Amended Complaint—"maliciously caused a hostile workplace environment for Mr. Reed, spilling over to his family" and subjected him and his family to "personal attacks…by persons attending [] tournaments and events," which, in turn, have "harmed his performance at tournaments and events and deprived him of lucrative sponsorships and other financial awards…." (_Id_., ¶120).

## III. BLOOMBERG AND LARSON SEEK DISMISSAL OF THE AMENDED COMPLAINT WITH PREJUDICE, WHICH THE DISTRICT COURT GRANTS, RESULTING IN A FINAL JUDGMENT OF DISMISSAL.

### A. Bloomberg and Larson's Motions To Dismiss The First Amended Complaint With Prejudice.

In response to the Amended Complaint, Bloomberg and Larson filed separate motions to dismiss the Amended Complaint with prejudice. The motions were similar except Larson also requested dismissal based on lack of personal jurisdiction. (DE 50, 65).

### 1.    Larson's Request for Dismissal Based On Lack Of Personal Jurisdiction.

Larson—a citizen of New York—argued that (1) Reed failed to plead sufficient facts establishing general jurisdiction over Larson; (2) Reed failed to plead a prima facie showing of specific jurisdiction over Larson under Florida's long-arm statute; and (3) even if specific jurisdiction was adequately pled, the exercise of jurisdiction over Larson would violate due process because there were insufficient facts establishing that Larson "purposefully directed" his activities toward Florida and the injuries arise out of or relate to those activities. (DE 65).

Reed opposed, making two primary arguments.

First, Reed argued that the district court had specific jurisdiction over Larson because the Article "was made [] in concert with and at the direction of the PGA Tour, which is headquartered in Ponte Verde, Florida," the "golf capitol of the nation and the world." (DE 74 at 9). Consequently, according to Reed, "it is certain that individuals in Florida, many of whom have an elevated interest in professional golf, must have accessed the [] Article." (*Id.* at 10).

Second, Reed argued that due process would not be violated because (1) Larson and Bloomberg do substantial business in, and derive significant revenue from, Florida (*Id*. at 12); (2) the relationship between Reed and Larson is centered in Florida because "everything about Mr. Reed's claims are inextricably related to

8

Florida" (*Id.* at 13); (3) the content of the Article is tied to Florida because the PGA is headquartered in Florida (*Id.*); and (4) at least 10 of the last 20 articles written by Larson dealt with the PGA Tour or Florida (*Id.* at 14).

### 2. Bloomberg and Larson's Request For Dismissal On The Merits.

Larson also joined Bloomberg in moving to dismiss the claims on the merits, arguing that (1) the Article contains no false statements of fact; (2) the Article is not "of and concerning" Reed and the Photo does not create an implication otherwise; (3) Reed did not and cannot plead actual malice; and (4) the tortious interference claims violate Florida's "single action" or "single publication" rule. (DE 50, 65).

Reed countered, arguing among other things, that (1) the statements are "of and concerning" Reed because (a) the Photo is "prominently featured" in the Article and must be viewed "in toto" with the Article's content (DE 67 at 10); and (b) his "likeness and being is well recognized [in the US] and throughout the golfing world" (*Id*. at 12); (2) the Photo "creates the false implication that Mr. Reed was personally involved in an alleged scheme to use the PGA Tour litigation to obtain personal data on and harm 9/11 families" (*Id*. at 15); (3) actual malice was adequately pled because the Photo was intentionally published to create a "false and misleading implication" that Reed was involved in the litigation, when Bloomberg and Larson knew he was

not (*Id*. at 17); and (4) the elements of defamation per se and tortious interference were adequately pled (*Id*. at 19-20).

### B.    The District Court's Order Dismissing The Amended Complaint With Prejudice.

Reed I and Reed II were consolidated for the purpose of disposing of defendants' motions to dismiss ("Motions"). Following a hearing on July 31, 2023, the district court issued a 78-page Dismissal Order, finding that "under Florida law and the First Amendment, Reed fails to bring actionable defamation claims…." (DE 91 at 2 & n.1).

Before reaching the merits, the district court addressed numerous procedural issues, including Larson's personal jurisdiction argument. On this issue, the district court ruled that Reed's allegations "barely surpass[ed] the threshold of establishing specific personal jurisdiction under Florida's Long-Arm Statute" but concluded that personal jurisdiction was nonetheless lacking because there were no allegations demonstrating that Larson "availed himself 'of the privilege of conducting activities' in Florida." (*Id.* at 13-14, 16). Therefore, the district court dismissed Larson from the lawsuit without prejudice, but further noted that even if it had personal jurisdiction over Larson, "the statements allegedly made by him…are not actionable." (*Id.* at 16 & n. 6).

10

On the merits of the defamation claims against Bloomberg and Larson, the district court concluded that the Article was not "of and concerning" Reed stating:

> The only statement within the article Reed claims constitutes defamation is: "It's [meaning the issue of 9/11 family victims] has [sic] taken a more sinister turn." (Doc. 27 ¶ 118).
>
> But merely including a picture of Reed without any other identification or reference to him in the article, especially when the article concerns a lawsuit between other parties, LIV and the PGA Tour, falls short of alleging defamation of and concerning Reed.
>
> ***
>
> The article is not about Reed and his photograph is incidental to its content. As a matter of law, no reasonable person would understand the article as implicating Reed.

(DE 91. at 38) (alteration in original).

In addition, the district court found that Reed—a public figure—failed to adequately allege the required actual malice for defamation because, among other things, failure to include exculpatory information, failure to investigate, and failure to retract a statement, does not, as a matter of law, constitute actual malice. (*Id*. at 68-69).

The tortious interference claims also failed because they were barred by Florida's single action rule and, even if they were not, the district court stated that Reed's vague allegations were insufficient. (*Id*. at 70-71 & n. 24).

Finally, the district court concluded that dismissal with prejudice was appropriate for two reasons. First, the district court reasoned that Reed's

11

amendments, after being given an opportunity to do so, were "sparse" and failed to cure the deficiencies in the Original Complaint. (*Id*. at 72). Second, allowing leave to amend for a second time would be futile because despite Reed pleading "over fifty alleged defamatory statements," there was only one that was "potentially defamatory," and even that single statement could not survive because there are "no facts supporting actual malice." (*Id.* at 73).

Based on these findings, the district court dismissed the Amended Complaint with prejudice. (*Id*. at 77).

### C.    Reed Seeks Reconsideration, Which The District Court Denies.

Reed filed Motions for Reconsideration, to Alter or Amend a Judgment, and for Relief from Judgment or Order Pursuant to Federal Rules of Civil Procedure 59 and 60 ("Reconsideration Motion"), contending that the district court made numerous manifest errors in entering the Dismissal Order. (DE 89).

The 26-page Reconsideration Motion claims that the district court "cavalierly dismissed" the defamation claims, which was an "impossibility." (*Id.* at 3). According to Reed, the district court "usurped" the jury's fact-finding role and declared himself the "judge, jury and executioner" and "knew that his Dismissal Order was fundamentally wrong." (*Id.* at 4, 6). Reed further criticized the district judge for not undertaking an "individual analysis" of the 55 defamatory statements and claimed that the district judge was "clearly and intentionally wrong" because the

12

defamatory statements (1) clearly and unequivocally make false statements of fact "'of and concerning' and associated with Mr. Reed" (*Id.* at 6-7); and (2) the statements are defamatory per se because they are "incredibly harmful to Mr. Reed's reputation and economic well-being in his trade and profession as a professional golfer." (*Id.* at 8).

After receiving the defendants' opposition papers, the district court entered an Order denying reconsideration ("Reconsideration Order") (DE 92), ruling as follows:

> Reed seeks solely to relitigate past arguments, old matters, and case law previously considered by the Court. He argues the Court ignored case law he cited and misstated the law. This is incorrect. The Court carefully reviewed and heard the briefs and arguments presented before issuing the dispositive Order. The Court also has considered the case law cited in Reed's reconsideration motions, none of which changes the Court's reasoning. Notably, Reed seemingly disregards the law cited by the Court in the dispositive Order.
>
> ***
>
> Further, Reed's claim that the Court did not give individual analysis to each of the fifty-five alleged defamatory statements falls short. The Court identified the basis for dismissal of each statement in the Order and analyzed each basis with the relevant law. Reed may disagree with the Order or wish for more. But Reed's position does not establish manifest error.

(*Id.* at 10-11).

Reed timely appealed the Dismissal Order and Reconsideration Order to this Court. (DE 93).

**STANDARD OF REVIEW**

This Court reviews de novo the dismissal of a complaint for failure to state a claim. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quoting *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, (2007)). While the Court must give the non-moving party the benefit of reasonable factual inferences, "'unwarranted deductions of fact' are not admitted as true." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The denial of a motion for leave to amend a complaint is reviewed for abuse of discretion. *See Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006).[1]

---

[1] Review of orders denying leave to amend based on futility are reviewed de novo. However, that is not the circumstance here. Therefore, the proper standard of review is abuse of discretion.

## SUMMARY OF ARGUMENT

Reed's 50-page brief barely mentions the eight claims against Bloomberg and Larson. Indeed, Reed has devoted fewer than 4 pages of his brief to an argument that the district court's erred in dismissing the Amended Complaint against Bloomberg and Larson. Reed's lack of argument speaks volumes. This case—despite Reed's hyperbole otherwise—is a simple "open and shut" case: his defamation and tort claims are implausible and driven by his far-fetched conspiracy theory that the media is out to destroy him.

As a threshold matter, Reed has not challenged the district court's conclusion that it lacked personal jurisdiction over Larson. Reed has, therefore, abandoned this argument on appeal. In addition, all claims against Bloomberg and Larson fail on the merits.

The Article, including the Photo, simply is not "of and concerning" Reed, either explicitly or implicitly, and, as a result, Reed cannot satisfy this critical element of his defamation claims. Importantly, neither the Article nor the caption to the Photo name or reference him at all. Instead, the Photo clearly was chosen because it prominently features the "*LIV* Golf" logo. Even with inclusion of the Photo, the Article conveyed no impression about Reed either way—let alone the allegedly defamatory suggestion that Reed has seized on: that he was personally involved with LIV's legal strategy and tactics. Where, as here, the appearance of a small,

15

obstructed portion of Reed's face is plainly incidental, and the Article contains no other statement about or reference to Reed, there can be no defamatory statement or implication. The district court agreed, and dismissal with prejudice of the defamation claims should be affirmed on this basis alone.

Nonetheless, affirmance is also required on multiple alternative grounds.

First, there was not a publication of a "false statement of fact." Instead, the Article's Headline is a nonactionable, privileged "fair report" of controversial positions taken in high-profile litigation between nonparties and the Statement is a protected, nonactionable opinion—nothing more than the author's characterization of legal developments and allegations as having taken a "sinister" turn.

Second, the defamation per se claim fails because there is no express statement that is so obviously defamatory and damaging to Reed's reputation that the injurious nature of the statement is apparent from the fact of the Article.

Third, even if Reed had stated plausible defamation claims, which he has not, affirmance would still be required because Reed has not demonstrated that the district court erred in finding that he had not and could not allege facts to satisfy the exacting actual malice standard that applies given Reed's public figure status. In fact, Reed, with respect to Bloomberg and Larson, has not made a single argument explaining how the Article rises to the level of actual malice.

16

Regardless, there are no factual allegations that Bloomberg and Larson published the Article with knowledge of, or reckless disregard for, the Article's falsity. Moreover, Reed's contention that he adequately pled actual malice based on the defendants' purported failure to conduct any investigation prior to publishing the Article misstates the law. Actual malice requires more than alleged "departure from professional [publishing] standards" and "failure to investigate, standing on its own, does not indicate the presence of actual malice"—the district court's precise finding in its Dismissal Order. (DE 91 at 67-69) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016)).

Reed's tortious interference claim fares no better than his defamation claims. The claim—as found by the district court—violates Florida's single action rule. Accordingly, this claim was similarly properly dismissed with prejudice.

Finally, Reed argues that the district court deprived him of his opportunity to amend his pleading under Federal Rule of Civil Procedure 15(a). (Op. Br. at 66). He is incorrect. On its face, the Article is not defamatory as a matter of law. No amendments to the allegations can change this fact. Therefore, the district court's conclusion that dismissal with prejudice was proper was not an abuse of discretion.

For these reasons, fully discussed below, the Dismissal Order as to Bloomberg and Larson should be affirmed.

17

## ARGUMENT

**I. THE DISMISSAL ORDER IN FAVOR OF LARSON SHOULD BE AFFIRMED BECAUSE REED ABANDONED THE DISTRICT COURT'S FINDING THAT PERSONAL JURISDICTION WAS LACKING.**

It is well-established in the Eleventh Circuit that issues not raised in the initial brief are deemed abandoned. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants [the Eleventh Circuit] to address should be specially and clearly identified in the brief….Otherwise, the issue—even if properly preserved at trial—will be considered abandoned."). Moreover, "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince [the Eleventh Circuit] that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 680 (11th Cir. 2014). Accordingly, "[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.* That is the circumstance here.

The district court concluded that dismissal was proper as to Larson because (1) it lacked personal jurisdiction over him; and (2) even if personal jurisdiction could be exercised, Reed's defamation claims failed as a matter of law.

18

Here, Reed has not sought review of the district court's well-reasoned ruling finding that personal jurisdiction over Larson was lacking. Reed has, therefore, abandoned any challenge to that ruling on appeal. *Access Now, Inc*., 385 F.3d at 1330. In any event, the district court's ruling was clearly correct. *See Interstellar Prods., Inc. v. Bush*, 576 F. Supp. 3d 1106, 1111 (M.D. Fla. 2020) (plaintiff failed to establish defendant had minimum contacts with Florida where there was no evidence defendant targeted Florida or dispute particularly interested Florida residents); *Guzman v. Cruise Yacht OP Co.*, No. 22-cv-21123-GAYLES/TORRES, 2023 WL 2572220, at *4 (S.D. Fla. Mar. 20, 2023) (no meaningful contacts with the forum when defendant lived and worked in a different forum, did not conduct business or own property in the forum, and rarely traveled to the forum); *AKAI Custom Guns, LLC v. KKM Precision, Inc.*, No. 20-61469-CIV-SMITH, 2021 WL 12093270, at *6 (S.D. Fla. Sept. 27, 2021) (exercise of personal jurisdiction in online defamation case would violate due process where anyone with internet access could view the statements at issue, plaintiffs failed to show conduct was directly aimed at Florida, and plaintiffs were the only connection between defendants and Florida).

Given that Reed has waived any challenge to the district court's well-reasoned decision that it did not have personal jurisdiction over Larson, this Court need not consider whether the district court reversibly erred in finding that, in the alternative,

the defamation and tort claims pled against Larson failed as a matter of law.[2] As discussed next, however, that decision was clearly correct, too.

## II. THIS COURT SHOULD AFFIRM THE DISMISSAL OF THE DEFAMATION CLAIMS AGAINST BLOOMBERG AND LARSON BECAUSE THEY FAIL AS A MATTER OF LAW.

To state defamation claims under Florida law, a plaintiff must allege facts plausibly establishing: (a) publication, (b) falsity, (c) the actor must act with knowledge or reckless disregard as to the falsity on a matter, as here, concerning a public figure; (d) actual damages; and (e) the statements must be defamatory. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106-08 (Fla. 2008). Under a defamation by implication theory, a plaintiff must plausibly allege false suggestions, impressions or implications that arise from otherwise truthful statements. *Id.*

Reed's defamation claims fail as a matter of law for the following reasons. *First*, Reed failed to show that any statement was "of and concerning" him—a defect that taints all his defamation claims. *Second*, Reed did not plausibly allege that the Article created any implication about him, much less a false one. *Third*, the Article contains no false statements of fact. *Fourth*, Reed cannot demonstrate obvious harm sufficient to support a defamation per se claim, and, *finally*, Reed fails to plead any

---

[2] The district court noted that "[e]ven assuming personal jurisdiction extended over Larson" the allegedly defamatory statements "are not actionable." (DE 91 at 16, n.6).

facts that plausibly allege that Bloomberg and Larson published the Article with actual malice.

**A.    Dismissal Was Proper Because The Article Was Not "Of And Concerning" Reed And, Therefore, Provided No Basis For His Defamation Claims.**

The District Court properly concluded that all three defamation claims Reed attempted to plead in the Amended Complaint suffer from the same fatal flaw—failure to demonstrate that the allegedly defamatory statements were "of and concerning" Reed. *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) ("[A] defamatory statement must be 'of and concerning' the plaintiff to be actionable."); *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 294 (Fla. 2d DCA 1984) (libel claim requires a defamatory statement "of and concerning" the plaintiff). *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 1st DCA 1997) (collecting cases); *see also Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021) (noting that the "of and concerning" element "[c]ertainly…applies to all forms of the tort."). The district court's decision should be affirmed on this basis, alone.

A purported defamatory statement is not "of and concerning" the plaintiff unless the words of the statement are "specifically directed at the plaintiff." *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964). For this requirement to be met, "the communication as a whole

[must] contain[] sufficient facts or references from which [plaintiff] may be determined by the persons receiving the communication." *Mac Isaac v. Twitter, Inc*., 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) (alterations in original) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973)). The relevant inquiry is whether an average person, upon reading the statements, could reasonably conclude the plaintiff was implicated. *Id*. at 1259 (quoting *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), *aff'd*, 458 So. 2d 239 (Fla. 1984)). Failure to meet this test requires dismissal. *See, e.g.*, *Sloan v. Shatner*, No. 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *6-7 (M.D. Fla. June 22, 2018) (dismissing defamation by implication claim since statement was not "of and concerning" plaintiff).

Here, as noted by the district court, the "article itself never mentions Reed." (DE 91 at 37). Indeed, neither the Headline nor Statement relied on by Reed reference or have anything at all to do with him. Nor is there any language in the remainder of the Article that even remotely indicates that the litigation and third-party discovery dispute involves Reed or any of the LIV golfers. To the contrary, the Article is clearly confined to the litigation tactics of LIV in requesting purportedly invasive and irrelevant discovery from Clout that would improperly reveal private information on the families of 9/11 victims.

As the district court recognized, "the article makes clear the lawsuit involves an 'antitrust case' between the two competitors" and nothing in the Article "insinuate[s] the lawsuit was brought by LIV players or otherwise involves LIV players individually." (DE 91 at 38).[3] Thus, the content of the Article clearly is not about Reed. And the Photo of Reed—which does not show his full face and focuses on the LIV golf logo on his hat without identifying Reed—does not change this fact. In the district court's words:

> The article is not about Reed and his photograph is incidental to its content. As a matter of law, no reasonable person would understand the article as implicating Reed.

(*Id.*).

The district court's ruling is well-supported in the law. Courts have repeatedly found dismissal with prejudice or summary judgment proper in similar circumstances, based on a finding that the use of the plaintiff's photo was merely incidental to the article's content and not sufficient to make the statements "of and concerning" plaintiff. On point is the decision in *Fogel v. Forbes, Inc.*, 500 F. Supp.

---

[3] In its Order, the district court concluded—evaluating the claims in Reed I—that the group libel doctrine did not apply. According to the district court, "Reed's allegations and arguments belie that LIV is a group 'so small' that any statement about LIV or LIV players generally 'can reasonably be understood to refer' to Reed." (DE 91 at 32).

1081 (E.D. Pa. 1980), in which the district court granted summary judgment in favor

of the defendant stating:

> The caption to the photograph in question focuses the readers' attention
> to the boxes of merchandise in the photograph. The plaintiff's
> appearance in the photograph is obviously incidental and does not in
> any manner imply that they are participating in the activity discussed in
> the article (nor does it imply that anyone is masquerading as a citizen
> of another country). The Court finds that the picture and article are not
> reasonably capable of conveying the meaning or innuendo ascribed by
> the plaintiffs.

*Id*. at 1085; *see also Hartman v. Meredith Corp.*, 638 F. Supp. 1015, 1017 (D. Kan.

1986) (relying on *Fogel* and dismissing defamation claim where use of plaintiffs'

photo "in the absence of any mention of plaintiffs' names linking them with the

illegal activity, does not constitute defamation as a matter of law"); *Houseman v.*

*Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 526 (Tex. Civ. App.

2007) (summary judgment affirmed where reasonable reader would not be misled

by plaintiff's photo accompanying article, which did not otherwise implicate him as

a corrupt customs agent); *Jones v. Detroit News*, No. 358661, 2022 WL 3330482 ,

at *5-6 (Mich. Ct. App. Aug. 11, 2022) (affirming dismissal of defamation by

implication claim, article and associated images did not present defamatory

implication that plaintiff was a criminal). No different result should be reached here,

where the Photo shows a small, obstructed portion of Reed's face and is not

otherwise mentioned, identified, or gestured to in the Article.

24

In fact, Reed has not made a single persuasive argument for reversal and devotes only three pages of his 50-page brief to convince this Court that the district court somehow erred in concluding, as a matter of law, that the statements made in the Article were "of and concerning" him. In those few pages, Reed mostly recounts his allegations and the district court's findings. He limits his argument to a single paragraph, conflating the "of and concerning" requirement with a defamation by implication theory and arguing that based solely on the Photo, "an ordinary reader would have no reason to doubt or disbelieve that Reed was a party to the lawsuit between the PGA Tour and LIV Golf." (Op. Br. at 59-60).

The only decision Reed discusses in any detail to support his position that the Article was "of and concerning" him is *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588 (Fla. 1st DCA 1983).[4] *Brown* is inapposite. In that case, a private citizen's photo was used in an article regarding a murder trial and the article misidentified him as the defendant. *Id*. at 589.

Under Reed's theory, a photograph alone in a publication is all that is required to get past the dismissal stage. (Op. Br. at 60) (arguing that "publication of the article

---

[4] Reed's claim that the district court relied on this decision in dismissing Reed's defamation claims is incorrect. This decision is not cited in support of the district court's rulings relative to Bloomberg and Larson. (DE 91 at 37-39).

with a large photograph of Mr. Reed could support a finding that [] the defendants were referring to him."). But that, as discussed above, is not the law.

As a result, each of Reed's defamation claims failed as a matter of law and the district court properly dismissed them with prejudice. To find otherwise would eviscerate the requirement that defamatory statements must be "of and concerning" plaintiff. *Rubin*, at 1306 (quoting *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)) (where the court finds that "'a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action.'").

Because the Article was not "of and concerning" Reed, this Court should affirm on this basis.

**B.     Dismissal Of The Defamation By Implication Claim Was Proper Because Reed Cannot Allege The Required Elements As A Matter of Law.**

Though he cannot show the threshold requirement that the Article was "of and concerning" him, and although the Article does not mention him, Reed nonetheless argues that it imparts a false implication about him—namely, that he was a party to the lawsuit between the PGA Tour and LIV Golf.  This spurious theory was dismissed out of hand by the district court and should be equally rejected here.

Whether statements are defamatory by implication is a question of law for the Court. *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018). Defamation by

26

implication is a "sub-species" of defamation. *Rapp*, 997 So. 2d at 1106-08. The elements of defamation by implication are: (a) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (b) the creation of a defamatory implication by omitting facts. *See id.* at 1106 (defamation by implication claim necessarily based on statements alleged to be *true* but creating a defamatory implication). The inquiry turns on whether the gist of the statement is false. *Id*. at 1107-08.

As a matter of law, nothing in the Article—even coupled with the Photo—created a false impression that Reed himself was a party to the litigation, let alone that he had anything to do with LIV's third-party discovery request to Clout to obtain information on the 9/11 victims' families. Bloomberg and Larson did not "impermissibly juxtapose a series of true facts so as to create a defamatory implication." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237-38 (Fla. 3d DCA 2021) (affirming dismissal with prejudice of defamation by implication claim); *Turner*, 879 F.3d at 1270 (affirming dismissal with prejudice of defamation by implication because, among other things, "[n]o reasonable person's perception of the entirety of this discussion would be that the Defendants defamed Turner by juxtaposing facts").

Instructive is this Court's decision in *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001), which upheld the dismissal with prejudice of plaintiff's libel by implication claims. In *Rubin*, the plaintiff contended that a

27

magazine's use of plaintiff's quotes about the gold industry created an implication that plaintiff "knowingly handled smuggled gold" or "kept two sets of books." *Id*. at 1307-08.

This Court held that there was nothing in the article that could be reasonably read to accuse plaintiff of such conduct. *Id*. at 1308. Instead, plaintiff was depicted as a "knowledgeable gold refiner who has cooperated to be interviewed as a source of information on the industry." *Id*. Moreover, this Court further noted that the use of plaintiff's photo, in conjunction with statements in the article, did not create a defamatory implication, stating:

> [I]t is common practice of magazines to show photographs of those they quote merely for virtual interest. The inclusion of the quote beneath the caption indicates why Rubin's photograph was included: to put a face to the quote. And nothing else in the article can reasonably be read to falsely defame Rubin; rather, it presents him as an individual knowledgeable of the issues he is quoted on.

*Id*. at 1309, n. 10.

Also instructive is this Court's decision in *Parekh*, which involved an article written primarily about the plaintiff's ex-girlfriend and her alleged illegal conduct (a GoFundMe scam). 820 F. App'x at 830-31. This Court affirmed the district court's dismissal of plaintiff's defamation claims with prejudice, holding that (1) the first statement relied on by plaintiff was not defamatory as a matter of law because— when read in context—it was clear that plaintiff was not part of the ex-girlfriend's

scam; and (2) the second statement regarding his ex-girlfriend falsifying the existence of a doctor was not defamatory because it was not "of and concerning" plaintiff. *Id*. at 832.

This Court also affirmed the district court's refusal to grant leave to amend to add a claim for defamation by implication, which would be based, in part, on the photos of plaintiff and his ex-girlfriend appearing in the article. *Id.* at 834-35. According to this Court, the photos could not form the basis of a defamation by implication claim because "the pictures must also be viewed in the context of the entire news report, which makes clear that they are no longer together." *Id*. at 835.

These decisions demonstrate that, here, there is no plausible basis to allege that the Photo, along with the Article, "as a whole" would lead an average person, upon reading the statements, to reasonably conclude that Reed was involved in the litigation tactics that were the subject of the Article. Indeed, the grounds for dismissal with prejudice are stronger here because Bloomberg and Larson neither named, quoted, or made reference to Reed in the Article nor did they publish his name with the Photo.

The district court dismissed all of Reed's defamation claims pertaining to the Article on these sound bases, and that decision should be affirmed here. Bloomberg and Larson nonetheless raise multiple alternative bases for affirmance of the district court's order.

**C.    Dismissal Of The Defamation Claim Was Proper Because There Are No False Statements of Fact.**

Bloomberg and Larson adopt and incorporate the arguments made by Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. in their Response Brief, except the arguments that specifically pertain to the purported defamatory statements alleged against them. Bloomberg and Larson further argue as follows:

Affirmance is also required because there was no false statement of fact. Whether a statement is defamatory is a question of law for the Court. *Turner*, 879 F.3d at 1262-63. Moreover, whether "a statement is one of fact or one of opinion is [also] a question of law." *Rasmussen v. Collier Cty. Pub. Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006).

The "sine qua non" of any defamation claim is the publication of a false statement of *fact. Hallmark Builders, Inc. v. Gaylord Broad., Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (quoting *Byrd*, 433 So. 2d at 595). The challenged statements must be shown to be demonstrably false as a factual matter, i.e., capable of being proven true or false, rather than a matter of protected opinion. *Id.*; *Rasmussen*, 946 So. 2d at 571 ("Commentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel."). Generally, a "statement of fact" is one capable of being proven objectively true or false, as opposed to a subjective characterization, interpretation

30

or conclusion drawn from stated facts. *Turner*, 879 F.3d at 1262-63. Here, Reed cannot plausibly allege that the Headline or Statement are "false" statements of "fact."

There are no factual allegations—just bare conclusions—regarding the falsity of the Headline. Indeed, any such factual allegation would ignore the obvious plain language of the Headline, which demonstrates on its face that it is not false but instead accurately describes the position publicly taken in Clout's filing in connection with the discovery dispute. (DE 50-1 at 1). The Headline—irrespective of its truth or falsity—is privileged and nonactionable as a fair report of the judicial proceeding. *See Carson v. News-Journal Corp.*, 790 So. 2d 1120, 1121-22 (Fla. 5th DCA 2001) (affirming summary judgment based on fair report privilege where news report contained accurate summary of public documents).

The Statement, which appears in the second paragraph of the Article, reads, in pertinent part, as follows:

> Saudi Arabia-financed LIV Golf and its feud with PGA Tour, Inc. has divided fans, tested players' allegiances and sparked legal battles.
>
> **It's now taken a more sinister turn.**
>
> LIV, backed by the $676 billion Saudi sovereign wealth fund, was accused on Tuesday of using its US lawsuit against PGA to "build an intelligence file" on families of 9/11 victims who have been critical of the kingdom and its new professional golf circuit. The upstart has countered that the PGA is secretly running a "smear campaign" to take it down.

31

(DE 50-1 at 2) (emphasis added). The Statement clearly describes the PGA's position that LIV is improperly using the litigation to obtain information on 9/11 victims' families who have been critical of LIV. This is not false. Rather, it is an accurate characterization of the legal developments in the litigation and plainly constitutes a protected and nonactionable opinion, rather than a demonstrably false statement of fact. *See, e.g.*, *Zorc v. Jordan*, 765 So. 2d 768, 772 (Fla. 4th DCA 2000) (where author simply took information from a proceeding and rendered an opinion on what occurred, such statement held not defamatory); *Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336-37 (Fla. 3d DCA 1996) (reporter's characterization held to be pure opinion, the basis of which was disclosed in broadcast); *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d. 353, 356 (Fla. 3d DCA 2020) (affirming dismissal of defamation claim as no more than an expression of opinion).

Reed does not dispute that the accusations were made in the litigation, and obviously could not prove nor disprove that such accusations were "sinister" or somehow "not sinister," a telltale sign of opinion. *Michel*, 816 F.3d at 697 (noting that statements of fact are "readily capable of being proven true or false"); *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 360 (7th Cir. 2019) ("The inability to prove the statement false demonstrates that it is a statement of opinion, beyond the reach of defamation law.").

32

Accordingly, Reed's defamation claims fail to plausibly allege a false statement of fact and provides an alternative basis for affirmance of the district court's order.

### D. Dismissal Of the Defamation Per Se Claim Was Proper Because The Statements Were Not Obviously Harmful.

Defamation per se must be "actionable on its face" and does not require "additional explanation of the words used to show that they have a defamatory mearing or that the person defamed is the plaintiff." *Mac Isaac*, 557 F. Supp. 3d at 1259. The "statements are 'so obviously defamatory' and 'damaging to reputation' that the injurious nature of the statement is apparent from the words in the statement itself." *Id.* at 1258 (quoting *Paulson v. Cosm. Dermatology, Inc.*, No. 17-20094-Civ-Scola, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017)). Accordingly, "in determining whether a publication is defamatory per se, 'consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it.'" *Id.* (quoting *Paulson*, 2017 WL 2484197, at *3).

Actionable language includes that which "tend[s] to injure a person in [his] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury." *See Metropolis Co. v. Croasdell*, 199 So. 568, 569 (Fla. 1941); *see also Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA

2005); *Ordonez v. Icon Sky Holdings LLC*, No. 10–60156–CIV, 2011 WL 3843890, at \*7 (S.D. Fla. Aug. 30, 2011). Another iteration requires language that "imputes to another conduct, characteristic, or condition incompatible with the proper exercise of his lawful business, trade, profession or office." *See, e.g.*, *Nitv, L.L.C. v. Baker*, 61 So. 3d 1249, 1254 (Fla. 4th DCA 2011).

Here, Reed's defamation claim does not exist without the Photo and the purported implication Reed believes can be gleaned from it, namely that he was personally involved in an alleged scheme to use the litigation to obtain personal data on and harm 9/11 victims' families. Therefore, because Reed's claim is based only upon supposed (and far-fetched) implications or interpretations he claims arise from the use of the Photo in connection with the Article, there is no express statement that is so obviously defamatory and damaging to Reed's reputation that the injurious nature of the statement is apparent from the face of the Article.[5]

### E.    Dismissal Of The Defamation Claims Was Proper Because Reed Has Not And Cannot Allege Actual Malice.

Bloomberg and Larson adopt and incorporate the arguments made by Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. in their Response

---

[5] Moreover, to the extent Reed seeks a *presumption* of damages in his defamation per se claim, such a presumption is impermissible under Florida law against a media defendant such as Bloomberg. *Edelstein v. WFTV, Inc.*, 798 So. 2d 797, 798 (Fla. 4th DCA 2001).

Brief, except the arguments that specifically pertain to the purported defamatory statements alleged against them. Bloomberg and Larson further argue as follows:

Reed admits he is a professional athlete of world renown.[6] As a world famous, professional athlete, Reed is undoubtedly a public figure, a point which Reed never disputed below and has not disputed on appeal. *See, e.g.*, *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1083 (3d Cir. 1985) ("sports figures are generally considered public figures"); *Scholz v. RDV Sports, Inc.*, 710 So. 2d 618, 626 (Fla. 5th DCA 1998). Public figure plaintiffs such as Reed must satisfy the high burden of pleading actual malice for their defamation claims to be viable. *Michel*, 816 F.3d at 702 (quoting *N.Y. Times*, 376 U.S. at 280). Reed did not and cannot do so.

The standard for actual malice is "a rather daunting one for public-figure plaintiffs." *Klayman v. City Pages*, No. 5:13–cv–143–Oc–22PRL, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016). To plead actual malice, a plaintiff must allege facts, that when taken as true, would show that defendant published the purported defamatory statement with a "'high degree of awareness of [its] probable falsity.'" *Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *4 (11th Cir. Dec. 10, 2021) (per curiam)

---

[6] (DE 27, ¶¶ 19-20) ("Mr. Reed is a professional golfer…."; "[Reed is] a top player in the world [with] exceptional world class golfing achievements….").

(alteration in original) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)); *see also Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999) (quoting *N.Y. Times*, 376 U.S. at 280) (a showing of actual malice can be made by showing the defendant published the defamatory statement "either 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"). The test is not an objective one. *Jacoby*, 2021 WL 5858569, at *4.

Importantly, even an extreme departure from professional publishing standards does not necessarily rise to the level of actual malice. *Id.* Actual malice must be more than a mere failure to investigate; rather, the factual allegations must show "that the defendant purposefully avoided further investigation with the intent to avoid the truth." *Id.* at *5.

As a threshold matter, Reed has not made a single argument in his brief explaining how the publication of the Article rises to the level of actual malice. Instead, Reed merely argues in conclusory fashion that he "alleged sufficient facts regarding actual malice on the part of the defendants to survive dismissal on the defendants' motions." (Op. Br. at 49). Therefore, the argument has been abandoned by Reed as it pertains to Bloomberg and Larson. *Access Now, Inc.*, 385 F.3d at 1330.

Regardless, there is an absence of any factual allegations demonstrating Bloomberg and Larson specifically intended the Article to create the false implication that Reed was somehow personally and directly involved in LIV's

36

litigation strategy and tactics in the PGA suit. In fact, as argued above, it is plain from the face of the Article itself that any such implication is utterly implausible, if not absurd. The Article is not even about Reed, but instead presents the competing perspectives of LIV, PGA, and Clout in the ongoing discovery dispute in litigation in which Reed is not a party.[7] Where, as here, the incidental use of the Photo, viewed in the context of the publication as a whole, does not plausibly support the "false implication" alleged—that Reed *himself* is the subject or focus of the publication—Reed simply cannot show knowledge of falsity or "reckless disregard" for the truth.[8] This Court has repeatedly affirmed dismissals with prejudice at the pleading stage where, like here, the plaintiff fails to come forward with plausible allegations of actual malice. *See*, *e.g.*, *Turner*, 879 F.3d at 1273; *Jacoby*, 2021 WL 5858569, at *5; *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1253 (11th Cir. 2021); *Michel*, 816 F.3d at 703-04.

---

[7] Indeed, the last sentence of the Article cites to the federal court case number for the litigation at issue further undermining Reed's claim of actual malice. *See* (DE 50-1 at 4); *Michel*, 816 F.3d at 703 (where publisher gives reader sufficient information to weigh article's veracity, it reduces risk of unfair or incorrect conclusions or implications, weighing against actual malice showing).

[8] Moreover, the Headline, as discussed above, is privileged and nonactionable as a fair report of the judicial proceeding between LIV, PGA, and Clout, further demonstrating the absence of any malice. *See, e.g.*, *Jamason v. Palm Beach Newspapers, Inc.*, 450 So. 2d 1130, 1133 (Fla. 4th DCA 1984) (no actual malice arising from accurate report of a judicial proceeding).

Reed's only real effort to establish "actual malice" is based on his claim that—contrary to the district court's ruling—"the defendants' failure to conduct any investigation prior to publishing their defamatory statements regarding Mr. Reed is, in fact, evidence that the defendants acted with actual malice." (Op. Br. at 50). He is incorrect. The law requires much more. As the district court ruled:

> [A] publisher's deficient due diligence must go beyond a failure to investigate, and must actually rise to extreme departure of publishing standards, which is not alleged factually here.

(DE 91 at 69).

Reed simply ignores this law. *Jacoby*, 2021 WL 5858569, at *4; *Michel*, 816 F.3d at 703 (actual malice requires more than alleged "departure from reasonable journalistic standards" and "failure to investigate, standing on its own, does not indicate the presence of actual malice"). Importantly, Reeds fails to point to any allegations against Bloomberg and Larson that meets this test. That is because there are none. Indeed, to the contrary, the Article accurately describes the court proceedings between the PGA and LIV, which was a matter of public record.  At best, the Amended Complaint contains conclusory allegations that Bloomberg failed to diligently investigate all facts. (*See, e.g.*, DE 27, ¶378) (alleging Bloomberg's journalism lacked "minimal due diligence" because it could have checked the court's docket in the LIV/PGA case to see Reed "is not a Plaintiff" or otherwise involved, but willfully disregarded this and used his picture to create the implication that he is

38

somehow involved). But such allegations, as found by the district court, are clearly not enough under settled law.

Finally, Reed requests that, at minimum, this Court remand to allow him to be given the opportunity to conduct discovery on the issue. (Op. Br. at 47, 55, 67). However, he is not so entitled unless he is able to sufficiently allege actual malice in his pleading. His request for a fishing expedition on remand provides no basis for reversal.

Since Reed has not plausibly alleged that Bloomberg and Larson published the Article with "knowledge of falsity" or "reckless disregard" for the truth or with the specific intent to create false implications, Reed's claims against Bloomberg and Larson were properly dismissed with prejudice.

## III. THIS COURT SHOULD AFFIRM DISMISSAL OF THE TORTIOUS INTERFERENCE CLAIM BECAUSE IT VIOLATED FLORIDA'S SINGLE ACTION RULE.

Bloomberg and Larson adopt and incorporate the arguments made by Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. in their Response Brief, and further argue as follows:

Under Florida's single action rule, multiple actions cannot be maintained when they arise from the same publication upon which the defamation claim is based. *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 461 (Fla. 3d DCA 2023). Accordingly, when a defamation claim fails, as it does here, other claims based on

the same purportedly defamatory publication must similarly fail. *Callaway Land &
Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).
Thus, deficient tortious interference claims premised on the same failed defamation
claims are subject to dismissal under the single action rule. *Tymar Distribution LLC
v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1286-88 (S.D. Fla. 2021). Here,
the district court ruled as follows relying on the single action rule:

> Because Reed's defamation claims are facially deficient, so are his
> tortious interference claims.

(DE 91 at 71). This ruling was proper. *See Markle v. Markle*, No. 8:22-cv-511-CEH-
TGW, 2023 WL 2711341, at *12-13 (M.D. Fla. Mar. 30, 2023) (finding that
dismissal of injurious falsehood claim was proper under single action rule where it
was based on defamation claims); *Kinsman v. Winston*, No. 6:15-cv-696-Orl-
22GJK, 2015 WL 12839267, at *5-6 (M.D. Fla. Sept. 15, 2015) (dismissing tortious
interference claim under single action rule that was based on alleged defamatory
statements); *Tobinick v. Novella*, No. 9:14-CV-80781-ROSENBERG/BRANNON,
2015 WL 328236, at *11-12 (S.D. Fla. Jan. 23, 2015) (same).

Reed does not contend—as he did below—that the tortious interference claim
is premised on different facts. That is because it is not. Instead, he argues that the
district court erred because the "single action rule" somehow reflects a state
evidentiary standard that should not have been applied on a motion to dismiss. Reed

40

did not make this argument below and it is, therefore, waived. *U.S. v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982). Moreover, even if it was not waived, Reed cites no law directly supporting his position. Indeed, the law, as discussed above, is to the contrary.

## IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DISMISSED THE ACTION WITH PREJUDICE.

Bloomberg and Larson adopt and incorporate the arguments made by Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. in their Response Brief, and further argue as follows:

The district court entered an order sua sponte dismissing Reed's Original Complaint without prejudice based on its finding that the Original Complaint was a shotgun pleading and failed to comply with Federal Rule of Civil Procedure 8(a), because it was "neither short nor plain." (DE 25 at 1-3). Reed then filed the Amended Complaint—which was no better than the first rambling pleading—that similarly failed to correct the deficiencies.

In fact, the district court noted in its Order that the Amended Complaint remained a "shotgun pleading" but that "ordering another repleader would not change the substance of the claims." (DE 91 at 22, n.9). Therefore, the district court stated that it would "engage on the substantive issues." *Id.*

In evaluating the substance, the district court correctly concluded that Reed's claims failed as a matter of law and should be dismissed with prejudice. In the words of the district court, "permitting amendment would be fruitless" given the "overwhelming deficiencies." (DE 91 at 73).

Reed makes no argument on appeal that his "overwhelming deficiencies" in his claims pled against Bloomberg and Larson can be corrected. That is because they cannot. On its face, for all the reasons discussed above, the Article is not defamatory as a matter of law. No amendments to the allegations can change this fact. *See, e.g. Parekh*, 820 F. App'x at 834 (agreeing with the district court that leave to amend would have been futile because no amendment could correct deficiency in defamation claims). Therefore, the district court clearly did not abuse its discretion when it did not grant Reed another opportunity to amend his complaint. *See Michel*, 816 F.3d at 702 (noting the critical role courts play in disposing of untenable defamation claims).

Finally, Reed's attempt on appeal to shift the blame for his own deficient pleading onto the district court is misguided. Reed argues that "[t]he District Court gave no indication during its hearing on the defendants' motion to dismiss that it considered Mr. Reed's Amended Complaint to allegedly still be deficient" and, therefore, "deprived Mr. Reed of his opportunity to amend his pleading as a matter

42

of course under Federal Rule of Civil Procedure 15(a)." (Op. Br. at 66). His position ignores the law in this Circuit.

This Court has made clear that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend or requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *see also Pitts v. Grant*, No. 21-12759, 2022 WL 1117454, at *2 (11th Cir. Apr. 14, 2022) (holding that reversal not required where plaintiff had an opportunity to amend his original complaint, or request leave to do so, after the motions to dismiss were filed but failed to do so); *Hagan v. Comm'r, Georgia Dep't of Corr.*, No. 22-12180, 2023 WL 5621895, at *6 (11th Cir. Aug. 31, 2023) (explaining district court not required to sua sponte grant plaintiff leave to amend where plaintiff's counsel "never moved to amend her complaint").

It simply is not the district court's role to "propose the idea" of amendment to the plaintiff, and Reed's suggestion otherwise is wholly misguided. *Pitts*, 2022 WL 1117454, at *2. Instead, and as it should be, the onus is on the plaintiff to request leave to amend and plaintiff's failure to do so leaves the district court "free to dismiss the complaint with prejudice." *Id*.

43

## CONCLUSION

Based on the foregoing, Appellees, Bloomberg L.P. and Erik Larson, respectfully request that the Court affirm the Dismissal Order.

Dated:  July 19, 2024                              Respectfully submitted,

Gregory W. Herbert (FBN 111510)
herbertg@gtlaw.com
Kimberly S. Mello (FBN 002968)
mellok@gtlaw.com
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000
Facsimile No.  (407) 420-5909

By:  /s/ Gregory W. Herbert
     Gregory W. Herbert

*Counsel for Appellees, Bloomberg L.P. and Erik Larson*

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,035 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in a proportionally spaced typeface using Microsoft Office 365®, in Times New Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Gregory W. Herbert
Gregory W. Herbert