IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Appeal Number 24-10070-D

PATRICK REED

*Appellant*

v.

SHANE RYAN *et al*.

*Appellees*.

On Appeal from the United States District Court
for the Middle District of Florida, Jacksonville Division,
3:22-cv-1181-TJC-PDB

**REPLY BRIEF OF APPELLANT
PATRICK NATHANIEL REED**

Anthony C. Lake                              Of Counsel:
State Bar of Georgia No. 431149
GILLEN & LAKE LLC                            Larry Klayman
400 Galleria Parkway                         Florida State Bar No.: 246220
Suite 1920                                   KLAYMAN LAW GROUP P.A.
Atlanta, Georgia 30339                       7050 W. Palmetto Park Road
Telephone: (404) 842-9700                    Boca Raton, Florida 33433
Fax: (404) 842-9750                          Telephone: (561) 558-5536
Email: aclake@gwllawfirm.com                 Email: leklayman@gmail.com

*Counsel for Appellant Patrick Nathaniel Reed*

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

PATRICK REED,

     Appellant

v.

SHANE RYAN, *et al*.

     Appellees.

Appeal Number 24-10070-D

## **CERTIFICATE OF INTERESTED PERSONS**
## **AND CORPORATE DISCLOSURE STATEMENT**

Patrick Reed, Appellant, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

The Associated Press, Appellee

Bloomberg, L.P., Appellee

Chase, Jeremy A., counsel for Appellees

Corrigan, Timothy J., Chief United States District Judge

Handman, Laura R., counsel for Appellees

Hatchette Book Group, Inc., Appellee

Feitel, Jesse, counsel for Appellees

Ferguson, Doug, Appellee

Fox Sports, Inc., Appellee

Handman, Laura R., counsel for Appellees

Herbert, Gregory W., counsel for Appellees

Klayman, Larry, counsel for Appellant

Lake, Anthony C., counsel for Appellant

Larson, Erik, Appellee

LoCicero, Carol J., counsel for Appellees

Newsham, Gavin, Appellee

Norbut, Linda R., counsel for Appellees

NYP Holdings, Inc.

Young, Savannah, counsel for Appellees

Respectfully submitted, this 18th day of April, 2024.

*/s/ Anthony C. Lake*_____

Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

## **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement ............... 1

Table of Contents …………………………………………………….……… i

Table of Citations …………………………………………………….….... ii

Argument …………………………………………………………………… 1

      I. Mr. Reed Plausibly Alleged False and Defamatory

         Statements By Appellees …………………………..……………..… 4

      II. Mr. Reed Plausibly Alleged Actual Malice …………………………….. 15

      III. The District Court's Denial of an Opportunity for

         Mr. Reed to Amend as "Futile" Was an Abuse of

         Discretion or Error ………………………………………………..… 21

      IV. The District Court's Dismissal of Mr. Reed's

         Tortious Interference Claims Was Error ………………………..… 24

Conclusion ………………………………………………………...… 25

Certificate of Compliance ……………………………………………... 27

Certificate of Service …………………………………………………...…... 28

## TABLE OF CITATIONS

### Cases

*Barnes v. Horan*, 841 So. 2d 472 (Fla. 3d DCA 2002) ……………………..……… 13

*Byrd v. Hustler Magazine, Inc.*,

     433 So. 2d 593 (Fla. 4th DCA 1983) …………………………………….…… 4

*Carter v. Stanton*, 405 U.S. 669 (1972) …………………………………..…….. 6

*Chicago Title Ins. Co. v.*

     *Alday–Donalson Title Co. of Fla., Inc.*,

     832 So. 2d 810 (Fla. 2d DCA 2002) ……………………………………… 24

*Church of Scientology Int'l v. Time Warner, Inc*.,

     806 F. Supp. 1157 (S.D.N.Y. 1992) ……………………………………….. 11

*Conley v. Gibson*, 355 U.S. 41 (1957) …………………………………………..… 3

*Cortec Indus., Inc. v. Sum Holding L.P.*,

     949 F.2d 42 (2d Cir. 1991) ………………………………………………… 22

*Desnick v. Am. Broad. Cos.*, 233 F.3d 514 (7th Cir. 2000) ………………………. 17

*Eastern Air Lines, Inc. v. Gellert*,

     438 So. 2d 923 (Fla. 3d DCA 1983) ……………………………………… 14

*Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*,

     16 So. 3d 836 (Fla. 2 DCA 2009) ………………………………………… 24

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) ………………………..……… 20

*Foman v. Davis*, 371 U.S. 178, 182 (1962) …………………………………… 3, 22

*Fuji Photo Film U.S.A., Inc. v. McNulty*,

    640 F. Supp. 2d 300 (S.D.N.Y. 2009) …………………………...……… 22

*Garfield v. NDC Health Corp.*,

    466 F.3d 1255 (11th Cir. 2006) …………………………………...…….. 6, 22

*Greene v. Times Pub. Co.*,

    130 So. 3d 724 (Fla. 3d DCA 2014) …………………………………….. 13

*Harte–Hanks Commc'ns, Inc. v. Connaughton*,

    491 U.S. 657 (1989) …………………………………………………… 17

*Harwood v. Bush*, 223 So. 2d 359 (Fla. 4th DCA 1969) ……………...…….. 10

*Hood v. Connors*, 419 So. 2d 742 (Fla. 5th DCA 1982) ………………………. 15

*Kaloe Shipping Co. v. Goltens Serv. Co.*,

    315 F. App'x 877 (11th Cir. 2009) …………………………………...… 23

*Kieffer v. Atheists of Florida, Inc.*,

    269 So. 3d 656 (Fla. 2d DCA 2019) …………………………………... 2

*Kist v. Hubbard*,

    93 So. 3d 1100 (Fla. 5th DCA 2012) …………………………...…… 15

*Linafelt v. Beverly Enterprises-Fla., Inc.*,

    745 So. 2d 386 (Fla. 1st DCA 1999) …………………………………….. 4

*Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003) …………...…………….. 18

*Metabolife Int'l, Inc. v. Wornick*,

    264 F.3d 832 (9th Cir. 2001) …………………………………………...…….. 20

*McQueen v. Baskin*,

    377 So. 3d 170 (Fla. 2d DCA 2023) …………………………………..….. 7

*Miami Child's World, Inc. v. Sunbeam Television Corp.*,

    669 So. 2d 336 (Fla. 3d DCA 1996) …………………………………..……. 9

*Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) ……………………………….……….. 15

*Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024) ……………………………… 20

*Moore v. Senate Majority Pac*, No. 4:19-CV-1855-CLM

    2022 WL 1749245 (N.D. Ala. May 31, 2022) …………………………….. 14

*Nelson v. Associated Press, Inc.*,

    667 F. Supp. 1468 (S.D. Fla. 1987) …………………………………….. 18

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ……………………….……. 15

*O'Neal v. Tribune Company*,

    176 So. 2d 535 (Fla. 2d DCA 1965) …………………………………...….. 10

*Palin v. New York Times Co.*,

    940 F.3d 804 (2d Cir. 2019) ………………………………………… 16, 17

*Palin v. New York Times Co.,*

    No. 22-558, 2024 WL 3957617 (2d Cir. Aug. 28, 2024) …………………. 16

*Peck v. Trib. Co.*, 214 U.S. 185 (1909) …………………………...………… 11

*Pinnacle Advert. & Mktg. Grp., Inc. v.*

    *Pinnacle Advert. & Mktg. Grp., LLC*,

    7 F.4th 989 (11th Cir. 2021) ………………………………………. 22

*Property Mgmt. & Inv., Inc., v. Lewis*,

    752 F.2d 599 (11th Cir. 1985) …………………………………...…….. 6

*Rosanova v. Playboy Enter., Inc.*,

    411 F. Supp. 440 (S.D. Ga. 1976) ……………………………………….. 8

*Schafer v. Time, Inc.*,

    142 F.3d 1361 (11th Cir. 1998) ……………………………...……. 6, 8

*Shipner v. E. Air Lines, Inc.*,

    868 F.2d 401 (11th Cir. 1989) ……………………………………….. 22

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ………………………….…….. 17

*Skupin v. Hemisphere Media Grp., Inc.*,

    314 So. 3d 353 (Fla. 3d DCA 2020) ……………………………….…… 9

*Scott v. Busch*, 907 So. 2d 662 (Fla. 5th DCA 2005) ……………………….…….. 6

*Tamiami Trail Tours, Inc. v. Cotton*,

    463 So. 2d 1126 (Fla. 1985) …………………………………………. 25

*Thomas v. Jacksonville Television, Inc.*,

    699 So. 2d 800 (Fla. 1st DCA 1997) ……………………………………….. 4

*Trump v. Members of the Pulitzer Prize Board*,

    No. 2022CA000246 (Fla. 19th Cir. Ct. July 20, 2024) ……………....….. 13

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) …………………………….. 15

*Vacold LLC v. Cerami*,

    No. 00 Civ. 4024, 2002 WL 193157

    (S.D.N.Y. Feb. 6, 2002) ……………………………………...………. 22

*Vascular Sols., Inc. v. Marine Polymer Techs., Inc.*,

    590 F.3d 56 (1st Cir. 2009) ……………………………...………… 18

*Wolfson v. Kirk*, 273 So. 2d 774 (Fla. 4th DCA 1973) ……………....……… 10

*Zimmerman v. Buttigieg*,

    521 F. Supp. 3d 1197 (M.D. Fla. 2021) ………………………..….. 10

*Zorc v. Jordan*,

    765 So. 2d 768 (Fla. 4th DCA 2000) ………………………………. 9

## **Other Authorities**

33 Am.Jur., *Libel and Slander* …………………………………………… 10

91 A.L.R. (1963) ……………………………………………................... 10

RESTATEMENT (SECOND) OF TORTS (1977) ……………………………. 19

## **ARGUMENT**

Appellant Patrick Nathaniel Reed hereby replies to Appellees' Brief for Defendants-Appellees Hachette Book Group, Inc., Shane Ryan, and NYP Holdings, Inc. (Hachette Brf.), the Response Brief of Appellees, Bloomberg L.P. and Erik Larson (Bloomberg Brf.) and the Answer Brief of Appellees The Associated Press and Doug Ferguson (AP Brf.), as set forth herein. Mr. Reed, a highly-accomplished, world-class professional golfer, raised claims below based upon numerous, published statements and conduct by Appellees which stated or implied that Mr. Reed is a cheater as well as a liar—accusations devastating to the reputation of any professional athlete or, as admitted by Appellee Ferguson, the greatest punishment in golf. Dkt.#27, p. 27.

Mr. Reed filed a nearly 100-page initial Complaint against Appellees, asserting claims for defamation, based upon numerous statements published by Appellee Ryan in his book THE CUP THEY COULDN'T LOSE: AMERICA, THE RYDER CUP, AND THE LONG ROAD TO WHISTLING STRAITS (Book), in a chapter headed "The End of the Legend of Patrick Reed;" articles published by Appellees New York Post and Fox Sports with the title *"Don't know they'd p\*\*\* on him if he was on fire":* *The scandalous truth of golf's biggest villain* and *The scandalous truth about Patrick Reed, the bad boy of golf* (NYP/Fox Sports Article); and an article by Ferguson with the title *Column: Reed's reputation from Bahamas the ultimate penalty* (AP

1

Column). Dkt.#1, pp. 16, 21-21, 24. The District Court *sua sponte* dismissed Mr. Reed's Complaint prior to the filing of any answer or motion being filed by any defendant, and directed Mr. Reed to file an Amended Complaint. Dkt.#25. Mr. Reed proceeded to file an Amended Complaint in compliance with the Court's direction, adding claims against Appellees Larson and Bloomberg. Dkt.#27.

Following the filing of motions to dismiss by Appellees, the District Court held a hearing on July 31, 2023, in which it heard arguments on the' motions. Dkt.#80. The Court subsequently issued an Order on September 27, 2023, in which it found that only *one* statement of the many raised by Mr. Reed "may be potentially defamatory." Dkt.#86, p. 72. It dismissed Mr. Reed's Amended Complaint and all claims with prejudice for alleged failure to state plausible claims, finding that allowing Mr. Reed an opportunity to amend would allegedly be futile. *Id*. Mr. Reed moved for reconsideration and relief from judgment, and further moved for recusal of the District Court Judge on grounds of bias, as demonstrated by the record, and the Judge's apparent connections to the leadership of the PGA. Dkt.#89, 90.

Appellees fail to show that their statements concerning Mr. Reed were purely statements of fact or opinion/hyperbole which were not actionable, defamatory statements or publications. *See Kieffer v. Atheists of Florida, Inc.*, 269 So. 3d 656, 658, 661-662 (Fla. 2d DCA 2019) (finding that the defendant failed to establish that its statements alleging that the plaintiff had engaged in "misappropriation" of two

2

donations to the defendant were *not* "reasonably susceptible of a defamatory meaning"). Mr. Reed furthermore alleged facts in his Amended Complaint—including the fact of Appellees' failure to contact persons possessing knowledge of the alleged incidents regard the truth of the statements which Appellees published, Appellees' history of publishing derogatory comments regarding Mr. Reed, and Appellees' ill will towards Mr. Reed—each of which have been recognized as facts which may support a finding that a defendant acted with actual malice in intentionally publishing a false statement or publishing with reckless disregard for its truth or falsity. Dkt.# 27, pp. 11-13, 14, 15, 18, 19, 24.

Mr. Reed more than plausibly alleged claims for defamation and facts which could support a finding by a jury that Appellees published their statements concerning Mr. Reed with malice, knowing that the statements were false or reckless disregard for their truth or falsity. He sought to have his day in court and an opportunity to develop the evidence relating to his claims through discovery. The Court's dismissal, prior to allowing any discovery, which the Court stayed at the outset of the case, constituted error and should be reversed, and the case remanded "to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

3

# I. Mr. Reed Plausibly Alleged False and Defamatory Statements By Appellees

Appellees argue that their statements concerning Mr. Reed were not false statements of fact which could support a defamation claim. Hachette Brf., p. 31; Bloomberg Brf., p. 31; AP Brf., p. 8-9. Appellees claim that a false statement of fact is an essential element of a claim for defamation. Hachette Brf., p. 29 (citing *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)). Florida law, however, provides that *any* statement may be defamatory where the statement "tends to harm someone's reputation in the community or deters others from associating with the person." *Linafelt v. Beverly Enterprises-Fla., Inc.*, 745 So. 2d 386, 388–389 (Fla. 1st DCA 1999) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803 (Fla. 1st DCA 1997)). Appellees made numerous false statements which implicated Mr. Reed's reputation and therefore constituted actionable defamation under Florida law, including that Mr. Reed allegedly "shaved strikes" at qualifying events during his college career, Dkt.#27, pp. 19, 24; that his teammates came out of the woodwork to "crucify" him and confirm and add details, *id*.; that Mr. Reed's conduct during the 2019 Hero World Challenge was "blatantly illegal" and that he twice tried to illegally improve the lie of his ball, *id*. at 20, 25, 27; that he had done the same thing (i.e. cheat) during a 2015 tournament, *id*. at 21; that Mr. Reed forced his teammates on the U.S. Team to "put their integrity on the line," *id*. at 21-22; that the first time anyone on Mr. Reed's team had been "honest and open" with the media

4

was when a caddie shoved a fan, *id*. at 22; that Mr. Reed is golf's "biggest villain" and associated with a "scandalous truth," *id*.; that Mr. Reed's teammates were "[c]onvinced he was cheating," *id*. at 24; that "petty feuds" and "egos" left the U.S. Team when Mr. Reed left, *id*. at 27; and that Mr. Reed was "stuck with a reputation for cheating," *id*. These and other statements or comments by Appellees constituted actionable defamation under Florida law.

The Hatchett Appellees cite to a sworn statement by Josh Gregory, Mr. Reed's former coach at Augusta State University (ASU) as allegedly "confirming" that Mr. Reed was accused of, and admitted to, shaving strokes off his score. Hachette Brf., p. 35. In truth, Mr. Gregory did not confirm the alleged facts, but rather provided the statement to refute allegations by Appellee Ryan, stating that Mr. Reed had reported to him that his score was incorrect by one shot and that it was an unintentional mistake, and also stating that the term cheating was inappropriate and that he never found, and had no evidence, that Mr. Reed cheated. Dkt.# 34-5. Mr. Gregory furthermore made no reference to any accusations by Mr. Reed's teammates, or attempts to vote Mr. Reed off the team. *Id*. The District Court furthermore did not cite Mr. Gregory's statement in its Order dismissing Mr. Reed's claims and it would have been improper for it to do so in view of the fact that Mr. Reed was not permitted any discovery and the rule that "'once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment.'"

5

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n. 4 (11th Cir. 2006) (quoting

*Property Mgmt. & Inv., Inc., v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985); citing

*Carter v. Stanton*, 405 U.S. 669, 671 (1972)). The Court did not convert Appellees'

motions in this case.

The Hatchett Appellees proceed to contend that Appellee Ryan's statements

published in the Book and the NYP/Fox Sports Article possessed alleged "factual

support" in the form of a 2015 Deadspin article, which allegedly "summed up" the

controversy over Mr. Reed's "response" to the allegations and confirmed that Mr.

Reed's teammates "came out of the woodwork" to "crucify him" and confirm

details. Hachette Brf., pp. 35-36, 37. Appellees' contentions ignore the rule, under

Florida law, that the factual basis for a statement must be disclosed or known to the

audience in order for a statement not to be actionable. *See Scott v. Busch*, 907 So. 2d

662, 664, 668 (Fla. 5th DCA 2005) (finding that the defendant "did not disclose the

factual basis to support her opinion that [the plaintiff] illegally obtained a building

permit…" and that the defendant's statement was not "pure opinion"). Appellees

omit the fact that Ryan in his Book only made reference to the article's headline—

not to any facts therein—and then only as allegedly "summing up" Mr. Reed's

response to the controversy, not the underlying facts, in a defamatory manner.

Moreover, Ryan again referenced "details" concerning Mr. Reed which he failed to

provide in the Book. Finally, Ryan's statement regarding Mr. Reed's alleged "PR

strategy" of "full denial" also supported the defamatory implication that there was truth to claims that he cheated and Mr. Reed nevertheless proceeded to falsely deny them as part of a PR strategy. Hachette Brf., p. 36 n. 16. *See McQueen v. Baskin*, 377 So. 3d 170, 177-178 (Fla. 2d DCA 2023) (finding that statements concerning the plaintiff's attempts to "hide" alleged unlawful or improper conduct would be "quintessentially defamatory" if false).

As to Appellee Ryan's statements concerning the incident at the 2019 tournament as "not ambiguous," "blatantly illegal" and an "obvious violation," Mr. Reed never admitted facts supporting Ryan's characterizations, as Appellees contend. Hachette Brf., p. 38. To the contrary, Mr. Reed alleged in his Amended Complaint that the incident was, at worst, an unintentional error, and that he was only assessed a two-stroke penalty for the incident, as opposed to being disqualified for alleged cheating. Dkt.#27, pp. 20-21. Similarly, Ryan's statements regarding Mr. Reed allegedly doing the same thing at a 2015 tournament, accusations of his cheating in the past, his credibility being "in the mud" and his being "skewered" also carried the false and defamatory implication or gist that Mr. Reed is a cheater who had been caught cheating in 2015 and 2019, nullifying Appellees' position that Ryan "never" suggested that the incidents constituted cheating. Hachette Brf., pp. 39-40. As stated by Appellee Ferguson, there is no greater punishment in golf than being stuck with a reputation for cheating. Dkt.#27, p. 27.

7

Appellees next claim that Appellee Ryan's statement that the first time anyone on Reed's team had been honest and open with media was when a caddie admitted that he shoved a fan did not falsely imply that Mr. Reed lied. Hachette Brf., p. 41. However, an ordinary person could obviously read Ryan's statement as more than implying that Mr. Reed and members of his team had been dishonest in their prior communications with the media. Statements implying that a person is dishonest are defamatory *per se*. *See Schafer v. Time, Inc.*, 142 F.3d 1361, 1368 n. 5 (11th Cir. 1998) (quoting *Rosanova v. Playboy Enter., Inc.,* 411 F. Supp. 440, 445 (S.D. Ga. 1976)).

As to the NYP/Fox Sports Article republishing statements by Ryan, Appellees defend that the Article reported on Ryan's investigation and catalogued "true facts" about Mr. Reed's career, that it linked to a report in which a majority of golfers described Mr. Reed as arrogant, and that it did not imply that Mr. Reed was disruptive or was responsible for the U.S. Team's poor performance. Hachette Brf., pp. 43, 44. Appellees interpretations of the statements lack merit. The Article contained false statements of fact, in addition to certain actual facts, including that Mr. Reed tried to cheat twice by improving the lie of his ball, and that his coach at ASU reduced the sanction of Mr. Reed being voted off the team to a two-match suspension, an allegation rebutted by Mr. Gregory's procedurally irrelevant statement upon which Appellees themselves rely. Dkt.#34-3, pp. 4, 8; Dkt.#34-5. In

8

regard to the report linked in the article, only 20 percent of the golfers anonymously surveyed described Mr. Reed as stated by Appellees, with as many of his colleagues describing him as "misunderstood" or "interesting/confident." Dkt.#34-9, p. 3. Moreover, the article's states that the captain of the U.S. Team had "made a deal with the devil" in picking Mr. Reed for the Team, the selection of whom constituted "mismanagement" and "stifled" the Team, clearly implying that Mr. Reed's presence on the Team was disruptive and responsible for its poor performance. *Id*. at 9.

The Bloomberg Appellees argue in their brief that their knowing use of a large image of Mr. Reed in a critical article regarding LIV's conduct of the litigation is allegedly not a statement of fact for the purposes of defamation. Bloomberg Brf., p. 31. Appellees contend that the Bloomberg Article's headline and contents constitute an accurate characterization of the lawsuit between LIV and the PGA. *Id*. at 32 (citing *Zorc v. Jordan*, 765 So. 2d 768, 772 (Fla. 4th DCA 2000); *Miami Child's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336-337 (Fla. 3d DCA 1996); *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. 3d DCA 2020)). Contrary to Appellees' contentions, however, the Bloomberg Article does contain statements which could be construed as defamatory of LIV, of which Mr. Reed is one of the most prominent members, including stating that LIV is a mere

Saudi "PR vehicle," created for the purpose of dulling public backlash from the murder of journalist Jamal Khashoggi and other events." Dkt.#50-1, p. 4.

Mr. Reed alleged that the Bloomberg Article created the wholly false implication that Mr. Reed was a party to the lawsuit, and that a reasonable person would understand Appellees' use of Mr. Reed's image to imply that he was a party to the suit. Dkt.#27, p. 89. Florida law provides that a defamed person "need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973) (citing *O'Neal v. Tribune Company*, 176 So. 2d 535, 541 (Fla. 2d DCA 1965); *Harwood v. Bush*, 223 So. 2d 359 (Fla. 4th DCA 1969)). Defamation claims have been permitted to proceed where a publication did not expressly make reference to the plaintiff. *See O'Neal*, at 548 (observing that news articles which formed the basis of the plaintiff's libel claims "did not designate [the plaintiff] by name, address, nor nomenclature…") (citing 33 Am.Jur., *Libel and Slander* § 89, p. 102; 91 A.L.R. 1161, 1163 (1963)). A reasonable person reading the Bloomberg Article could certainly conclude that Mr. Reed was a party to, or connected with, the lawsuit and efforts to gather evidence relating to the 9/11 families based upon Appellees prominent use of his photograph. *See Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021) (finding that the plaintiff had plausibly allege that the

defendant's tweets, "when considered as a whole, included an implied or indirect reference to him due to the incident resulting in Trayvon Martin's death"); *Peck v. Trib. Co.*, 214 U.S. 185, 189 (1909) (holding that an advertisement for whiskey which featured a portrait of the plaintiff, but did not identify the plaintiff by name, rendered the publication "of and concerning" the plaintiff for the purposes of the plaintiff's claim for libel). For many years, Mr. Reed has been a well-known and highly visible professional golfer. While Appellees did not expressly mention Mr. Reed in the Article, a person of ordinary intelligence could reach the false conclusion that Mr. Reed is involved in the LIV litigation through Appellees' choice to use a large photo of Mr. Reed immediately below the headline. The use of Mr. Reed's photo in the article constituted an actionable defamation and rendered the publication "of and concerning" Mr. Reed, falsely implying that Mr. Reed was involved in the litigation and its "sinister" activities alleged in the Bloomberg Column. Dkt.#27, p. 29. Whether an ordinary person could consider the Bloomberg Column as reasonably referring to Mr. Reed was an issue for the jury to decide. *See Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992) (observing that the "of and concerning" requirement "is generally an issue of fact, which the jury alone may decide… [unless] the statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff'")

(quoting *Handelman v. Hustler Magazine, Inc.*, 469 F. Supp. 1048, 1050 (S.D.N.Y. 1978)).

Finally, Appellee Doug Ferguson's statements in his column "Reed's reputation from Bahamas the ultimate penalty" that Mr. Reed "infamously" allegedly "scooped away sand--twice" and that he was penalized with "more than two shots"—i.e. a reputation for cheating, as well as his account of the incident involving Mr. Reed's ball were also false and defamatory *per se*. Dkt.#27, p. 27. Ferguson statements stated or implied that Mr. Reed had allegedly gotten away with cheating. *Id*. at 28. The statements were false and defamatory given the fact that, as Mr. Reed alleged, the PGA completely cleared Mr. Reed of any alleged wrongdoing. *Id*. Ferguson's statements likewise cannot be construed as pure opinion, but were clearly statements of mixed fact and opinion. AP Brf., p. 9. Ferguson's references to Mr. Reed's reputation furthermore implied a knowledge of facts which Ferguson did not disclose in the article, depriving his statements of alleged protection as pure opinion or hyperbole.

In summary, for the reasons set forth herein and in Mr. Reed's initial brief, the statements by Appellees which formed the basis for Mr. Reed's defamation claims were actionable and were neither protected pure opinion or rhetorical hyperbole. Mr. Reed plausibly alleged claims for defamation based upon Appellees' intentionally or recklessly made false and defamatory statements adequately to

prevent dismissal. Such conclusion is supported by *Barnes v. Horan*, 841 So. 2d 472 (Fla. 3d DCA 2002), where the Florida Court of Appeals concluded that a statement that members of the plaintiff's former law firm did not trust the plaintiff to tell the truth to be actionable and sufficient for the plaintiff to proceed on his claims, *id*. at 474-475, 477; and *Greene v. Times Pub. Co.*, 130 So. 3d 724 (Fla. 3d DCA 2014), in which the Court held that the plaintiff, a candidate for the U.S. Senate, had adequately detailed a cause of action for libel against the media defendants who had published several articles which linked the plaintiff to "mortgage shenanigans" and "massive fraud," and claimed that he sold condominiums at "inflated sales prices to straw buyers" and engaged in "sexcapades" on a yacht, *id*. at 726, 727. Appellees published representations concerning Mr. Reed in this case constitute similar disparaging statements, implicating Mr. Reed in alleged improper and unethical conduct and maliciously and improperly calling into question his honesty and reputation.

In addition, a Florida circuit court recently denied a defendant's motion to dismiss defamation claims brought by former President Donald Trump alleging that the defendants had conspired to publish a defamatory statement affirming the veracity of libelous statements by the New York Times and Washington Post regarding alleged collusion with the Russian government. *See Trump v. Members of the Pulitzer Prize Board*, No. 2022CA000246 (Fla. 19th Cir. Ct. July 20, 2024),

attached in the Attachment hereto, pp. 2, 13.[1] The Court found that the statement did not constitute pure opinion and that the defendants' statement concerned the former President and was defamatory *per se*. *Id*. at 9, 10. The Court observed the rule that, "if a defendant's statement, in totality, would 'likely be reasonably understood by ordinary persons as a statement of an undisclosed existing defamatory fact, then it [is] the jury's function to determine whether a defamatory meaning was attributed to it by recipients of the communication.'" *Id*. at 6 (quoting *Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 927 (Fla. 3d DCA 1983)); *see also Moore v. Senate Majority Pac*, No. 4:19-CV-1855-CLM, 2022 WL 1749245, at *4 (N.D. Ala. May 31, 2022) (finding that the plaintiff could proceed on his claims for defamation based on his argument that the defendants juxtaposed quotations in news articles order to create a false and defamatory message).

The statements published by Appellees were neither alleged pure opinion or mere hyperbole, but on their face consisted of opinion mixed with alleged fact, in several cases implying the existence of undisclosed facts. The question of whether an ordinary person would attribute a defamatory meaning to Appellees' statements was required to be reserved for the jury. The District Court accordingly erred in

---

[1] Mr. Reed has attached a copy of the order, which is not published or readily available by electronic means, to this brief, pursuant to 11th Cir. R. 36-2.

directing the wholesale dismissal of Mr. Reed's claims at the pleadings stage, prior to any opportunity for him to attempt develop evidence in relation to his claims.

## II. Mr. Reed Plausibly Alleged Actual Malice

Appellees also maintain that Mr. Reed failed to allege actual malice. Hachette Brf., p. 17; Bloomberg Brf., p. 36; AP Brf., p. 9. They assert that Mr. Reed's allegations regarding their failure to investigate and their ill will against Mr. Reed were conclusory, and failed to satisfy Mr. Reed's burden.[2] Hachette Brf., pp. 19-20. To survive a motion to dismiss, a plaintiff must plausibly allege "'facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)). In a Second Circuit case, the Court found that the fact that the defendant journalist knew that an editorial he published claiming that the plaintiff was connected to a deadly shooting based upon the defendant's position, the defendant's

---

[2] Appellees take exception to Florida authority cited by Mr. Reed tending to stand for the proposition that actual malice may be plead generally. Hachette Brf., p. 20 (citing *Kist v. Hubbard*, 93 So. 3d 1100 (Fla. 5th DCA 2012)). *Kist* is not the only authority supporting this principle, however. *See Hood v. Connors*, 419 So. 2d 742, 743–744 (Fla. 5th DCA 1982) (finding that the plaintiff's allegations that the defendant made false remarks either knowing they were false or with a reckless disregard for the truth sufficient to charge actual malice) (citing *Sullivan*, 376 U.S. 254).

opportunity to review previous reporting opining that there was no connection between the plaintiff and the shooting, "[a]t a minimum… give rise to a plausible inference that [defendant] was recklessly disregarding the truth when he published the editorial…" *Palin v. New York Times Co.*, 940 F.3d 804, 814 (2d Cir. 2019). It furthermore found that the allegations of malice were strengthened by allegations that the defendant had reason to be "personally biased" against the plaintiff and her positions.[3] *Id*. at 814-815.

Pursuant to the plausibility standard for allegations of actual malice, Mr. Reed sufficiently alleged actual malice to prevent dismissal. The Amended Complaint alleged that Mr. Reed made public statements from his coaches, mentioned in Ryan's Book, stating that Mr. Reed did not cheat, and that they were unaware of any accusations of cheating. Dkt.# 27, pp. 19, 24. The Amended Complaint moreover stated that Appellees acted, at minimum, with reckless disregard for the truth in publishing their statements by consciously publishing their statements without contacting his coaches or other persons who could have refuted the statements, including Mr. Reed's teammates and PGA officials. *Id*. at 18. It set forth Appellees' close relationship and action in concert with the PGA and each other, and Appellees'

---

[3] The Second Circuit Court of Appeals recently reversed the trial court's grant of judgment as a matter of law in favor of the defendants and remanded for new trial. *See Palin v. New York Times Co.,* No. 22-558, 2024 WL 3957617, at *23 (2d Cir. Aug. 28, 2024).

motive to remove LIV as a competitor. *Id*. at 13, 14, 15. Mr. Reed detailed Appellee Ryan's history of making defamatory publications concerning Mr. Reed. *Id*. at 11-13. He moreover made allegations concerning Appellee Ferguson's longstanding animosity towards him and his history of negative reporting on Mr. Reed, and republication of attacks on Mr. Reed by Ryan. *Id*. at 14.

Similar to the defendant in *Palin*, the publication of the statements by Ryan, Newsham and Ferguson, as golf commentators and journalists, without any effort at corroboration constituted evidence upon which a jury could find that Appellees acted with malice or with reckless disregard for the truth. *See Sindi v. El-Moslimany*, 896 F.3d 1, 17 (1st Cir. 2018) ("[r]efusing to take easily available steps that could confirm or refute a claim may constitute probative evidence of a reckless disregard for the truth") (citing *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 682-664 (1989); *Desnick v. Am. Broad. Cos.*, 233 F.3d 514, 517 (7th Cir. 2000)). In addition, the Complaint's allegations regarding Appellees' acting in concert with the PGA and their motivation to harm LIV and its players, most notably Mr. Reed, in order to eliminate LIV as a competitor as well as increase their viewership and profits, is additional evidence upon which a jury could find that Appellees knowingly published the false statements or acted in reckless disregard of the truth. *Id*. at 16 ("'Although motive alone cannot suffice to prove actual malice, it is a highly relevant consideration'") (quoting *Harte–Hanks Commc'ns, Inc.*, at 667-668; citing

*Vascular Sols., Inc. v. Marine Polymer Techs., Inc.*, 590 F.3d 56, 60 (1st Cir. 2009)). The allegations and facts in the Amended Complaint were probative of both Appellees' motives and animosity towards Mr. Reed, as well as whether Appellees knowingly published false statements or published with reckless disregard for their truth or falsity. Hachette Brf., p. 22. The District Court's dismissal of Mr. Reed's Amended Complaint for purported failure to plausibly allege actual malice was accordingly erroneous.

Appellees' reliance on the 2015 Deadspin article is misplaced.[4] Hachette Brf., p. 24. The article does not show that "many" of Mr. Reed's teammates contradicted Mr. Reed's denial of the statements. *Id*. On the contrary, the article referenced a deleted tweet by one of Mr. Reed's teammates at ASU which was allegedly re-tweeted by other players, and allegations by another anonymous ASU player. Dkt.#43-8, pp. 6, 7. The Ryan Book and the Article furthermore did not "prominently incorporate" Mr. Reed's denial of any improper conduct or the statements from his coaches, as Appellees maintain. Hachette Brf., pp. 24-25 (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286 (D.C. Cir. 2003)).

---

[4] Appellees additionally raise the "wire service defense." Hachette Brf., p. 26 n. 10. The defense, however, is an affirmative one, appropriate for resolution on summary judgment. *See Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1479 (S.D. Fla. 1987).

Appellees point to the fact that Mr. Reed allegedly did not "challenge" Ryan's statements in his 2015 book, and that Ryan's statements have been republished numerous times. Hachette Brf., pp. 25-26. Such fact is immaterial in view of the rule that "each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. Dist. Ct. App. 2016) (citing RESTATEMENT (SECOND) OF TORTS § 577A cmt. a (1977)). Mr. Reed alleged below that Appellees' statements were newly discovered. Dkt.#27, p. 11. Furthermore, as indicated by Ryan's own statements, Mr. Reed took a different strategy in 2015, one of publicly denying the defamatory statements and imputations. *Id.* 19.

The Bloomberg Appellees defend the AP Column, arguing that there is an absence of allegations demonstrating that Appellees intended to create a false implication that Mr. Reed was involved with LIV's efforts to obtain information in relation to the 9/11 families. Bloomberg Brf., p. 37. Mr. Reed expressly alleged in his Amended Complaint that Appellees could have performed due diligence to determine that Mr. Reed had no involvement with LIV's suit. Dkt.#27, p. 29. The allegation is moreover not merely a conclusory one given Appellees' express listing of the case number and reference to LIV's effort to enforce a subpoena. Dkt.#50-1, pp. 4-5. Such facts would tend to support a finding by a jury that the Bloomberg

19

Appellees were fully aware that Mr. Reed had no involvement with the lawsuit and therefore acted intentionally or recklessly in publishing the Article with a large photograph of Mr. Reed under the headline. Given Mr. Reed's well-known connection to LIV, there could be no question regarding the association which Appellees intended to convey.

As another court has observed, actual malice:

> [I]s a subjective standard that turns on the defendant's state of mind; it is typically proven by evidence beyond the defamatory publication itself. For that reason, "the issue of 'actual malice' ... cannot be properly disposed of by a motion to dismiss,' where the plaintiff has had no opportunity to present evidence in support of his allegations."

*Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (finding that because the plaintiff had "had no chance to present evidence supporting her claims, we cannot hold that defendants acted without actual malice as a matter of law") (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 (9th Cir. 2001)).[5] Mr. Reed alleged facts which a jury could consider in determining that Appellees acted with intent or recklessness regarding the falsity of the statements at issue. The facts pleaded by Mr. Reed regarding Appellees' animosity towards him and history of

---

[5] Appellees have cited to the Court's decision in *Moore v. Cecil*, 109 F.4th 1352 (11th Cir. 2024) as supplemental authority. Dkt.#45. *Moore*, however, concerned defamation claims under Alabama law. *Id*. at 1357. Furthermore, in contrast to this case, the only "facts" alleged by the plaintiff to support a finding of actual malice were facts relating to the alleged defamatory publications themselves. *Id*. at 1366.

defamatory publications concerning him, Appellees' collaboration with the PGA and each other to attack LIV and Mr. Reed as one of its most notable representatives, and Appellee's failure to check their statements prior to publication by communicating with Mr. Reed's coaches and teammates, or PGA officials all constituted facts upon which a trier of fact might conclude that Appellees knew that their statements were false when made or made the statements in reckless disregard of their truth or falsity. Additionally, the District Court should have permitted Mr. Reed to proceed on his claims in view of the inherent difficulty of obtaining evidence of actual malice without the benefit of discovery. The District Court accordingly committed error in dismissing Mr. Reed's Amended Complaint on the ground of alleged failure to plausibly allege actual malice.

## III. <u>The District Court's Denial of an Opportunity for Mr. Reed to Amend as "Futile" Was an Abuse of Discretion or Error</u>

Appellees argue that the District Court did not abuse its discretion in dismissing of Mr. Reed's claims without leave to amend, finding that permitting Mr. Reed an additional opportunity to amend would be "fruitless." Hachette Brf., p. 47; Bloomberg Brf., p. 42. AP Brf., p. 10. It is the case, as Appellees point out, that Mr. Reed did not seek to amend his Complaint further after filing his Amended Complaint. Hachette Brf., p. 49; Bloomberg Brf., p. 43. The District Court, however, on its own initiative, raised the issue of whether an additional opportunity to amend would allegedly be futile or fruitless in deciding whether or not to dismiss Mr.

21

Reed's claims with prejudice. Dkt.#86, p. 72; *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 322 (S.D.N.Y. 2009) (noting that "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead…") (quoting *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002); quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

"[D]istrict courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021) (citing *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406–407 (11th Cir. 1989)). "Leave to amend should be 'freely given when justice so requires" unless there is an "apparent or declared reason' to deny it…" *Id*. (quoting *Foman*, 371 U.S. at 182; *Garfield*, 466 F.3d at 1270. The District Court based its determination that granting Mr. Reed an opportunity to amend his pleading would allegedly be "futile" or fruitless on erroneous findings. The Court cited the fact that it had provided Mr. Reed with an opportunity to amend. Dkt.#86, p. 72. In actuality, the Court dismissed Mr. Reed's initial Complaint *sua sponte* without Mr. Reed having requested an opportunity to amend. Dkt.#25. Its Order dismissing Mr. Reed's initial Complaint furthermore did not reference any of the alleged deficiencies which it subsequently found regarding Mr. Reed's defamation claims. *Id*. Mr. Reed complied with the

22

Court's Order and filed a notice explaining his compliance with the Court's Order and the changes made to his pleading. Dkt.#28. The Court did not subsequently indicate that the Amended Complaint which Mr. Reed filed in conformity with its Order was allegedly deficient.

The District Court also found that permitting Mr. Reed an opportunity to amend would be fruitless on the grounds that none of the statements alleged by Mr. Reed were potentially defamatory, and that Mr. Reed purportedly alleged no facts supporting a finding of actual malice. Dkt.#86, p. 73. This finding was likewise erroneous. Mr. Reed alleged numerous statements by Appellees, many of which were defamatory *per se* or were capable of a defamatory interpretation by a trier of fact. He furthermore alleged facts within his knowledge tending to show that Appellee's acted with malice or with reckless disregard for the truth. Mr. Reed was not given an opportunity to amend to avoid dismissal, and the Court should have allowed him a chance to amend in the interest of justice. The District Court's finding that permitting Mr. Reed an opportunity to amend his Complaint would allegedly be futile was error or an abuse of discretion. This Court has reversed an order dismissing a plaintiff's claims where a trial court has found that granting the plaintiff leave to amend would allegedly be futile, even where the plaintiff did not request leave to amend. *See Kaloe Shipping Co. v. Goltens Serv. Co.*, 315 F. App'x 877, 878 (11th Cir. 2009) (*per curiam*) (vacating the district court's grant of the defendant's motion

23

to dismiss with prejudice where the court determined in granting the motion that the plaintiff's amended complaint failed to cure the deficiencies in the original complaint and that further amendment would be futile). The Order of the District Court should accordingly be reversed.

## IV. <u>The District Court's Dismissal of Mr. Reed's Tortious Interference Claims Was Error</u>

Appellees argue that Mr. Reed's claims for tortious interference were properly dismissed pursuant to the "single action rule." Hachette Brf., p. 46; Bloomberg Brf., pp. 39-40; AP Brf., p. 10. Acknowledging the fact, as urged by Appellees, that claims for tortious interference have been dismissed in defamation cases pursuant to the rule, Mr. Reed submits that the dismissal of his claims for tortious interference amounted to error in this case. Mr. Reed plausibly alleged claims for tortious interference, alleging that he possesses ongoing and prospective contractual relationships which Appellees possessed knowledge of, that Appellees intentionally interfered with these relationships and that Mr. Reed suffered damages as a result. Dkt.#27, pp. 63-68. *See Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838 (Fla. 2 DCA 2009) (the elements of a tortious interference claim are "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship") (citing *Chicago Title Ins. Co. v. Alday–Donalson Title Co. of Fla.,*

*Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). In view of the District Court's disposal of all of his defamation claims, Mr. Reed should have been permitted to maintain his claims for tortious interference. The Court's dismissal of the claims was error.

**<u>CONCLUSION</u>**

Based upon the authorities and arguments set forth herein, Appellant Patrick Nathaniel Reed requests that the Order of the District Court dismissing Appellant's claims be reversed. In the event that the case is remanded to the District Court, Appellant respectfully requests that the case be directed to be assigned to a different Judge for the reasons stated in Appellant's motion to recuse, below.

Respectfully submitted, this 9th day of September, 2024.

*/s/ Anthony C. Lake*
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,224 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, pursuant to Fed. R. App. P. 21(a)(2)(A)(ii) and Fed. R. App. P. 25(d), that the foregoing filing was this 9th day of September, 2024, served by the undersigned by depositing the filing with a commercial carrier, for delivery within 3 days to the Clerk of Court and the following persons at the following addresses:

Carol J. Locicero, Esq.
Linda R. Norbut, Esq.
Thomas & LoCicero, PL
601 South Boulevard
Tampa, Florida 33606-2629

Gregory W. Herbert
Savannah Young
Greenberg Traurig, LLP
450 S Orange Ave, Suite 650
Orlando, Florida 32801

Jeremy A. Chase
Jesse Feitel
Laura R. Handman
Davis Wright Tremaine LLP
1 25 1 Avenue of The Americas
New York, New York 10020

*/s/ Anthony C. Lake*
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

28

Of Counsel:

Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

Counsel for Appellant Patrick Nathaniel Reed

**ATTACHMENT**

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT
IN AND FOR OKEECHOBEE COUNTY
FLORIDA

Case No. 2022CA000246

Senior Judge:  Robert L. Pegg

PRESIDENT DONALD J. TRUMP,

      Plaintiff

vs.

MEMBERS OF THE PULITZER PRIZE
BOARD, an unincorporated association,
ELIZABETH ALEXANDER, ANNE
APPLEBAUM, NANCY BARNES, LEE
C. BOLLINGER, KATHERIN BOO,
NEIL BROWN, NICOLE CARROLL,
STEVE COLL, GAIL COLLINS, JOHN
DANISZEWSKI, GABRIEL ESCOBAR,
CARLOS LOZADA, KELLY LYTLE
HERNANDEZ, KEVIN MERIDA,
MARJORIE MILLER, VIET THANH
NGUYEN, EMILY RAMSHAW, DAVID
REMNICK, and TOMMIE SHELBY,

      Defendants.

_____/

## ORDER DENYING DEFENDANT NEIL BROWN'S
## MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE came before the Court on Defendant Neil Brown's Motion to Dismiss

Plaintiff President Donald J. Trump's ("President Trump") Amended Complaint ("Motion

to Dismiss") filed by Defendant Neil Brown and joined by the 19 Defendants in this case

who are not residents of the State of Florida (collectively, "Defendants"). President

Trump opposed the Motion to Dismiss and a hearing was held on May 17, 2024. Being

fully apprised of the pleadings, the arguments of counsel, and otherwise fully apprised

of the premises, the Court finds as follows:

**Background**

Defendants made up the membership and key administrative staff of the Pulitzer Prize board in July 2022. All defendants, other than defendant Brown, reside outside of Florida. The Pulitzer Prize board is not a legal entity, but rather an unincorporated association responsible for the annual conferral of Pulitzer Prizes.

The Amended Complaint alleges it was the purpose and aim of Defendants' conspiracy—under the auspices of their collective association with the distinguished Pulitzer Prizes—to publish a defamatory statement in July 2022 affirming the veracity of articles published in 2017 by *The New York Times* (the "*Times*") and *The Washington Post* (the "*Post*"), which had reported extensively on the allegations that President Trump or persons connected to him had colluded with the Russian Government to win the 2016 presidential election (the "Russia Collusion Hoax"). The *Times* and the *Post* were jointly awarded the 2018 Pulitzer Prize in National Reporting in April 2018 for their reporting in 2017.

It is further alleged that Special Counsel Robert Mueller was appointed in 2017 to investigate the allegations against President Trump. His twenty-two-month investigation culminated with the publication of the "Mueller Report" in April 2019, which found no evidence of conspiracy or coordination between President Trump or the Trump campaign and Russia. Plaintiff alleges the Mueller Report firmly debunked the Russia Collusion Hoax and demonstrated the reporting of the *Times* and the *Post* was incorrect and unworthy of the 2018 Pulitzer Prizes.

The Amended Complaint also alleges that other government organizations investigated the matter following the conferral of the 2018 Pulitzer Prizes, including the office of United States Attorney General, the House Permanent Select Committee on

Intelligence in the U.S. House of Representatives, and the Select Committee on Intelligence of the United States Senate. These offices conducted their own public investigations and similarly found no evidence of collusion between President Trump, the Trump Campaign, and any Russian efforts to interfere in the 2016 presidential election.

The publication of the respective outcomes of these government investigations allegedly led to numerous inquiries and requests that the Pulitzer Prizes awarded to the *Times* and the *Post* in 2018 be rescinded. President Trump allegedly sent multiple demands himself, or through counsel. For years, these requests are alleged to have been uniformly rejected or ignored by the Defendants and/or their predecessors on the Pulitzer Prize board. President Trump's last letter, dated July 5, 2022, elicited a response.

The statement at issue in this case was published by Defendants in July 2022 on Pulitzer.org, a website maintained by Defendants. President Trump alleges that at the time of publication Defendants knew that the "Awarded Articles," and their intended purpose—the advancement of the broader Russia Collusion Hoax, which had dominated media coverage in 2017—were false and had been discredited by the published results of multiple federal government investigations.

Published to Pulitzer.org (the "Website") on July 18, 2022, Defendants' statement (the "Defendants' Statement") reads:

**A Statement from the Pulitzer Prize Board**
The Pulitzer Prize Board has an established, formal process by which complaints against winning entries are carefully reviewed. In the last three years, the Pulitzer Board has received inquiries, including from former President Donald Trump, about submissions from The New York Times and The Washington Post on Russian interference in the U.S. election and its connections to the Trump campaign—submissions that jointly won the 2018 National Reporting prize.

These inquiries prompted the Pulitzer Board to commission two independent reviews of the work submitted by those organizations to our National Reporting competition. Both reviews were conducted by individuals with no connection to the institutions whose work was under examination, nor any connection to each other. The separate reviews converged in their conclusions: that no passages or headlines, contentions or assertions in any of the winning submissions were discredited by facts that emerged subsequent to the conferral of the prizes.

The 2018 Pulitzer Prizes in National Reporting stand.

The final line of the Defendants' Statement includes a hyperlink to http://www.pulitzer.org/winners/staffs-new-york-times-and-washington-post in the original publication).

## I.    **Applicable Standard**

"The purpose of a motion to dismiss is 'to test the legal sufficiency of the complaint, not to determine factual issues.'" *Rolle v. Cold Stone Creamery, Inc.*, 212 So. 3d 1073, 1076 (Fla. 3d DCA 2017) (quoting *The Fla. Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006)). When ruling on a motion to dismiss, the trial court "must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party." *Cousins v. Post-Newsweek Stations Florida, Inc.*, 275 So. 3d 674, 678 (Fla. 3d DCA 2019).

In Florida, a defamation claim is comprised of five elements: (1) publication, (2) of a false statement, (3) with knowledge or reckless disregard as to the falsity (for public figures), (4) which causes actual damages, and (5) is "defamatory." *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)); see also *McQueen v. Baskin*, 377 So. 3d 170, 176 (Fla. 2d DCA 2023). The Fourth District has explained that a "communication is 'defamatory' if it tends to harm the reputation of another as to lower

him or her in estimation of community or deter third persons from associating or dealing with the defamed party." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002); *McQueen,* 377 So. 3d at 176.

## II.    Findings of Fact and Conclusions of Law

### 1.    Count I (Defamation by Implication) and Count III (Defamation *Per Se*) Are Properly Pled

#### A.    The Alleged Defamatory Statement is Actionable

Defendants argue that the Defendants' Statement is "non-actionable pure opinion" to the extent that it "could reasonably read to convey and endorse the alleged implication that Trump colluded with Russia." Motion, pp. 12, 13. While true that a pure opinion statement cannot form the basis for a defamation action, a statement that implies or includes undisclosed defamatory facts as the basis for the opinion is actionable. *Stembridge v. Mintz*, 652 So. 2d 444, 446-47 (Fla. 4th DCA 1995). A statement that is ostensibly in the form of an opinion but "'implies the allegation of undisclosed defamatory facts as the basis for the opinion,' is actionable." *Id.* (quoting the Restatement (Second) of Torts § 566 (1977)); *Eastern Air Lines, Inc. v. Gellert*, 438 So. 2d 923 (Fla. 3d DCA 1983); *From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52, 57 (Fla. 1st DCA 1981).

It is this Court's function to determine from the context "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct . . . ." Restatement (Second) of Torts § 566, cmt. c (1977). This is done by looking to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or

mixed opinion. *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451, 460 (Fla. 5th DCA 1999). If a defendant's statement, in totality, would "likely be reasonably understood by ordinary persons as a statement of an undisclosed existing defamatory fact, then it [is] the jury's function to determine whether a defamatory meaning was attributed to it by recipients of the communication." *Eastern Air Lines, Inc.*, 438 So. 2d at 927 (citations omitted); *see also LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881, 885 (Fla. 4th DCA 2003); *Zambrano v. Devanesan*, 484 So. 2d 603 (Fla. 4th DCA 1986); *Madsen v. Buie*, 454 So. 2d 727 (Fla. 1st DCA 1984); *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293 (Fla. 2d DCA 1984); *Smith v. Taylor County Publishing Co.*, 443 So. 2d 1042 (Fla. 1st DCA 1983); *Coleman v. Collins*, 384 So. 2d 229 (Fla. 5th DCA 1980); *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50 (Fla. 4th DCA 1976); *see*, *generally*, *Florida Medical Center, Inc. v. New York Post Co.*, 568 So. 2d 454 (Fla. 4th DCA 1990), *review denied*, 581 So. 2d 1309 (Fla.1991).

The United States Supreme Court has recognized that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). This application of actionable "mixed opinion" statements has been regularly used by Florida courts. *See, e.g. LRX, Inc.,* 842 So. 2d at 885; *Anson v. Paxson Communications Corp.,* 736 So. 2d 1209 (Fla. 4th DCA 1999); *Zambrano*, 484 So. 2d 603.

The distinction between unactionable pure opinion and actionable statements of mixed opinion was discussed by the Fourth District in *Zambrano*, where the court said:

Pure opinion is based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader or the listener as a member of the public. Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion. Pure opinion is protected under the First Amendment, but mixed opinions are not.

*Zambrano*, 484 So.2d at 606 (citing *Hay,* 450 So.2d 293).

The *Zambrano* court also found an "important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks." *Id.* If the defendant "neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *Id.* at 606-07 (collecting cases).

This Court is bound by the Fourth District's opinion in *Zambrano*, and as a result finds the alleged defamatory statement to be actionable. Defendants cannot claim the statement is pure opinion when they withheld information from their audience that would have provided an adequate factual foundation for a common reader to decide whether to agree or disagree with Defendants' decision to let 2018 Pulitzer Prizes in National Reporting stand, and whether the awarded reporting had in fact been discredited by facts that emerged from the Mueller Report or the other government investigations that had been made public since the conferral of those prizes.

Numerous examples of Defendants' withholding valuable information from their readers exist:

*First*, Defendants failed to explain the "established, formal process" by which complaints against winning entries are "carefully reviewed."

*Next*, Defendants failed to disclose the identities, qualifications, or processes used by the two independent reviewers commissioned by the Defendants and/or their predecessors on the Pulitzer Prize board to investigate the underlying reporting.

*Third*, despite touting the anonymous reviewers' independence from the *New York Times, The Washington Post*, and "each other," Defendants failed to state whether either or both of the reviewers were independent from the Defendants or had an previous association with the Pulitzer Prizes. As the credibility and significance of the Pulitzer Prizes was the fundamental issue raised by the complaints against the 2018 awards, this information was also critically important for common readers.

*Fourth*, the Defendants' Statement states the "separate reviews converged" on a very specific outcome: that "no passages, headlines, contentions or assertions in any of the winning submissions were discredited by facts that emerged subsequent to the conferral of the prizes," but the actual "converging" conclusions of the reviews are unknown to their readers.

*Fifth*, implicit in the Defendants' Statement is that these reviews were conducted simultaneously as the result of a single "commission" by Defendants, and that neither reviewer was aware of the work of the other reviewer. As alleged, the reviews were conducted sequentially over the course of several years. Readers should know whether the reviews were conducted independently, not merely that the anonymous reviewers were independent of one another.

*Sixth*, readers are not given any indication of what information the reviewers relied upon to verify the Awarded Articles or the larger Russia Collusion Hoax the articles advanced. Only the Awarded Articles are provided via hyperlink to the reader,

not outside sources that would permit the reader to replicate the supposedly dispositive independent reviews.

*Seventh*, the Defendants' Statement does not address if or how the "independent reviewers" were able to verify the anonymous sources that appear throughout the Awarded Articles and were critical to advancing the larger Russia Collusion Hoax narrative. Instead, the reader is left to wonder if that was even attempted.

In sum, if the Defendants' Statement had included the foregoing facts, an ordinary reader might have been able to evaluate whether they agreed with Defendants' decision not to revoke the prizes, and whether the underlying reporting had actually survived the factual disclosures of several subsequent government investigations unscathed. Instead, the alleged defamatory statement implies no fewer than *seven* undisclosed sets of foundational facts, making the Defendants' Statement actionable mixed opinion. See *Zambrano*, 484 So.2d at 606.

Moreover, the statement at issue does not contain any cautionary language or attribution to an identifiable source, factors that militate toward actionability. See *Smith*, 443 So. 2d at 1047; *Zambrano*, 484 So. 2d at 606-07*.* Readers cannot meaningfully evaluate Defendants' decision to accredit the 2018 Pulitzer Prize in National Reporting when an adequate factual foundation for this decision has been withheld. Defendants' argument that the Defendants' Statement is "pure opinion" fails, and this Court finds the Defendants' Statement to be actionable.

9

B.    <u>The Alleged Defamatory Statement Concerns Plaintiff</u>

Defendants have argued that the Defendants' Statement's reference to the "Trump campaign" is insufficient as a matter of law to be a publication "of and concerning" President Trump himself, and is not actionable. Motion at pp. 8—9. This argument fails.

Defamation cases can lie even when the plaintiff is not named, and here the "Trump campaign" obviously bears President Trump's name. Courts provide many examples of defamatory statements that "concern" a plaintiff while not expressly referring to him individually. One example is *In re Perry*, 423 B.R. 215 (Bankr. S.D. Tex. 2010), where a bankruptcy court, applying a similar standard to Florida's, found that defamatory statements alleging illegal activity by a political candidate's business partner were also statements "concerning" the candidate himself. *Id.* at 270. The court found the statement related to the candidate's fitness to hold office and did not include any clarifying or qualifying language that would separate the candidate himself from the alleged impropriety of his business associate. *Id.* As the factfinder in that case, the court determined that a person of ordinary intelligence would have imputed the allegations to the candidate and found the statements to be defamatory. *Id.* at 271.

The *In re Perry* analysis is sound. As applied here, the connection between a candidate and his campaign is indisputably closer in the minds of ordinary readers than that of a candidate and a business partner. In the instant case, a reasonable reader of the Defendants' Statement could certainly conclude that by ratifying the veracity of articles from 2017 that indicated President Trump's 2016 presidential campaign had connections with alleged Russian interference in the presidential election, Defendants were asserting that *President Trump* had himself colluded with the Russians using his

campaign staff, his transition team, and his administration as proxies. If that implication proves false, as President Trump contends, it is defamatory *per se*. Defendants' argument that the Amended Complaint fails because the Defendants' Statement is not "of and concerning" President Trump fails.

C.    <u>The Amended Complaint Properly Pleads Damages</u>

President Trump's claims are pled as defamation by implication (Count I), conspiracy to defame by implication (Count II)), defamation *per se* (Count III), and conspiracy to defame *per se* (Count IV). In all four counts, President Trump alleges the Defendants' Statement communicates "criminal, wrongful, and un-American conduct unbecoming of Plaintiff's previous position as the duly elected President of the United States, his profession as a businessman, and being the leading candidate for president in the 2024 presidential election." Am. Compl. ¶¶ 175; 178; 201; 203. These claims, whether by directly defamatory or by implication, all allege defamation *per se* based on Defendants' association of President Trump with illegal and hostile Russian attempts to influence the 2016 presidential election.

This Court will follow the decision of the Second District Court of Appeal in *Perry v. Cosgrove*, 464 So. 2d 664 (Fla. 2d DCA 1985). The letter at issue in *Perry* read, in relevant part, "Rather than embarrass [sic] Mr. Perry any further on the matter, we decided not to issue a statement." *Id.* at 665–66. The defendants in *Perry* argued the operative complaint did not sufficiently allege defamation *per se* claim because it required information and innuendo outside the four-corners of the statement to determine the statement's falsity. *Id.* at 666. The Second District explained that a statement alleged to be defamatory *per se* has to be read "as the common mind would naturally understand it." *Id.* The Second District determined that a common mind would

11

naturally understand the defendants' statement to mean that the plaintiff "had conducted himself in a shameful manner, or in a manner inconsistent with the proper exercise of his profession" and was actionable as defamation *per se*. *Id.* The same analysis applies here, and the same conclusion is reached.

In this case, President Trump has pled that the Defendants' Statement left readers with the false, defamatory message that the Awarded Articles, which advanced the Russia Collusion Hoax, "had been objectively, thoroughly, and independently reviewed for veracity *twice,* and that the separate conclusions of these had each accredited the accuracy of the award recipients' reporting." *See* Am. Compl. at ¶ 146 (emphasis in original). In other words, President Trump has alleged the Defendants' Statement conveyed the false, defamatory message that he had colluded with Russia to win the 2016 election. At this stage of the litigation, President Trump has sufficiently pled defamation *per se*.

It has been well established that a plaintiff bringing a defamation *per se* claim does not need to plead special damages. *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495 (Fla. 1953). But, even if special damages were required to be pled, the Amended Complaint more than satisfies Florida's minimal pleading requirements. *See* Am. Compl. at ¶¶ 148—50; 167, 174—75; 187—88; and 201.

### 2. Count II (Civil Conspiracy to Commit Defamation by Implication) and Count IV (Civil Conspiracy to Commit Defamation *Per Se*) Are Properly Pled

Defendants argue that President Trump's claims for conspiracy (Counts II and IV) must fail because the underlying defamation claims fail. As explained above, Defendants have failed to defeat the defamation claims at this stage of the litigation.

Separately, Defendants seek shelter from the intra-corporate conspiracy doctrine, but that doctrine does not apply for the reasons stated in this Court's Order Denying Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction Or, In the Alternative, Joining Defendant Neil Brown's Motion to Dismiss.

**III.    <u>Conclusion</u>**

On the basis of the briefing on Defendant Neil Brown's Motion to Dismiss the Amended Complaint, the foregoing findings of fact and conclusions of law, and the Court otherwise being fully advised in the premises, it is

**ORDERED** as follows:

1.    The Defendant Neil Brown's Motion to Dismiss the Amended Complaint is **DENIED**.

2.    All defendants are directed to file an answer to the Amended Complaint within thirty (30) days from the date of this Order.

**DONE AND ORDERED** in Chambers in Okeechobee County, Florida, on this 20th day of July 2024.

_____
ROBERT          L.          PEGG
Senior Circuit Judge


***Conformed copies to:***
R. Quincy Bird, Esq., Jeremy D. Bailie, Esq. (<u>Quincy.Bird@webercrabb.com</u>; <u>Jeremy.Bailie@webercrabb.com</u>; <u>honey.rechtin@webercrabb.com</u>; <u>natalie.deacon@webercrabb.com</u>)
Paul R. Berg, Esq. (<u>pberg@whitebirdlaw.com</u>; <u>lsmith@whitebirdlaw.com</u>)
David A. Schulz, Esq. (<u>SchulzD@BallardSpahr.com</u>)
Charles D. Tobin, Esq., Chad R. Bowman, Esq., Maxwell S. Mishkin, Esq. (<u>tobinc@ballardspahr.com</u>; <u>bowmanchad@ballardspahr.com</u>; <u>mishkinm@ballardspahr.com</u>)

13